ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
SARAH R. HOLLOWAY (SBN 254134)
sholloway@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

*Attorneys for Plaintiffs*
Pavel Savva and Alexander Vickers

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEL SAVVA and ALEXANDER VICKERS, individually and on behalf of a class of similarly situated individuals,<br><br>           Plaintiffs,<br><br>           v.<br><br>KARS4KIDS INC. and OORAH INC., inclusive,<br><br>           Defendants | Case No:<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL RACKETEERING, CALIFORNIA FALSE ADVERTISING, AND CALIFORNIA UNFAIR COMPETITION LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

1

**CLASS ACTION COMPLAINT**

Plaintiffs Pavel Savva and Alexander Vickers ("Plaintiffs") bring this putative class action against Kars4Kids Inc. ("Kars4Kids") and Oorah Inc. ("Oorah") (collectively, "Defendants") on behalf of a proposed nationwide Class consisting of persons and entities exposed to Kars4Kids' TV, radio, or Internet advertisements who donated a vehicle to Kars4Kids, except those located within Pennsylvania; and a proposed California sub-class consisting of persons and entities exposed to Kars4Kids' TV, radio, or Internet advertisements who donated a vehicle to Kars4Kids within California (collectively, the "Class" or "Classes"). Plaintiffs assert claims against Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*.; California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

Plaintiffs allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through their attorneys, which included, among other things, a review of Defendants' public statements and advertisements; documents, testimony, and arguments made or produced by Defendants in civil actions; media reports and public documents relating to investigations and actions by state attorney generals; Defendants' publicly available tax forms and records; discussions with experts; and other commentary, analysis, and publicly disclosed reports and information about Defendants. Plaintiffs' investigation is continuing, and many relevant facts are known only to or are exclusively within the custody and control of Defendants. Plaintiffs believe that substantial additional evidentiary support exists for the allegations set forth herein and will be obtained after a reasonable opportunity for formal discovery.

## I.   NATURE OF THE CASE

1.   Plaintiffs bring this action on behalf of the proposed Classes to seek redress for Defendants' scheme to deceive unwitting donors into donating their vehicles to Kars4Kids for undisclosed and misrepresented purposes. As alleged herein, Defendants publicly disseminated, and conspired to disseminate, false and misleading advertisements soliciting vehicle donations to purportedly help local needy or disadvantaged children in the areas where they advertise,

*KELLER GROVER LLP*
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

regardless of religious affiliation, inducing Plaintiffs and Class members to donate their vehicles under false pretenses. Instead of helping local needy children as advertised, Defendants used those donations to fund a separate organization – Oorah – and its narrow purpose of promoting orthodox religious ideology to Jewish families in New York and New Jersey, and to fund their own significant expenses and investments.

2.    Defendants' conduct has spawned multiple government investigations by state attorney generals and private lawsuits into the misleading nature of their deceptive ads. In 2009, Defendants settled two separate actions with the Pennsylvania and Oregon state attorney generals, who justifiably accused them of disseminating misleading advertisements, and failing to properly inform donors that Oorah (not Kars4Kids) would use their donations almost exclusively to fund its orthodox "outreach" activities directed solely at Jewish families. As part of those settlements, Defendants were required to include additional disclosures in their ads and solicitations in those states informing potential donors about Defendants' purpose and use of their donations.

3.    Defendants were again investigated for the same conduct by the Minnesota state attorney general in 2017, which similarly found that Kars4Kids "primarily serves as the fundraising arm of Oorah[]" and, while not disclosed in their ads, over 90% of Kars4Kids' charitable expenditures were simply transferred to Oorah "to promote Orthodox Judaism, primarily to New Jersey and New York children." In 2021, a California donor brought a lawsuit against Defendants for false and misleading advertising relating to their deceptive solicitation commercials. The California District Court there found, under facts nearly identical those here, that "a reasonable jury could conclude that Kars4Kids' advertising was misleading because it indicated donations would benefit needy children nationwide when it actually benefited primarily children of a particular faith in a particular geographic location." In 2025, the Honorable Judge Donato in the Northern District of California similarly denied Kars4Kids' motion to dismiss a nearly identical class action case against Kars4Kids and Oorah, finding it was plausible "that a reasonable consumer would be deceived even on the face of the ads."[1]

---

[1] That putative class action was dismissed voluntarily by the plaintiff prior to summary judgment.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

4.      Despite these investigations and lawsuits, Defendants have continued to broadcast their deceptive ads throughout the country, including in California.  The reason is clear: Defendants would receive significantly less donations, and significantly less funding for Oorah's religious proselytizing activities, if donors knew the truth about their scheme.

5.      Defendant Oorah, a New Jersey organization dedicated to promoting *haredi* (or "ultra-orthodox") Jewish ideology, was the creator and architect of this fraudulent scheme.[2]  Oorah, under the direction of its President and CEO, Rabbi Eliyohu Mintz ("Mintz"), created the Kars4Kids brand and its misleading ads to serve as Oorah's internal fundraising arm for the purpose of soliciting car donations to fund Oorah's orthodox outreach and proselytizing activities.  Oorah and Mintz later spun off Kars4Kids as a purportedly separate "charity," also run by Mintz.  Despite this separation on paper, Kars4Kids' purpose and function remained the same – to serve as Oorah's "fundraising arm" and solicit vehicle donations on Oorah's behalf to fund its narrow religious outreach activities.

6.      Described by many as annoying, Kars4Kids' "jingle" advertisements, which encourage people to "donate [their] car today" for "a vacation voucher and a tax deduction" "BECAUSE KIDS ARE OUR FUTURE," are broadcast on TV and radio stations and on the Internet throughout the country, including in California.  These ads are clearly designed to make potential donors believe that Kars4Kids will use their donations to benefit local needy or disadvantaged children regardless of any particular ethnic, religious, or ideological affiliation.  What these ads fail to inform donors, however, is that their donations are instead simply transferred to Oorah, the "program arm" of this enterprise, to fund its promotion of *haredi* ideology to non-orthodox Jewish families, to the exclusion of all others, predominantly in New York and New Jersey.  The ads also fail to inform donors that the vast majority of donation proceeds are not used for **any** charitable

---

[2] Orthodox Judaism adheres to a strict interpretation and application of the laws and ethics promulgated in the Talmud and later rabbinical tradition.  It requires strict adherence to such Jewish traditions as kosher dietary laws, sexual purity laws, and gender segregation in the synagogue, among others.  Haredi Judaism is a branch of Orthodox Judaism characterized by its even more strict and conservative interpretations of religious sources and is often referred to as "ultra-Orthodox" Judaism.

purpose but are instead used by both Kars4Kids *and* Oorah to fund their significant proselytizing expenses and investments.

7.    Like millions of others in California and nationwide, Plaintiffs saw and heard these ubiquitous ads numerous times prior to donating.  Believing Kars4Kids' representations that it would use their donations to help needy or disadvantaged children, particularly in California where they saw and heard the ads, Plaintiffs, like thousands of other unwitting donors, donated their vehicles to Kars4Kids.  Plaintiffs would not have donated their vehicles to Kars4Kids had they known that it and Oorah would use their donations to promote orthodox religious ideology rather than helping local kids.

8.    While promoting strict tenets of Judaism to an exclusive group in a limited geographic area may be a worthy endeavor for donors *intending* to do so, Defendants designed their ads to conceal this true purpose from potential donors.  By failing to inform potential donors that their vehicle donations would be used almost exclusively to: (i) fund Oorah and its promotion of strict religious ideology; (ii) benefit families of only one religion in one limited geographic area; and (ii) fund Kars4Kids' *and* Oorah's significant expenses and investments, Defendants' ads misled and deceived thousands of donors, who, like Plaintiffs, would not have donated had they known the truth about Defendants' scheme.

## II.    PARTIES

9.    Plaintiff Pavel Savva is a citizen of California and resides in the city of San Francisco, California.  Mr. Savva donated his vehicle, a 2003 Audi A4, to Kars4Kids in or around September 2024 and suffered damages in the form of lost property donated under false pretenses because of Defendants' conduct.

10.    Plaintiff Alexander Vickers is a citizen of California and resides in the city of San Francisco, California. Mr. Vickers donated his vehicle, a 2005 Mitsubishi Lancer, to Kars4Kids in or around March 2025 and suffered damages in the form of lost property donated under false pretenses because of Defendants' conduct.

11.    Defendant Oorah, previously known as Oorah Kiruv Rechokim Fund, Inc., is a 501(c)(3) tax-exempt organization and is registered as a domestic non-profit corporation under the laws of

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    New Jersey. Its headquarters are located at 1805 Swarthmore Avenue, Lakewood, New Jersey

2    08701. Since at least 2018, Oorah has been the controlling entity for numerous subsidiaries,

3    including Oorah Retreat LLC (religious outreach activities), Oorah Resort LLC (religious outreach

4    activities), Millenium Lodge LLC (real estate activities), and Rutger Equities LLC (real estate

5    activities) – all sharing the same headquarters as Oorah and Kars4Kids.[3]

6        12.    Oorah is no stranger to litigation. In addition to multiple investigations by state attorney

7    generals and an individual lawsuit concerning Defendants' misleading and deceptive advertising,

8    Oorah has also been targeted by several other lawsuits relating to its purported "outreach"

9    activities. One such lawsuit accused Oorah of secretly purchasing a small synagogue on Staten

10   Island in 2007 to obtain tax-exempt status as a religious organization and thereby avoid filing a

11   public tax return and public scrutiny of its dealings. According to NY Jewish Week, an

12   independent newspaper serving the New York Jewish community, Young Israel of Eltingville

13   ("Young Israel"), the synagogue's prior owner, accused Oorah of improperly purchasing the

14   synagogue's building and creating a fake synagogue called Congregation Oorah, also run by

15   Mintz, to secure the tax-exempt status. Young Israel alleged that Congregation Oorah did not,

16   however, provide religious services at the synagogue, and that its falsely obtained tax-exempt

17   status instead allowed Oorah to shield its "questionable financial dealings" from public scrutiny.[4]

18       13.    Oorah registered with the California Secretary of State as a foreign corporation doing

19   business in California in 2021. Oorah is a "person," as that term is defined in 18 U.S.C. § 1961(3),

20   who engaged in racketeering activities. Oorah is also an "enterprise," as that term is defined in 18

---

22   [3] Other "related" entities listed on Oorah's tax forms include Kars4Kids, Congregation Oorah, and
23   Junk For Joy Inc. (which solicits vehicle donations in Texas on Oorah's behalf) – all sharing the
     same headquarters as Oorah.

24   [4] *See* NY Jewish Week, "*Young Israel Accuses Kars4Kids Parent Charity of Tax Fraud*" (Nov.
25   22, 2016) (available at: https://www.jta.org/2016/11/22/ny/young-israel-accuses-kars4kids-
     parent-charity-of-tax-
26   fraud#:~:text=Young%20Israel%20of%20Eltingville%20is%20claiming%20that%20Oorah,not
     %20have%20to%20file%20an%20annual%20tax%20return.%29); NY Jewish Week, "*Young
27   Israel Claims Hostile Takeover Bid by Kars4Kids Parent Parent Org.*" (Jun. 29, 2016) (available
     at: https://www.jta.org/2016/06/29/ny/young-israel-claims-hostile-takeover-bid-by-kars4kids-
28   parent-org).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  U.S.C. § 1961(4), which engaged in racketing activities.  It is also a member of an association-in-

2  fact "enterprise," as that term is defined in 18 U.S.C. § 1961(4), together with Kars4Kids, through

3  which they conspired and engaged in racketeering activities.  Oorah served as the "program arm"

4  of this joint enterprise.

5      14.    Defendant Kars4Kids, also referred to as Kars 4 Kids Inc., is a 501(c)(3) tax-exempt

6  organization and is registered as a domestic non-profit corporation under the laws of New Jersey.

7  Its headquarters are located at 1805 Swarthmore Avenue, Lakewood, New Jersey 08701 – the

8  same headquarters as Oorah.  Since at least 2020, Kars4Kids Inc. has been the controlling

9  organization for numerous subsidiaries, including: K4K LLC (real estate activities); K4K Media

10  LLC (advertising activities); CarsandMore2001 LLC (holding company); JFY Capital LLC

11  (holding company); Rolling Brook LLC (real estate activities); Charitable Holdings LLC (real

12  estate activities); RE 4 Kids LLC (real estate activities); Kars4Kids Holdings LLC (real estate

13  activities); K4K Ltd. (back office services in Israel); and Kars Resources Ltd. (back office services

14  in Israel) – all sharing the same headquarters as Oorah and Kars4Kids.

15      15.    Kars4Kids registered with the California Secretary of State as a foreign corporation doing

16  business in California in 2017.  Kars4Kids is a "person," as that term is defined in 18 U.S.C. §

17  1961(3), who engaged in racketeering activities.  Kars4Kids is also an "enterprise," as that term is

18  defined in 18 U.S.C. § 1961(4), which engaged in racketing activities.  It is also a member of an

19  association-in-fact "enterprise," as that term is defined in 18 U.S.C. § 1961(4), together with

20  Oorah, through which they conspired and engaged in racketeering activities.  Kars4Kids served as

21  the "fundraising arm" of this joint enterprise.

22      16.    Kars4Kids and Oorah are referred to collectively herein as "Defendants."

23  **III.    JURISDICTION AND VENUE**

24      17.    This action arises under 18 U.S.C. § 1961 *et seq*. This Court has subject matter

25  jurisdiction over this action pursuant to 18 U.S.C. § 1964 because the claims arise under RICO.

26  Similarly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

27  because the claims arise under federal law.

28

18.     This Court also has jurisdiction over this matter because it is a class action in which, on information and belief, the damages exceed $5 million, exclusive of interest and costs, the number of class members exceeds 100, and as demonstrated above and below, the parties are diverse pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

19.     This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367.

20.     This Court may exercise jurisdiction over Defendants because they have continuous and systematic contacts with this District, do substantial business in this State and within this District, and engage in unlawful practices in this District as described in this Complaint, so as to subject themselves to personal jurisdiction in this District, thus rendering the exercise of jurisdiction by this Court proper and necessary.  Specifically, Defendants purposely directed their misleading and deceptive TV, radio, and Internet solicitations to California residents as described herein; received and processed tens of thousands of car donations from California residents; and transferred the funds received from California donations to Oorah, which then used those funds for misrepresented and undisclosed purposes. Thus, a substantial portion of Defendants' fraudulent activities were directed at and occurred in California.

21.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events giving rise to Plaintiffs' claims occurred while they resided in this judicial District, including Defendants' misleading solicitations and Plaintiffs' vehicle donations.

## IV.    THE RICO ENTERPRISE SCHEME

22.     Defendants created and used a racketeering enterprise through which they employed deceptive and misleading advertisements to solicit vehicle donations under false pretenses to fund Oorah and its religious outreach activities. Defendants used both wires and mails of interstate commerce to carry out their common scheme. Through this pattern of racketeering, Defendants deceived tens of thousands of unwitting donors into donating their vehicles to surreptitiously fund Oorah.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### A. Oorah Created and Directed Kars4Kids to Broadcast Deceptive Ads and Solicit Charitable Donations on Its Behalf

23.    Oorah, which means "awaken" in Hebrew, is a *haredi* (or "ultra-orthodox") Jewish outreach organization headquartered in New Jersey.  Formerly known as Oorah Kiruv Rechokim Fund, Inc., Oorah was formed for the purpose of *kiruv rechokim*, or "drawing close those who are far," also referred to as simply "*kiruv*," from the Hebrew root meaning "near."  *Kiruv*, or *kiruv rechokim*, refers to outreach efforts by orthodox Jews to draw less observant Jews closer to traditional orthodox religious practice.  It is not an effort to help the needy or bring non-Jews into the Jewish fold; rather, it is aimed solely and specifically at encouraging those who are already Jewish to be more strictly religiously observant.

24.    In following its *kiruv* mission, Oorah's stated purpose is "[t]o support various outreach programs for unaffiliated Jews" and "develop" orthodox Jewish children and families.  According to an October 2016 article in the *Forward,* which covers news for a Jewish-American audience, Oorah "specializes in outreach to non-observant Jews [by] operating summer camps and other programs that seek to make non-Orthodox Jews more observant."  Oorah's outreach programs are directed solely to those of Jewish faith, excluding all others, for the purpose of converting them to orthodox or *haredi* Judaism.  It has no other purpose.

25.    Oorah created Kars4Kids as its internal fundraising arm and began "doing business as" ("d/b/a") Kars4Kids in 1995.  Oorah and its CEO, Mintz, later spun off Kars4Kids as a separate registered organization in 2000 under JOY For Our Youth Inc. ("JOY") (d/b/a/ Kars4Kids), also run by Mintz, to oversee Kars4Kids' fundraising efforts on Oorah's behalf.  JOY later changed its name to Kars4Kids Inc. (d/b/a Kars4Kids), still run by Mintz, in 2014.  Despite this separation on paper, Oorah, through its executives and joint-CEO Mintz, has continued to direct and participate in Kars4Kids' operations, including its solicitation and fundraising efforts performed on Oorah's behalf.

26.    Despite registering as distinct tax-exempt entities, Kars4Kids and Oorah have continued to operate as a single enterprise with a common motive – to surreptitiously fund Oorah and its unitary *kiruv* activities.  The organizations share the same headquarters and office space at 1805

Swarthmore Avenue in Lakewood, New Jersey. They have overlapping staff, including shared executives and administrative personnel. They are both run by the same CEO, Mintz, the son of their joint founder, Rabbi Chaim Mintz. Many Kars4Kids executives are relatives of Oorah executives. While Kars4Kids describes itself as Oorah's "sister charity," it has admitted in court filings that its "car donation business has **always** served as a fundraising arm on behalf of Oorah, Inc. and its predecessor entities," even after Oorah and Mintz incorporated it under a separate entity.[5] In other words, Kars4Kids' purpose and function is and always has been to serve as the fundraising arm of this joint enterprise to "fund[] Oorah."[6]

### 1.    Kars4Kids' Solicitation Ads

27.    To fulfill this "fundraising" purpose, Kars4Kids, under Oorah's direction, solicits charitable vehicle donations through TV, radio, and Internet ads, which feature the Kars4Kids "jingle." Oorah created and originally produced the Kars4Kids solicitation jingle, which first premiered on radio stations in the New York tri-state area in 1999. Oorah and Kars4Kids (then operating under JOY) later extended the jingle ads to New Jersey's airwaves in 2001, Chicago's in 2004, and California's in 2005. By 2008 (and continuing to this day), the jingle ads had plagued the nation on major radio broadcast networks such as Clear Channel and CBS, and by 2012, had expanded to online Internet radio and music streaming sites, such as Pandora.

28.    The original radio ad jingle created by Oorah included the following lyrics, sung by children: "One-eight-seven-seven cars for kids; K-A-R-S cars for kids; one-eight-seven-seven cars for kids; donate your car today." The radio ad also stated that Kars4Kids was a "recognized

---

[5] All emphasis added unless otherwise specified. Kars4Kids admitted in court filings in *Kars 4 Kids Inc. v. American CAN!*, Case No. 3:14-cv-07770 (D.N.J.), that its purpose has always been to fundraise on Oorah's behalf.

[6] When asked about Kars4Kids' purpose and programs specifically directed at helping California children, Kars4Kids' Chief Operating Officer ("COO") Esti Landau ("Landau") repeatedly testified under oath in *Puterbaugh v. Oorah, Inc.*, Case No. 8:21 cv-01593 (C.D. Cal.), on Kars4Kids' behalf as its Fed. R. Civ. P. 30(b)(6) designated representative, that Kars4Kids simply "funds Oorah."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    501(c)(3) non-profit organization," was "also at Kars4Kids.org," and that donors could receive a

2    tax deduction and vacation voucher for their donations.

3        29.    In or around 2013, Kars4Kids and Oorah expanded these radio ads by introducing a TV

4    commercial featuring a spruced-up version of the radio ad.  According to Kars4Kids COO Landau,

5    the TV commercial was "basically based off" of Oorah's original radio jingle.  The commercial

6    features a children's band dressed in pink pretending to play instruments and singing the same

7    jingle that includes Kars4Kids' name and phone number (1-877-KARS4KIDS) urging people to

8    "donate their cars today" for a vacation voucher and tax deduction.

9        30.    Kars4Kids remastered the TV commercial in 2019 to adapt its video to new technology

10    and higher resolution TVs.  While the actors changed (as the original actors were no longer

11    children), the content and script of the commercial remained unchanged from the prior 2013

12    version.  The full audio of the TV advertisement, performed by a racially diverse-looking group

13    of kids, is as follows:

14          "[sung] One-eight-seven-seven cars for kids; K-A-R-S cars for kids; one-eight-

15          seven-seven cars for kids; donate your car today. [spoken] Donate your car at

16          Kars4Kids.org. That's Kars with a K. Pickup is quick and easy. You'll also get a

17          vacation voucher and a tax deduction. [sung] One-eight-seven-seven cars for kids;

18          donate your car today."

19        31.    Text displayed very briefly on the screen at the end of the commercial states that

20    consumers should donate their car: "BECAUSE KIDS ARE OUR FUTURE," and that they can

21    "Learn how you can make a difference in the life of a child" at "Kars4kids.org/howtohelp."

22        32.    The website address displayed briefly, for less than one second, during the commercial,

23    (Kars4kids.org/howtohelp) directs viewers to a webpage that encourages people generally to

24    volunteer as mentors, advocates or by running awareness campaigns.  It does not discuss vehicle

25    donations, Kars4Kids' use of donation funds, or Oorah.  Defendants also broadcast the TV

26    commercials soliciting donations on YouTube and other online stations.  Kars4Kids and Oorah

27    use these same or substantially similar commercials to advertise on TV, radio, and Internet stations

28    throughout California and the country.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**2.     Kars4Kids' Donation Process**

33.     Consumers who hear or view the Kars4Kids solicitation ads can donate vehicles either by calling Kars4Kids ("1-877-Kars4Kids") or submitting a form online.  Either over the phone or online, the donor provides certain information about the vehicle, such as make, model, year, condition, and geographic location.  Kars4Kids then performs an internal assessment of the vehicle based on the donor's information and contracts with a local auction house or scrapyard to retrieve and tow the vehicle.  If towing service is not available through the auction house or scrapyard, Kars4Kids contracts separately with a towing service to tow and/or store the donated vehicle until it can be received by the auction house or scrapyard.  Around 60% of vehicles donated to Kars4Kids nationwide are retrieved and sold by Copart Auto Auction ("Copart"), a national auction house with its own towing service.   Copart performs auto auctions daily nationwide and auctions off the donated vehicles on Kars4Kids' behalf.  After auctioning donated vehicles, Copart sends Kars4Kids a bulk check of the sale proceeds, net of Copart's fee.  Copart sends these bulk checks to Kars4Kids around twice a week.

34.     A small number of donated vehicles are also sold at other smaller auction houses around the country on Kars4Kids' behalf, whereby Kars4Kids similarly receives the sale proceeds net of the auction house fee.  The rest are sold by Kars4Kids to scrapyards for parts.  Whether through an auction house or scrapyard, Kars4Kids does not handle this process "in house," but, rather, contracts with third party "middlemen" to tow, sell and monetize the vehicles.

35.     After monetizing donated vehicles through auction or scrapyard sales, Kars4Kids mails or emails donors a receipt indicating the amount the vehicle sold for so the donor can claim an itemized tax deduction, if applicable.  If the amount is under $500, Kars4Kids informs the donor that he or she may be eligible to claim an itemized tax deduction, if applicable, for the value of the vehicle up to $500.  If the amount received is over $500, Kars4Kids informs the donor of the specific amount the vehicle sold for, and that the donor may be eligible to claim an itemized tax deduction, if applicable, for the full amount by filing the proper tax forms.  Kars4Kids also sends donors a travel voucher for a three-day, two-night hotel-stay through a third-party vendor, Vacation Breakaway, which requires the recipient to pay a $50 "activation fee."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

36.    Pursuant to California Business and Professions Code §§ 17510.3 and 17510.4, in California, Kars4Kids is also required to provide donors with a "solicitation or sale for charitable purposes card."  The card must contain certain information, including "[t]he name and address of the combined campaign, each organization, or fund on behalf of which all or any part of the money collected will be utilized for charitable purposes," or, "[i]f there is no organization or fund, the manner in which the money collected will be utilized for charitable purposes."  This statute specifically requires Kars4Kids to disclose to California donors Oorah's involvement and use of their donations, as the "organization . . . on behalf of which all or any part of the money collected will be utilized for charitable purposes."  Kars4Kids does not do so.

**B.    Defendants' Solicitation Ads Are Deceptive and Misleading**

37.    Defendants' solicitation ads ask people to "donate [their] car today" . . . "BECAUSE KIDS ARE OUR FUTURE," claiming that Kars4Kids will provide "quick and easy" pick up of donated cars and will use them to benefit needy kids (*i.e.*, "4 Kids").  By design, the ads do not disclose specifically *how* Kars4Kids will use car donations to help kids, *which* kids the donations will help, or *where* those donations will be used.   Instead, they are clearly designed to make donors believe that Kars4Kids will use their donation to benefit a diverse group of needy children, particularly in the areas where it advertises, regardless of religious affiliation or other limiting ideological factors.

38.    The informational website address provided in the ads (Kars4kids.org/howtohelp) is, by design, similarly vague as to exactly which kids will benefit, where and how, simply encouraging people generally to volunteer as mentors, advocates or by running awareness campaigns.  Only by scrolling all the way down to the fine print that includes Kars4Kids' copyright notation at the very bottom of the page, in small type, does it eventually vaguely state: "Your donation will benefit Kars4Kids, a national organization dedicated to addressing the educational, material, emotional and spiritual needs of Jewish children and their families."  There is no mention of Oorah or its geographically limited *haredi* proselytizing activities.

39.    Kars4Kids' main website (Kars4kids.org), where donors can submit vehicle donation forms online, is even less revealing and woefully inadequate to avoid misleading consumers.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Among various information about Kars4Kids' "Fast, Free Pickup" and how donors can "Save Money On Your Taxes," it states only that "[y]our donation supports the youth and educational programs of national nonprofit Kars4Kids and our sister charity Oorah." Directly below, in larger bold print, the website further (falsely) claims that: "**We don't use a middleman. By keeping our process in-house, we cut out the extra costs often incurred by other charities. This means a higher percentage of your donation goes to help kids.**" While the website has other equally vague and misleading pages, it is structured so that donors are not required to view any other pages or disclosures about Kars4Kids' purpose or use of donation proceeds to submit a donation form online. Donors who donate over the phone are not required to view *any* Kars4Kids (or Oorah) website or other information.

40. Nothing in Defendants' TV, radio or Internet ads represent to viewers or listeners that the performers, or the underlying organization, are affiliated with any particular geographic location, religion, or sectarian ideology. By broadcasting on local TV and radio stations, the ads also suggest that at least a reasonable portion, if not a significant portion, of the proceeds will be used to help *local* needy children. That is actionable.

41. Like Plaintiffs, potential donors exposed to these ads would reasonably understand, albeit falsely, that: (i) Kars4Kids uses a significant amount of donation proceeds to help needy or disadvantaged children through its own charitable programs; (ii) donations are used for non-religious serious needs assistance, such as food, shelter, medical attention, medical research, etc.; (iii) donations are used to help children generally, without bias to any religious affiliation or ideology; and (iv) a reasonable percentage of donated funds are used to help children *locally* – as the ads themselves represent.

42. These ads are materially deceptive and misleading. Nowhere in the ads do Defendants inform donors that their donations are instead used almost exclusively to fund Oorah and its narrow purpose of converting non-orthodox Jewish families to orthodox religious ideology, predominantly in New York and New Jersey, and to pay for Kars4Kids' *and* Oorah's significant expenses and investments.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### 1.    Defendants Fail to Inform Donors that They Use Donations to Fund Oorah and Its Exclusionary Religious Outreach Activities

43.    Contrary to its ads, Kars4Kids does not operate any charitable programs or services to support children (or anyone) in California or elsewhere.  Instead, after monetizing car donations through auction and scrapyard sales, Kars4Kids, under Oorah's and Mintz's direction, simply transfers the bulk of the proceeds (after covering its own hefty expenses) to Oorah in the form of a purported "grant."

44.    In 2023, for instance, Kars4Kids reported $99,912,838 in revenue from charitable donations.[7]  It used $36,172,067 of that revenue (or 36%) on purported "grants" to third-party organizations for charitable purposes.  Of that amount, $34,123,050 – *or 94%* – of its total charitable spending was simply transferred to Oorah.  Kars4Kids used the remaining 64% of donations proceeds to cover its own operating expenses, including over $39 million spent on advertising, and to fill its own reserve coffers and investments.  None was spent on any charitable program run by Kars4Kids in California or elsewhere.

45.    In 2022, Kars4Kids reported $101,321,704 in revenue from charitable donations.  It used $46,385,027 of that revenue (or 46%) on purported "grants" to third-party organizations for charitable purposes.  Of that amount, $45,880,385 – *or 99%* – of its total purported charitable spending was simply transferred to Oorah.  Kars4Kids used the remaining 54% of donation proceeds to cover its own operating expenses, including over $35 million spent on advertising, and to fill its own reserve coffers and investments.  None was spent on any charitable program run by Kars4Kids in California or elsewhere.

46.    In 2021, Kars4Kids reported $121,549,389 in revenue from charitable donations. It used $66,574,335 of that revenue (or 55%) on purported "grants" to third-party organizations for charitable purposes. Of that amount, $66,271,957 – *or over 99%* – of its total purported charitable spending was simply transferred to Oorah.  Kars4Kids used the remaining 45% of donation proceeds to cover its own operating expenses, including over $36 million spent on advertising, and

---

[7] While Kars4Kids also receives boat, plane, and real estate donations, the vast majority of its charitable donations – at least 90% – are vehicles.

to fill its own reserve coffers and investments. None was spent on any charitable program run by Kars4Kids in California or elsewhere.

47. In 2020, Kars4Kids reported $107,313,885 in revenue from charitable donations. It used $44,709,280 of that revenue (or 42%) on purported "grants" to third-party organizations for charitable purposes. Of that amount, $44,398,524 – *or over 99%* – of its total purported charitable spending was simply transferred to Oorah. Kars4Kids used the remaining 58% of donation proceeds to cover its own operating expenses, including over $25 million spent on advertising, and to fill its own reserve coffers and investments. None was spent on any charitable program run by Kars4Kids in California or elsewhere.

48. In 2019, Kars4Kids reported $72,703,908 in revenue from charitable donations. It used $29,152,149 of that revenue (or 40%) on purported "grants" to third-party organizations for charitable purposes. Of that amount, $28,859,244 – *or 99%* – of its total purported charitable spending was transferred to Oorah. Kars4Kids used the remaining 60% of donation proceeds to cover its own operating expenses, including over $23 million spent on advertising, and to fill its own reserve coffers and investments. None was spent on any charitable program run by Kars4Kids in California or elsewhere.

49. As shown above, *nearly 100%* of vehicle donation proceeds purportedly used by Kars4Kids for the charitable purpose of "helping kids" is, instead, simply funneled to Oorah to fund its exclusionary orthodox religious "outreach" activities. Conversely, most of Oorah's reported revenue (around 85% in 2021 and 90% in 2022) comes directly from Kars4Kids. That is the purpose for which Oorah created Kars4Kids and its misleading ads (as both its d/b/a and a separate entity) – to serve as Oorah's "fundraising arm" to support and fund its orthodox *kiruv* activities. These purported "grant" transfers are consummated between Defendants through an association-in-fact enterprise with the common purpose of soliciting vehicle donations to secretly fund Oorah. There is no formal grant application process between the two entities.

50. Once Oorah receives these funds, it has full control over how to use them. Oorah uses a small amount of the funds it receives from Kars4Kids (less than 5%) to provide tuition assistance and summer camp subsidies solely for Jewish children, predominantly in New York and New

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Jersey, to attend its own orthodox summer camps in New York.[8]  These programs, run by Oorah and its affiliates, seek to convert Jewish children and their families to orthodox ideologies.  They are available only to Jewish families and exclude non-Jewish recipients.

51.    The remaining approximately 95% of donation funds received from Kars4Kids are used by Oorah to cover its various other religious orthodox "outreach" operations and expenses or are placed in Oorah's reserves and investments, which in 2023 amounted to over $199 million in assets.

52.    By representing to donors that their donations would be used to help local needy or disadvantaged children, without regard to any ethnic or religious affiliation or ideology, while failing to disclose that donations are instead used almost exclusively to fund Oorah and its orthodox "outreach" activities directed solely at converting Jewish families, Defendants' ads misled and deceived donors who, like Plaintiffs, would not have donated had they known the truth about Defendants' scheme.

### 2.    Defendants Fail to Inform Donors that They Use Donations to Benefit Jewish Families Primarily in New York and New Jersey

53.    While Defendants broadcast these ads and accept car donations nationwide, they fail to inform potential donors that Oorah (not Kars4Kids) uses their donations almost exclusively to benefit only Jewish families in a limited geographic area, primarily in New York and New Jersey, for the purpose of converting them to *haredi* or orthodox Judaism.  According to a 2017 compliance review conducted by the Office of the Attorney General of the State of Minnesota, over 99.9% of the $90 million raised by Kars4Kids from 2012-2014 was spent on charitable programs under the direction and control of Oorah, the two largest programs being its tuition assistance and summer camp programs in the Catskills area of New York for Jewish children.[9]

---

[8] Oorah also gives a small amount, less than 1%, to other orthodox Jewish organizations, such as its own affiliated organization, Congregation Oorah, "to promote religious education."

[9] Other Oorah programming identified by the Minnesota Attorney General included (i) ChillZone, a weekly meeting for "Jewish boys, girls and teens" to learn about Jewish heritage and a similar program in Israel for post-high school students continuing studies in Jewish education; (ii) holiday-related programs for Jewish-only families; (iii) a Jewish preschool and Torah Spot program on

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

According to the Minnesota Attorney General's report, less than 1% of the $3 million raised from Minnesota donors was spent on charitable programs for Minnesota children. The Minnesota Attorney General also concluded that, despite being registered as a separate entity, Kars4Kids continued to "primarily serve[] as the fundraising arm of Oorah[]" for these programs "under Oorah's direction and control."

54. Other states, including California, fare no better. According to Kars4Kids' COO Landau, of approximately 120,000 cars donated to Kars4Kids in 2021 nationwide (representing $114,439,611 in reported donation proceeds), around 30,000 of them, *or 25%,* were donated in California. That same year, however, Kars4Kids spent only $3,050 in the form of small charitable grants to third-party organizations in California – *less than 0.01%* of its approximate donation proceeds raised from Californians. Kars4Kids does not have any other programs or services designed or intended to benefit children (or anyone) in California.

55. A breakdown of Kars4Kids' purported charitable spending, which is entirely in the form of third-party "grants," to help California residents for the years 2019-2022 is as follows:

    a.   In 2019, Kars4Kids spent $5,950 on grants in California, representing only 0.02% of its total charitable spending.

    b.   In 2020, Kars4Kids spent $1,500 on grants in California, representing only 0.003% of its total charitable spending.

    c.   In 2021, Kars4Kids spent $3,050 on grants in California, representing only 0.005% of its total charitable spending.

    d.   As of January 2022, Kars4Kids had spent $500 on grants that year in California, representing only 0.001% of its total charitable spending.

Staten Island with weekly "Ask the Rabbi" classes for Jewish participants; (iv) Torah Mates, an online Jewish study program; and (v) Rebbetzins, a matchmaking program for single Jewish men and women. These programs were reportedly available *only* to Jewish participants, predominately in New York and New Jersey, with the *kiruv* purpose of promoting and converting to orthodox ideology.

56.  Like Plaintiffs, potential donors exposed to Kars4Kids' ads would reasonably believe that it uses a reasonable, if not significant, portion of their donation proceeds to help kids **locally** within their states, especially in states like California, where Kars4Kids advertises heavily and receives a significant portion – around 25% – of its donations.  To the contrary, though, the amount of donation proceeds that Kars4Kids spends in California (and most other states) to "help" local children is miniscule – less than a tenth of a percent.  Instead, it simply funnels the money (**around 99%**) to Oorah to fund its religious "outreach" activities primarily in New York and New Jersey.

57.  By suggesting to potential donors that their donations would be used, at least in part, to help **local** needy children, but failing to inform them that donations are, instead, used almost exclusively by Oorah to fund its unitary outreach activities, to members of only *one* religion in *one* limited (non-California) geographic area, Defendants' ads misled and deceived donors who, like Plaintiffs, would not have donated had they known the truth about Defendants' scheme.

### 3.  Defendants Fail to Inform Donors that the Vast Majority of Donations Are Used to Fund Both Kars4Kids' *and* Oorah's Operations and Investments

58.  Defendants' ads are also deceptive and misleading because they fail to disclose that Defendants use donations proceeds, in large part, to fund their own operations.  Contrary to not using a "middleman" and cutting "extra costs" so that "a higher percentage of your donation goes to help kids," Defendants use a majority of car donation proceeds to instead fund *both* Kars4Kids' *and* Oorah's expenses and investments, rather than helping kids.

59.  After monetizing donated vehicles through third-party auction or scrapyard sales (and paying fees to the towing, auction and scrapyard "middlemen"), Kars4Kids first uses a significant portion of the funds to cover its own expenses and operations, including millions of dollars sent to an office in Israel and tens of millions of dollars spent each year on its deceptive advertising campaign.

60.  On average from 2019-2023, Kars4Kids used around **56%** of its donation proceeds to either cover its own expenses or retain as investments. The remaining approximately 44% purportedly used to "help kids" was simply transferred to Oorah.  As of 2023, Kars4Kids had accumulated assets of over $35 million.

61.  The vehicle donation proceeds then get another "hair cut" when they make their way to Oorah.  In 2021, for instance, Kars4Kids transferred **over $66 million** of its more than $121 million in donation proceeds to Oorah (representing around 85% of Oorah's total revenue).  Of that amount, Oorah's total "charitable" spending consisted of only **$3.5 million** on "scholarships for students," including to cover tuition to its *own* camps, and **$85,000** as "grants" to various orthodox Jewish organizations (including its own affiliated organization, Congregation Oorah) in New York and New Jersey to "promote religious education."  Thus, **only 5%** of the $66 million in donation proceeds transferred to Oorah (and 2.9% of the total donation proceeds raised by Kars4Kids) was, in fact, used by Oorah for **any** purported "charitable" purpose.  The rest was spent on Oorah's orthodox *kiruv* operations and expenses or retained by Oorah as income and investments.  As of 2023, Oorah had accumulated assets of over $199 million.

62.  The below chart illustrates the donation proceeds raised by Kars4Kids in 2021-2023 that was ultimately used by Oorah for purported "charitable" purposes, which are indicative of its "charitable" spending over the past several years:

| Year | Donation Proceeds Raised by Kars4Kids | Amount Transferred to Oorah | Amount Used by Oorah for Purported "Charitable" Purposes | Percentage of Total Donation Proceeds |
|------|---------------------------------------|------------------------------|----------------------------------------------------------|----------------------------------------|
| 2021 | $121,549,389 | $66,271,957 | $3,579,501 | 2.9% |
| 2022 | $101,321,704 | $45,880,385 | $4,638,722 | 4.5% |
| 2023 | $99,912,838 | $34,123,050 | $4,811,425[10] | 4.8% |

63.  In short, only a miniscule amount of the total donation funds raised by Kars4Kids through Class member vehicle donations – less than 5% – is ultimately used by Defendants for **any** charitable purpose.

---

[10] Oorah also reported that, in 2023, it "granted" $1,253,186 *back* to Kars4Kids purportedly to "promote religious education" and sent over $16 million to undisclosed recipients in Israel.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

64.    By failing to inform potential donors that their donations would be used, in large part, to fund both Kars4Kids' *and* Oorah's significant expenses and investments rather than for charitable purposes, Defendants' ads misled and deceived donors who, like Plaintiffs, would not have donated had they known the truth about Defendants' scheme.

### C.    State Attorney General and Other Actions Against Defendants

65.    Defendants are acutely aware that their ads are, by design, likely to deceive and mislead reasonable donors. Shortly after releasing their Kars4Kids radio ads nationwide, Defendants' conduct spawned multiple government investigations by state attorney generals into the misleading nature of the ads.  In January 2009, Kars4Kids (then operating under JOY) and Oorah settled an action with the Pennsylvania Office of the Attorney General that accused the two organizations of misleading Pennsylvania donors about the use of their donations.  According to the settlement agreement, Kars4Kids and Oorah, using substantially similar ads still broadcast nationwide today, "solicited for contributions in Pennsylvania through a vehicle donation program in order to benefit disadvantaged children, but failed to properly inform donors that their donations would only benefit services for children of certain religious affiliations."  *See* Press Release, Pennsylvania Office of Attorney General, *Attorney General Corbett Announces $65,000 Settlement With Two New Jersey Charities* (Jan. 30, 2009).  The action further alleged that Kars4Kids solicited charitable contributions without being properly registered with the Pennsylvania Department of State and failed to include state-required disclosures in radio, print and Internet solicitations.  The settlement required Kars4Kids' parent company, JOY, to pay $45,000 in restitution, along with $10,000 in civil penalties and $10,000 in investigative costs and add detailed disclosures to its Pennsylvania solicitations and donation process disclosing the religious nature of its and Oorah's programs.

66.    Later that year, in April 2009, Kars4Kids (still operating under JOY) settled another action with the Oregon Office of the Attorney General that similarly accused it of deceiving Oregon donors about the use of their donations by failing "to disclose that the organization did not benefit needy children generally, but instead directed its efforts to a narrow religious purpose." *See* Press Release, Oregon Department of Justice, *Attorney General John Kroger Cracks Down on*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

*Out-of-State Charity Seeking Vehicle Donations* (Apr. 15, 2009). The Oregon Department of Justice also alleged that Kars4Kids misled Oregon donors by making unsubstantiated claims of being a "top rated" charity and failing to disclose that its "free vacation" voucher offer was designed to recruit people to attend timeshare presentations. The settlement required Kars4Kids to register as an Oregon charity, stop offering "free vacations" to Oregon donors, and pay the state $65,000.

67.    Defendants were again investigated by the Minnesota Office of the Attorney General in 2017. The Minnesota Attorney General's investigative report confirmed that, while not disclosed in its ads, Kars4Kids simply "acts as the fundraising arm of Oorah" and "does little direct charitable work itself." *See* Press Release, Office of the Minnesota Attorney General, *Swanson Issues Compliance Report on Kars4Kids* (May 4, 2017). According to the report, between 2012 and 2014, Kars4Kids transferred over 90% of its actual expenditures on charitable programming to Oorah, whose charitable mission was "to promote Orthodox Judaism, primarily to New Jersey and New York children." The report further found that Defendants' "radio, television and internet advertisements do not disclose that the charitable funds are targeted primarily to children in New York and New Jersey, and that Kars4Kids' and Oorah's primary purpose is to promote Orthodox Judaism to Jewish Children."

68.    The report also concluded that Kars4Kids had engaged in financial reporting shenanigans to make it appear to donors that more of its money was spent on charitable programs, as opposed to fundraising and overhead, than was really the case. Finally, the report disclosed that Kars4Kids and Oorah had lost around $9.7 million in vehicle donation-funded real estate investments since 2007, most of which were managed by their CEO's cousin.

69.    In 2021, a California donor filed an individual lawsuit against Defendants in federal court for false and misleading advertising relating to their Kars4Kids commercials. The donor alleged that Kars4Kids' TV and radio commercials violated California's FAL and UCL because they misrepresented that Kars4Kids would use donation proceeds to help diverse, needy children, particularly in California. Instead, Kars4Kids used the proceeds to fund Oorah and its religious outreach activities in New York and New Jersey. Relying on these ads, the plaintiff donated his

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

2001 Volvo to Kars4Kids believing, based on its ads, that his donation would be used to benefit needy children in California generally.  Like Plaintiffs here, the plaintiff there alleged that he would not have donated his vehicle had he known the truth about Defendants' purpose and use of his donation.

70.   In denying Kars4Kids' motion for summary judgment, the District Court found, under facts nearly identical to those here, that: (i) the plaintiff had demonstrated sufficient injury in fact from the loss of his donated car; (ii) the plaintiff's property loss "was caused by [Kars4Kids'] unfair business practice or false advertising;" and (iii) "a reasonable jury could conclude that Kars4Kids' advertising was misleading because it indicated donations would benefit needy children nationwide when it actually benefited primarily children of a particular faith in a particular geographic location."

71.   While these investigations and actions unquestionably alerted Defendants to the deceptive and misleading nature of their ads, requiring them to alter their solicitations in Oregon and Pennsylvania, Defendants have continued to broadcast their deceptive ads throughout the rest of the country, including in California.  The reason is apparent: Defendants would receive significantly less donations, and significantly less funding for Oorah's exclusionary orthodox outreach activities, if donors knew the truth about their scheme.

**D.    Defendants Profited from Their Misleading Ads and RICO Scheme**

72.   Defendants' scheme to defraud donors through misleading and deceptive ads has allowed them to solicit tens of thousands of car donations nationwide from unwitting donors.  From 2019 to 2023, Kars4Kids received *over 590,000* vehicle donations nationwide through Defendants' deceptive advertising scheme, a substantial portion of which (around 25% in 2021 alone) were from California donors.  Kars4Kids received *over $456 million* in proceeds from the sale of those donated vehicles, *over $219 million* of which (or around 99% of Kars4Kids' total "charitable" spending) was transferred to Oorah to fund its narrow religious purpose of promoting orthodox or *haredi* religious ideology to non-orthodox Jews in a particular geographic area, its expenses and investments.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### E.      Plaintiffs Were Victims of Defendants' Ongoing Scheme

73.    Mr. Savva saw and heard Defendants' misleading TV, radio, and Internet solicitation ads numerous times over the past five years (and prior), including during the months and years immediately prior to contacting Kars4Kids and donating his vehicle.  Based on these ads, Mr. Savva reasonably believed that Kars4Kids would use his donated vehicle to help a diverse group of needy or disadvantaged children, particularly in California where he saw and heard the ads.

74.    Based on this reasonable belief, in September 2024, Mr. Savva contacted Kars4Kids through its website to donate his vehicle.  At the time of his donation, Mr. Savva's car was in an operable condition.  Mr. Savva filled out Kars4Kids' online donation form, providing relevant information about his car.  A day or so later, Copart came to Mr. Savva's residence to retrieve the vehicle.

75.    After his car was picked up, in or around October 2024, Mr. Savva received an "Official Receipt" via email from Kars4Kids.  Regarding Kars4Kids' use of his donation, the receipt stated only that:

> Your donation makes a difference in the lives of the children we assist. Besides giving us the opportunity to help these youngsters and their families, your sincere interest in our cause brings us one step closer to making this troubled world a better place in which to live.

The email and receipt made no mention of Oorah, its narrow religious purpose or activities, or that Kars4Kids and Oorah would use Mr. Savva's donation to support religious "outreach" and proselytizing activities directed to members of one religion in one limited geographic area.

76.    The email also included a link to a vacation voucher for a three-day, two-night hotel stay from Vacation Breakaway, which Mr. Savva did not request or use.  The receipt further confirmed that "[n]o goods or services have been provided in return" for Mr. Savva's donation.

77.    The receipt also informed Mr. Savva that he could take a tax deduction, if applicable, for his charitable donation in the amount of the vehicle's value up to $500.  Like most taxpayers, however, Mr. Savva did not use or benefit from this type of itemized deduction.  According to the Internal Revenue Service ("IRS"), in 2021, the vast majority of Americans paying taxes used the

IRS's standardized deduction – only 9.3% of taxpayers claimed or benefited from itemized deductions. Mr. Savva did not claim or benefit from any tax deduction relating to his 2024 donation to Kars4Kids.

78. Like Mr. Savva, Mr. Vickers also saw and heard Defendants' misleading TV, radio, and Internet solicitation ads numerous times over the past several years (and prior), including during the months and years immediately prior to contacting Kars4Kids and donating his vehicle. Based on these ads, Mr. Vickers reasonably believed that Kars4Kids would use his donated vehicle to help a diverse group of low-income, needy, or disadvantaged children, particularly in California where he saw and heard the ads.

79. Based on this reasonable belief, in March 2025, Mr. Vickers contacted Kars4Kids through its website to donate his vehicle. At the time of his donation, Mr. Vickers' vehicle had a dead battery but was otherwise in an operable condition. Mr. Vickers filled out Kars4Kids' online donation form, providing relevant information about his car. A day or so later, a towing company came to Mr. Vickers' residence to retrieve the vehicle.

80. After his car was picked up, in or around March 2025, Mr. Vickers received an "Official Receipt" via email from Kars4Kids. Regarding Kars4Kids' use of his donation, the receipt stated only that:

> Your donation makes a difference in the lives of the children we assist. Besides giving us the opportunity to help these youngsters and their families, your sincere interest in our cause brings us one step closer to making this troubled world a better place in which to live.

The email and receipt made no mention of Oorah, its narrow religious purpose or activities, or that Kars4Kids and Oorah would use Mr. Vickers' donation to support religious "outreach" or proselytizing activities directed to members of one religion in one limited geographic area.

81. Mr. Vickers also received a vacation voucher from Vacation Breakaway via email from Kars4Kids for a three-day, two-night hotel stay, which he did not request or use. The Official Receipt further confirmed that "[n]o goods or services have been provided in return" for Mr. Vickers' donation.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

82.     The receipt also informed Mr. Vickers that his donation was tax deductible in the amount of the vehicle's value up to $500.  In the past, like most taxpayers, Mr. Vickers has not typically used or benefited from this type of itemized deduction.  Mr. Vickers has not yet filed a 2025 tax return or claimed or benefited from any tax deduction relating to his 2025 donation to Kars4Kids.

83.     Relying on Defendants' misleading and deceptive ads, Plaintiffs donated their vehicles to help local needy or disadvantaged children *in California*.  At no point during their communications with Kars4Kids did it inform them that their donations would instead be used by *Oorah* to promote specific religious ideology to families of one religion in one limited geographic area – outside of California – or to fund both Oorah's and Kars4Kids' hefty expenses and investments.  Plaintiffs also did not receive a "solicitation or sale for charitable purposes card" pursuant to California Business and Professions Code §§ 17510.3 and 17510.4 or any other information aside from the "Official Receipt" informing them of the way their donations would be used.

84.     Based on Defendants' misleading and deceptive ads, Plaintiffs donated (and lost) their vehicles, which, according to Kars4Kids, later sold at auction for undisclosed amounts.  Plaintiffs were damaged thereby.  Plaintiffs would not have donated their vehicles to Kars4Kids had they known the truth about Kars4Kids' and Oorah's undisclosed scheme and use of their donations.

## V.     DEFENDANTS' PARTICIPATION IN THE RICO ENTERPRISE

85.     Defendants violated RICO by engaging in: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).  Defendants' RICO violations are based on predicate acts of mail and wire fraud. As set forth throughout this Complaint, Oorah and Kars4Kids: (i) conspired and formed a scheme to defraud donors by creating and disseminating misleading and deceptive ads, on Oorah's behalf, for the common and undisclosed purpose of surreptitiously funding Oorah's exclusionary religious "outreach" programs, expenses and investments; (ii) formed an association-in-fact enterprise between them to carry out this scheme; (iii) used mails and wires to engage in this pattern of activities in furtherance of their scheme; (iv) did so with specific intent to deceive or defraud

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

donors; and (v) caused injury to Plaintiffs and Class members in the form of lost property donated under false pretenses. The common purpose of Defendants' enterprise was to defraud donors into donating vehicles to Kars4Kids for Oorah's benefit, and, as set forth above, Oorah and Kars4Kids each benefited financially from doing so. *See Sihler v. Fulfillment Lab, Inc.*, 2021 U.S. Dist. LEXIS 67685, at *28 (S.D. Cal. Apr. 7, 2021).

**A. Defendant Kars4Kids' Role in the RICO Enterprise**

86.    Kars4Kids used this enterprise to engage in a pattern of racketeering. Continuously since at least 2014 (and before that under Oorah and JOY), Kars4Kids, under Oorah's direction and control, has created and broadcast deceptive and misleading ads in California and nationwide soliciting charitable vehicle donations to purportedly help a diverse group of local needy or disadvantaged children, while instead funneling those donation proceeds to Oorah to fund its narrow religious purpose of promoting orthodox ideology to Jewish families in a particular geographic area, and to fund its and Oorah's expenses and investments. The pattern of racketeering actions Kars4Kids committed include:

a.    Conspiring with Oorah and serving as Oorah's agent to create, disseminate and perpetuate misleading and deceptive advertising, on Oorah's behalf, for the undisclosed purpose of funding Oorah' narrow religious "outreach" activities, expenses and investments. *See* ¶¶ 5-6, 25-32, 37-63, *supra*, 134-138, *infra*.

b.    Creating and producing TV, radio, and Internet commercials soliciting charitable vehicle donations, on Oorah's behalf, that contain material misrepresentations and omissions regarding its and Oorah's purpose and use of donation proceeds. *See* ¶¶ 25-32, 37-63, 67, *supra*.

c.    Broadcasting, or causing to be broadcast, advertisements over TV, radio, and Internet wire mediums in California and throughout the country that contain material misrepresentations and omissions regarding its and Oorah's purpose and use of donation proceeds. *See* ¶¶ 25-32, 37-63, 65-70, *supra*.

d.    Failing to disclose to donors that it uses their vehicle donations to: (i) fund Oorah and its narrow religious "outreach" activities, (ii) benefit families of only one

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

religion in one limited geographic area, and (iii) fund Kars4Kids' *and* Oorah's significant expenses and investments. *See* ¶¶ 37-63, *supra*.

e. Accepting and processing thousands of vehicle donations from donors in California and throughout the country over the telephone and Internet. *See* ¶¶ 33-34, 54, *supra*.

f. Contracting with third-party auction houses, scrapyards and towing companies to retrieve, store and sell donated vehicles. *See* ¶¶ 33-34, *supra*.

g. Receiving proceeds by wire or mail from third-party auction houses and scrapyards for the sale of donated vehicles. *See id.*

h. Mailing or emailing donors a receipt or other information indicating the amount of gross proceeds and tax deductions, if applicable, available from the sale of their vehicle. *See* ¶¶ 35-36, 75-77, 80-82, *supra*.

i. Using a majority of vehicle donation proceeds to pay for its own significant operating expenses and investments. *See* ¶¶ 43-48, *supra*.

j. Transferring nearly all remaining proceeds from vehicle donations to Oorah by mail and/or wire to fund its religious "outreach" activities, expenses and investments. *See* ¶¶ 43-51, 53-57, *supra*.

**B. Defendant Oorah's Role in the RICO Enterprise**

87.    Defendant Oorah similarly used this enterprise to engage in a pattern of racketeering. Oorah created Kars4Kids and its misleading ads, first operating Kars4Kids as its own d/b/a and internal fundraising arm, then registering it as a separate entity, under Oorah's control, to continue this fundraising activity on Oorah's behalf. Continuously since at least 2014 (and before that as its own d/b/a and under JOY), Oorah has continued to use and control Kars4Kids as its own fundraising arm to solicit vehicle donations, through misleading and deceptive ads, for the purpose of funding Oorah's expenses, investments and narrow religious outreach activities. The pattern of racketeering actions Oorah committed include:

a. Creating Kars4Kids and its misleading ads to solicit vehicle donations to fund its operations, investments, and orthodox "outreach" activities. Oorah first created Kars4Kids in 1995 as its own d/b/a and internal fundraising arm. Oorah and its

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

CEO, Mintz, later spun off Kars4Kids as a separate entity under JOY in 2000 and Kars4Kids Inc. in 2014 – also run by Mintz. Despite registering as distinct entities, Oorah, through its executives and joint-CEO Mintz, continues to direct Kars4Kids' operations and use Kars4Kids as its own "fundraising arm" to solicit vehicle donations on its behalf to fund its narrow religious activities, expenses and investments. *See* ¶¶ 5, 23-26, 43-51, 53-56, 59-63, *supra*.

b.  Creating, producing, and broadcasting, or causing to be broadcast, over wire mediums misleading and deceptive "Kars4Kids" advertisements. Oorah originally created and broadcast the misleading "Kars4Kids" ads, which included the radio "jingle" encouraging people to donate their cars "for kids": "[sung] One-eight-seven-seven cars for kids; K-A-R-S cars for kids; one-eight-seven-seven cars for kids; donate your car today." Oorah's radio ad also stated that Kars4Kids was a "recognized 501(c)(3) non-profit organization," was "also at Kars4Kids.org," and that donors could receive a tax deduction and vacation voucher for their donations. These ads first premiered on radio stations in 1999. Since then, Oorah and Kars4Kids have continued to expand the reach of these misleading ads to major radio broadcast networks, streaming services, TV networks, and Internet channels. According to Kars4Kids COO Landau, the Kars4Kids ads broadcast today are substantially similar to and "basically based off" Oorah's original radio jingle. *See* ¶¶ 27-32, *supra*.

c.  Conspiring with Kars4Kids, which serves as Oorah's agent, to continue disseminating these misleading and deceptive ads on Oorah's behalf for the undisclosed purpose of funding its narrow religious "outreach" activities, expenses and investments. *See* ¶¶ 5-6, 25-32, 37-63, *supra*, 134-138, *infra*.

d.  Continuing to use Kars4Kids as its own fundraising arm to solicit vehicle donations on its behalf. Despite registering Kars4Kids as a separate entity, Oorah has continued to use and direct Kars4Kids as its agent and own fundraising arm to

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

disseminate misleading ads for the purpose of soliciting vehicle donations to "fund[] Oorah."  *See* ¶¶ 25-26, 43-51, 53-55, 58-63, 67, *supra*.

e.   Receiving hundreds of millions of dollars in vehicle donation proceeds over the past 10+ years from Kars4Kids by mail and/or wire.  From 2019 to 2023 alone, Oorah received over $219 million in vehicle donation proceeds (or 99% of Kars4Kids' purported "charitable" spending) from Kars4Kids as a result of their misleading advertising scheme.  *See* ¶¶ 43-49, 60-62, *supra*.

f.   Using vehicle donation proceeds received from Kars4Kids to pay for its operating expenses, investments, and exclusionary religious "outreach" activities. *See* ¶¶ 43-51, 53-56, 58-63, 65-70, *supra*.

## VI.    DEFENDANTS' MISLEADING AND DECEPTIVE ADVERTISING

88.    Defendants run their deceptive TV, radio, and Internet advertisement campaigns to solicit charitable vehicle donations throughout the United States such that the vast majority of individuals who donate are exposed to the same or similar misleading and deceptive ads.

89.    Plaintiffs specifically recall viewing and hearing Kars4Kids' TV, radio and Internet commercials prior to donating and relied on them in donating their vehicles to Kars4Kids.  Based on these misleading advertisements, Plaintiffs reasonably believed that their vehicle donations would be used to help needy or disadvantaged children in California, without regard to any ethnic, religious or ideological affiliations.

90.    Kars4Kids was under a duty to Plaintiffs and Class members because it made suggestions and representations in its ads that their vehicle donations would be used to help local needy or disadvantaged children, without regard to any particular ethnic, religious or ideological affiliations, but suppressed, concealed, or did not disclose material facts that qualify those representations, namely that the donations would, instead, be used to fund Oorah and its narrow purpose of promoting orthodox religious ideology to people of only *one* religion in *one* geographic location, and to fund both Kars4Kids' and Oorah's significant expenses and investments.

---

91.    These intentional acts were expressly aimed at potential donors in California and nationwide.  Kars4Kids runs its misleading and deceptive ads on radio, TV, and Internet stations in California and throughout the country, except in Pennsylvania.

92.    These omissions and misrepresentations were by design and allowed Kars4Kids and Oorah to collect substantial vehicle donations from unwitting donors. Defendants knew, or by the exercise of reasonable care should have known, that their omissions were deceptive and misleading, and deliberately designed Kars4Kids' commercials to deceive reasonable consumers like Plaintiffs and Class members. These misrepresentations could have been corrected by simply informing donors of Kars4Kids' true purpose – to fund Oorah and its narrow purpose of promoting *haredi* or orthodox ideology to non-orthodox Jews in New York and New Jersey.

93.    Defendants' omissions and misrepresentations regarding the true use of vehicle donation proceeds were material to donors. A reasonable donor would attach importance to the truth or falsity of Kars4Kids' represented use of donation proceeds in deciding whether to make a vehicle donation.  Indeed, it is perhaps the most important factor that a potential donor considers.  As one consumer blog explained it: "**The issue is not that they do not tell people that they are a Jewish organization.  The issue is that they do not tell people that they are a *kiruv* organization. Nobody considers it a charity to evangelize for another's religion**."

94.    If donors had known that their car donations would be used primarily to fund a separate organization to support its orthodox *kiruv* "outreach" activities in New York and New Jersey, directed only to members of one religion, they could have made an informed decision about the disposition of their property.  Instead, Defendants' false and misleading ads caused Plaintiffs and Class members to donate (and lose) their vehicles under false pretenses.

95.    Defendants knew that their Kars4Kids ads were misleading donors. By 2009, Defendants had already settled actions brought by state attorney generals in Pennsylvania and Oregon relating to these same or similar misleading and deceptive ads.  Despite these settlements, which required Kars4Kids to include additional disclosures in their Pennsylvania and Oregon solicitations, Kars4Kids has continued to run its misleading and deceptive ads in California and throughout the rest of the country.

96.   Plaintiffs were damaged by these misrepresentations and omissions individually as described herein, and they relied on them in that they would not have donated their vehicles to Kars4Kids had they been informed of Defendant's scheme.  Class members have been similarly damaged by Defendants' material misrepresentations and omissions.

## VII.   CLASS ALLEGATIONS

97.   Plaintiffs bring this action individually and on behalf of a nationwide Class, pursuant to Federal Rule of Civil Procedure 23, defined as follows:

**Nationwide Class**: All persons who, within the applicable statute of limitations until the date notice is disseminated, were exposed to a Kars4Kids TV, radio, or Internet advertisement, who donated a vehicle to Kars4Kids, except those located within Pennsylvania, and who did not receive or use an itemized tax deduction for their donation.

98. Plaintiffs also seek certification of the following sub-class:

**California Sub-Class**: All persons who, within the applicable statute of limitations until the date notice is disseminated, were exposed to a Kars4Kids TV, radio, or Internet advertisement, who donated a vehicle to Kars4Kids within California, and who did not receive or use an itemized tax deduction for their donation.

99.   Excluded from the Classes are Defendants and their affiliates, agents, employees, legal representatives, co-conspirators, successors, subsidiaries, officers, and directors, and any members of their immediate families. Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth above, based on discovery and further investigation.

100.   The Classes are so numerous that joinder of all members is impracticable. It is apparent that the number of donors injured by Defendants' misleading ads is so large as to make joinder impracticable as the Classes are comprised of thousands of donors geographically dispersed throughout the United States.  In its 2022 Annual Report, Kars4Kids reported that in 2022 alone, it received 88,717 vehicle donations nationwide.  In 2021, it received around 120,000 vehicle donations nationwide, approximately 30,000 of which were from California donors.  While the exact number of potential Class and Sub-Class members for the entire relevant period is currently unknown, such information can be ascertained from Kars4Kids' records.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

101. Common questions of law and fact exist as to all members of the Classes that predominate over any questions affecting solely individual members of the Classes. Among the questions of law and fact common to the Classes are:

  a. Whether Defendants are persons within the meaning of the RICO statute;

  b. Whether Defendants formed or constituted an enterprise that engaged in racketeering activity;

  c. Whether Defendants violated federal mail and wire fraud laws;

  d. Whether Defendants' advertisements for the charitable donation of vehicles were materially misleading, or objectively likely to deceive a reasonable consumer;

  e. Whether Defendants engaged in false or misleading advertising;

  f. Whether Defendants' wrongful conduct was intentional or knowing;

  g. Whether the alleged conduct constitutes violations of the laws asserted;

  h. Whether Plaintiffs and Class members have suffered damages, and, if so, the nature and extent of those damages;

  i. Whether Plaintiffs' and Class members' injuries are a foreseeable and natural consequence of Defendants' conduct; and

  j. Whether Plaintiffs and Class members are entitled to appropriate remedies, including restitution, damages, and injunctive relief.

102. Plaintiffs' claims against Defendants are typical of Class members' claims because all members sustained damages arising out of Defendants' wrongful conduct as described herein. Plaintiffs' and Class members' claims all arise out of Defendants' uniform misrepresentations, omissions, and unlawful, unfair, and deceptive acts and practices related to their solicitation and use of charitable donations, and the relief sought is common.

103. Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel competent and experienced in class action lawsuits. Plaintiffs have no interests antagonistic to or in conflict with those of the Classes and therefore are adequate representatives for the Classes.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

104. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable, and it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and burden on the courts that individual actions would engender. The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, are far superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other Class members would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery. Also, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and possibly conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

105. Certification of this class action is appropriate because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting only individual members. Certification is also appropriate because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate the relief sought on behalf of the Classes as a whole. Certification of Plaintiffs' claims for class-wide treatment is also appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

106. Kars4Kids' records contain the entire universe of potential Class members. Notice to Class members may be accomplished inexpensively, efficiently, and in a manner best designed to protect the rights of all Class members. Class notice can likely be directly sent to individual Class members because Kars4Kids' own records and documents will likely identify all Class members and contain their contact information.

## VIII. COUNTS

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**FIRST CAUSE OF ACTION**
**Violation of the Racketeer Influenced and Corrupt Organizations Act**
**18 U.S.C. § 1961 *et seq.***
**(Against all Defendants)**

107.  Plaintiffs incorporate all preceding and subsequent paragraphs by reference as if set forth fully herein.

108.  Plaintiffs bring this claim against Defendants individually and on behalf of a nationwide Class under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*

109.  18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

110.  Under RICO, a "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).

111.  At all relevant times, each of the Defendants was, and is, each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c)-(d).  Defendants are each capable of holding legal or beneficial interest in property and do, in fact, hold legal or beneficial interests in property.

112.  Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  As separate legal entities, Kars4Kids and Oorah each separately constitute an "enterprise" that engaged in RICO and RICO conspiracy violations as described herein.

113.  An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *Sihler v. Fulfillment Lab, Inc.*, 2021 U.S. Dist. LEXIS 67685, at *27 (quoting *Boyle v. U.S.*, 556 U.S. 938, 946 (2009)).  Together, Oorah and Kars4Kids formed an association-in-fact that constitutes an "enterprise," as that term is defined in 18 U.S.C. § 1961(4), for the purpose of carrying out these racketeering activities.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    **1.    The RICO Enterprise(s)**

2    114.  Kars4Kids and Oorah created an association-in-fact enterprise (the "Enterprise") within

3    the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  These separate organizations bonded together

4    to form a distinct enterprise with a common purpose through which they could conduct a pattern

5    of racketeering activity.

6    115.  Defendants' Enterprise has the common goal of defrauding donors, including Plaintiffs

7    and Class members, out of tens of thousands of donated vehicles through a sustained and well-

8    orchestrated scheme of deceptive conduct and material misrepresentations made in their TV, radio,

9    and Internet ads for the undisclosed purpose of funding Oorah.

10   116.  The members of the Enterprise, Kars4Kids and Oorah, have long-standing and ongoing

11   relationships rooted in common ownership, common control, ongoing business dealings, and a

12   mutual interest and participation in the common fraudulent activities.

13   117.  The Enterprise has longevity sufficient to permit Defendants to pursue their goal of

14   defrauding Plaintiffs and Class members for their own benefit.  The Enterprise has been operating

15   as a racketeering enterprise since at least 2014 (and prior under JOY and Oorah), when Oorah

16   created and directed Kars4Kids for the purpose of soliciting charitable vehicle donations through

17   misleading and deceptive TV, radio, and Internet ads on Oorah's behalf.  Defendants used the

18   Enterprise to funnel Plaintiffs' and Class members' donation proceeds, obtained under false

19   pretenses, to Oorah to fund its expenses, investments, and narrow religious "outreach" activities.

20   The Enterprise qualifies as a close-ended enterprise because the predicate acts occurred over a

21   period exceeding three years (from 2014 to the date suit was filed).  It also qualifies as an open-

22   ended enterprise in that it was actively continuing to commit predicate fraudulent acts as of the

23   date this lawsuit was filed.  Defendants' past conduct by its nature poses a threat of repetition

24   because it has been ongoing throughout the past decade and has continued post-suit.

25   118.  The Enterprise is organized as a cohesive group with specific and assigned

26   responsibilities.  It has been structured to operate as a unit to accomplish the common goals and

27   purposes of their fraudulent scheme.  Each of the Defendants knew of the existence of and

28   conducted or participated in the operation or management of the Enterprise and its affairs.

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

119.  Defendants agreed to – and did – operate the Enterprise through a pattern of racketeering activity, including multiple related acts of wire fraud and mail fraud, as described herein.

120.  Defendants had a common purpose – to defraud potential donors into donating vehicles under false pretenses to fund Oorah.  Kars4Kids and Oorah both benefited financially from doing so.  As a result of their fraudulent conduct, under Oorah's direction, Kars4Kids was able to obtain significantly more vehicle donations, which it funneled to Oorah, as agreed within the Enterprise, to fund Oorah's undisclosed narrow religious outreach activities.  Defendants also used the ill-gotten donation proceeds, in large part, to pay for both Oorah's and Kars4Kids' expenses and investments.

121.  At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of 18 U.S.C. § 1962(c).  The Enterprise activities included repeated participation in TV, radio, and Internet advertising mediums; accepting and processing thousands of vehicle donations nationwide; facilitating the auction and sale of thousands of donated vehicles nationwide; and holding, transferring, and using donation funds for Defendants' undisclosed and misrepresented purposes.

122.  Throughout this RICO scheme, Kars4Kids served as Oorah's agent, under the direction and control of Oorah and its CEO, Mintz, to solicit donations on Oorah's behalf.   As a result of this agency relationship, Oorah is also separately liable under the doctrines of respondeat superior and vicarious liability for Kars4Kids' misconduct alleged herein and the damages arising therefrom.

**2.  Pattern of Racketeering Activity**

123.  Defendants conducted or participated in, directly or indirectly, the management or operation of the Enterprise and its affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and in violation of 18 U.S.C. § 1962(c); to wit, they have consistently and regularly committed multiple acts of racketeering activity spanning a period since at least 2014 (and prior) to the present, and with the substantial threat of these racketeering activities continuing.  These multiple acts shared a common or related purpose, goal, result,

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

participants, victims, and method of commission, as described below and throughout this Complaint.

124.  Defendants engaged in a common scheme to create and disseminate deceptive and misleading ads; defraud Plaintiffs and Class members into donating vehicles to Kars4Kids; and funnel their ill-gotten donation proceeds to Oorah.  The ultimate objective of Defendants' scheme was and is to deceive and induce Plaintiffs and Class members into unwittingly donating their vehicles – purportedly to help local needy or disadvantaged children generally – to instead surreptitiously fund Oorah and its narrow exclusionary orthodox "outreach" activities, expenses and investments.  This scheme directly benefited both Kars4Kids and Oorah, who share common control, leadership and (undisclosed) purpose, individually and collectively.

125.  Defendants accomplished their scheme to defraud Plaintiffs and the Classes by regularly and systematically misrepresenting, concealing, and/or failing to disclose material information to Plaintiffs and the Classes about their purpose and use of vehicle donation proceeds, and systematically deceiving Plaintiffs and the Classes about their activities, their coordination between one another, and the true nature of their fraudulent activities.

126.  In furtherance of their scheme, Defendants committed multiple acts of wire fraud, in violation of 18 U.S.C. § 1341, and mail fraud, in violation of 18 U.S.C. § 1343.  These acts include transmitting, or causing to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, videos and sounds, and also causing matters and things to be placed in a post office or authorized depository, or depositing or causing to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following:

a.  Defendants' "Kars4Kids" advertisements broadcast over TV, radio, email, and Internet wire mediums in California and throughout the country that contained material misrepresentations and omissions regarding Defendants' purpose and use of donation proceeds;

b.  Telephone calls, emails, and online communications between Kars4Kids, Oorah and advertising agents regarding the broadcast and dissemination of their misleading "Kars4Kids" advertisements;

c.  Telephone calls, emails, and online communications between Kars4Kids and Class members, including Plaintiffs, regarding vehicle donations and processing of vehicle donations;

d.  Communications by wire or mail between Kars4Kids and Class members, including Plaintiffs, regarding the amount of gross proceeds obtained from the sale of their donated vehicles;

e.  Emails, telephone calls, and other communications by wire or mail between Kars4Kids and third-party auction houses, scrapyards, and towing companies regarding the retrieval, storage and sale of donated vehicles;

f.  Funds transferred to Kars4Kids by wire or mail from third-party auction houses and scrapyards for the sale of donated vehicles;

g.  Emails, telephone calls, and other communications by wire or mail between and among each of the Defendants facilitating the transfer of donation proceeds from Kars4Kids to Oorah and otherwise promoting or furthering the scheme to defraud;

h.  Funds transferred by wire or mail from Kars4Kids to Oorah, with the intent that the funds be used for purposes misrepresented and omitted in their "Kars4Kids" solicitation ads; and

i.  Funds transferred by wire or mail between and among the Defendants and third parties, with the intent that those funds be used to promote, conduct, or engage in Defendants' fraudulent activities, or otherwise promote or further the scheme to defraud, with or without those third parties' knowledge of the true purpose of those transactions.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

### 3. Injury and Causation

127. As described throughout this Complaint, Defendants' material misrepresentations and omissions have caused Plaintiffs and the Class substantial damage and loss of property. The damages to Plaintiffs and the Class were foreseeable, contemplated and intended by Defendants.

128. As a direct and proximate result of Defendants' misleading and deceptive advertising, Plaintiffs and Class members have suffered injury in fact and have lost money or property from their vehicle donations.  As alleged herein, Plaintiffs would not have donated their vehicles to Kars4Kids had they known the truth about Defendants' scheme and suffered injury in fact and lost money or property through the donation of their vehicles because of Defendants' conduct.  Based on Defendants' deceptive and misleading ads, Plaintiffs donated (and lost) their cars to Kars4Kids. Plaintiffs suffered their injuries at the time they donated their vehicles under false pretenses, as well as when Kars4Kids transferred and/or used the proceeds from their vehicle donations for purposes other than those represented.  Class members have been similarly injured by Defendants' misrepresentations and omissions.  This harm – lost property donated under false pretenses – "falls squarely within RICO's statutory ambit." *Brookhaven Town Conservative Comm. v. Walsh,* 258 F. Supp. 3d 277, 285 (E.D.N.Y. 2017) ("if defendants falsely represented that plaintiffs' financial donations would be used for some purpose . . . and then used those funds [for another purpose], then 'defendants fraudulently induced plaintiffs to take actions and make expenditures that would result in their financial injury," constituting injury to property within the meaning of RICO); *see also Bias v. Wells Fargo Co.*, 742 F. Supp. 2d 915, 936 (N.D. Cal. 2013) ("wrongful deprivation" of money or property constitutes injury for RICO standing); *Exec. Comm. Representing the Signing of the Archdiocese of the Western United States v. Kaplan*, 2004 U.S. Dist. LEXIS 31799, at *9-10 (C.D. Cal. Sept. 21, 2004) (RICO injury and standing established where "but for Defendants' allegedly false representations regarding the use of [donations], Plaintiffs would not have donated . . .").

129. Defendants' representations were material to Plaintiffs' and Class members' decisions to donate to Kars4Kids, and a reasonable person would attach importance to the truth or falsity of Defendants' representations in determining whether to donate a vehicle to Kars4Kids.  A

reasonable donor would want (and expect) to know if their donation was being used for the purpose of promoting a specific religious ideology.  Plaintiffs and Class members reasonably relied on Kars4Kids' misleading ads, including the misrepresentations and omissions set forth herein, and donated their vehicles to Kars4Kids with the expectation that funds received therefrom would be used to help local needy or disadvantaged children generally, in the areas where Kars4Kids advertises, without bias or exclusion for any particular religious or ideological affiliation, and *not* for the purpose of promoting or evangelizing religious ideology to members of *one* religion in *one* limited geographic area.  Plaintiffs and Class members made donations that they would not have otherwise made had they been adequately informed or aware that Defendants' representations were false or misleading.  At the very least, they could have made an informed decision about the disposition (and loss) of their property.

130.  Plaintiffs and Class members have been and will continue to be injured by Defendants' violations of 18 U.S.C. § 1962(c), in an amount to be determined at trial.  Plaintiffs' and Class members' injuries are directly, proximately, and reasonably foreseeably resulting from or caused by these violations of 18 U.S.C. 1862(c) and include, but are not limited to, hundreds of millions of dollars in proceeds from Kars4Kids' sale of donated vehicles, lost property and opportunities, and attorneys' fees and costs.

131.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the Class are entitled to recover treble damages, costs, and attorneys' fees from Defendants.  The Court should also enter such equitable relief as it deems just and proper to prohibit Defendants' further fraudulent conduct.

### SECOND CAUSE OF ACTION
**Conspiracy to Violate RICO**
**18 U.S.C. § 1962(d)**
**(Against all Defendants)**

132.  Plaintiffs incorporate all preceding and subsequent paragraphs by reference as if set forth fully herein.

133.  Plaintiffs bring this claim against Defendants individually and on behalf of a nationwide Class under RICO, 18 U.S.C. § 1962(d).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    134. Defendants have unlawfully, knowingly, and willfully combined, conspired, and agreed

2    together to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

3    135. By and through Defendants' close business relationships with one another, including

4    their shared CEO and their close coordination with each other in the affairs of the Enterprise, each

5    Defendant knew the nature of the Enterprise and that it existed beyond the Defendant's individual

6    role.

7    136. Oorah initially created Kars4Kids and its misleading ads as part of its own internal

8    fundraising arm for the purpose of soliciting vehicle donations to fund its operations and orthodox

9    "outreach" activities. In 2000, Oorah and its CEO, Mintz, created a separate "charity," also run

10   by Mintz, to continue to oversee and broadcast the deceptive ads, initially under JOY and later

11   under Kars4Kids Inc. Despite this purported separation, Kars4Kids has continued, under Oorah's

12   direction, to "serve[] as the fundraising arm on behalf of Oorah," funneling over 99% of its

13   purported charitable spending to Oorah. While not disclosed in their ads, Defendants continue to

14   share the same headquarters, office space, President and CEO, administrative staff, and common

15   purpose – to "fund[] Oorah."

16   137. Through these connections and coordination, each Defendant knew that, together, they

17   were engaged in a conspiracy to commit predicate acts, and that the predicate acts were part of a

18   pattern of racketeering activity, and each agreed to pursue the same unlawful objective.

19   138. Each Defendant agreed to, and did, facilitate, conduct, and participate in the conduct,

20   management, or operation of the Enterprise's affairs through a pattern of racketeering activity in

21   violation of 18 U.S.C. § 1962(c). The participation and agreement of each Defendant was

22   necessary to allow the commission of this pattern of racketeering activity. Each Defendant was a

23   knowing, willing, and active participant in the Enterprise and its affairs, and each of the Defendants

24   shared a common purpose; namely, the orchestration, planning, perpetration, and execution of the

25   scheme to defraud Plaintiffs and Class members into donating their vehicles under false pretenses

26   for the purpose of funding Oorah. In the absence of agreement, the Enterprise could not have

27   operated as it did. Additional evidence of Defendants' agreement is particularly within their

28   control.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

139. Plaintiffs and the Class have been and will continue to be injured by reason of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), in an amount to be determined at trial. The injuries to Plaintiffs and the Class are directly, proximately, and reasonably foreseeably resulting from or caused by these violations and include, but are not limited to, millions of dollars in proceeds from Kars4Kids' sale of donated vehicles, lost property and opportunities, and attorneys' fees and costs.

140. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs and the Class are entitled to recover treble damages, plus costs and attorneys' fees from Defendants. The Court should also enter such equitable relief as it deems just and proper to prohibit Defendants' further fraudulent conduct.

### THIRD CAUSE OF ACTION
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 *et seq.***
**(Against all Defendants)**

141. Plaintiffs incorporate all preceding and subsequent paragraphs by reference as if set forth fully herein.

142. Plaintiffs bring this claim individually and on behalf of the California sub-class under California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.

143. Pursuant to Cal. Bus. & Prof. Code § 17500 *et seq.*, it is unlawful to engage in advertising, including when made with the intent of soliciting charitable donations, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . ."

144. Defendants violated § 17500 *et seq.*, as described herein, by creating and disseminating misleading and deceptive Kars4Kids ads in California for the solicitation of charitable vehicle donations. The Kars4Kids ads are, by design, intended to mislead potential donors to believe that Kars4Kids will use their donations to benefit needy or disadvantaged children in California, without bias or exclusion for any particular ethnic or religious affiliation. These representations are misleading and deceptive because they fail to inform donors that, instead, Kars4Kids uses their donations almost exclusively to: (i) fund Oorah and its orthodox "outreach" activities; (ii) benefit non-California residents of only one religion; and (iii) fund both Kars4Kids' and Oorah's

significant expenses and investments. Defendants' acts and omissions are likely to deceive, and have in fact deceived, Plaintiffs, Class members and the general donating public.

145. Defendants run these deceptive advertising campaigns to solicit charitable vehicle donations on radio stations, TV stations, and the Internet throughout California such that the vast majority of California residents who donate are exposed to the same or substantially similar misleading and deceptive ads.

146. Defendants knew, or by the exercise of reasonable care should have known, that their representations and omissions were untrue and misleading, and deliberately made the misrepresentations and omissions to deceive reasonable donors like Plaintiffs and the California sub-class members. Since at least 2009 and as recently as 2021, Defendants have been acutely aware that their Kars4Kids ads were, by design, deceiving and misleading reasonable donors based on multiple state attorney general investigations, settlements and other civil actions relating to the misleading nature of their ads.

147. Defendants engaged in these misleading and deceptive advertising practices to increase their donation revenues for the purpose of funding Oorah. Defendants knew that they would receive significantly less vehicle donations, and significantly less funding for Oorah's exclusionary "outreach" activities, if donors knew the truth about their purpose and use of donations.

148. Throughout this scheme, Kars4Kids served as Oorah's agent, under the direction and control of Oorah and its CEO, Mintz, to disseminate these misleading and deceptive ads and solicit donations on Oorah's behalf. As a result of this agency relationship, Oorah is also separately liable under the doctrines of respondeat superior and vicarious liability for Kars4Kids' misconduct alleged herein and the damages arising therefrom.

149. As a direct and proximate result of Defendants' misleading and deceptive advertising, Plaintiffs and the California sub-class members have suffered injury in fact and have lost money or property from their vehicle donations. As alleged herein, Plaintiffs would not have donated their vehicles to Kars4Kids had they known the truth about Defendants' scheme and suffered injury in fact and lost property or money because of Defendants' conduct. Based on Defendants' deceptive

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

and misleading ads, Plaintiffs donated (and lost) their cars to Kars4Kids. Plaintiffs suffered their injuries at the time they donated their vehicles under false pretenses, as well as when Kars4Kids transferred the funds to Oorah and/or used the proceeds from their vehicle donations for purposes other than those represented. The California sub-class members have been similarly injured by Defendants' misrepresentations and omissions. This type of lost money or property, donated under false pretenses, is a classic form of injury in fact.

150. Defendants' representations were material to Plaintiffs' and the California sub-class members' decisions to donate to Kars4Kids, and a reasonable person would have attached importance to the truth or falsity of Defendants' representations in determining whether to donate their vehicle to Kars4Kids. Plaintiffs and the California sub-class members reasonably relied on Kars4Kids' misleading ads, including the misrepresentations and omissions set forth above, and donated their vehicles to Kars4Kids with the expectation that funds received therefrom would be used to help needy or disadvantaged children generally, particularly in California. Plaintiffs and the California sub-class members made donations that they would not have otherwise made had they been adequately informed or aware that these representations were false. At the very least, they could have made an informed decision about the disposition of their property.

151. **Conspiracy**: Defendants conspired to commit the FAL violations alleged herein. Defendants agreed together to commit and benefit from these wrongful acts and intended that these wrongful acts be committed. Such an agreement is implied by Defendants' conduct and can be inferred from the nature of the acts performed.

152. Oorah initially created Kars4Kids and its misleading ads as part of its own internal fundraising arm for the purpose of soliciting vehicle donations to fund its operations and orthodox "outreach" activities. In 2000, Oorah and its CEO, Mintz, created a separate "charity," also run by Mintz, to oversee and broadcast the deceptive ads, initially under JOY and later under Kars4Kids Inc. Despite this purported separation, Kars4Kids has continued, under Oorah's direction, to "serve[] as the fundraising arm on behalf of Oorah," funneling over 99% of its purported charitable spending to Oorah. While not disclosed in their ads, Defendants also continue to share the same

headquarters, office space, President and CEO, administrative staff, and common purpose – to "fund[] Oorah."

153.  Through these connections and coordination, each Defendant knew that, together, they were involved in disseminating, and conspiring to disseminate, false and misleading ads in violation of FAL, and each agreed to pursue this common objective.  Each Defendant agreed to, and did, facilitate, conduct, and participate in the scheme. The participation and agreement of each Defendant was necessary to perpetuate the misleading and deceptive advertising alleged herein. Each Defendant was a knowing, willing, and active participant in the scheme and conspiracy, and each Defendant shared a common purpose, namely, the orchestration, planning, perpetration, and execution of the scheme to defraud Plaintiffs and the California sub-class members into donating their vehicles under false pretenses for the purpose of funding Oorah. In the absence of agreement, the scheme and conspiracy could not have operated as it did. Additional evidence of Defendants' agreement and participation is particularly within their control.

154.  Plaintiffs and the California sub-class members have been and will continue to be injured by reason of Defendants' FAL violations, in an amount to be determined at trial. The injuries to Plaintiffs and the California sub-class are directly, proximately, and reasonably foreseeably resulting from or caused by these violations and include, but are not limited to, millions of dollars in proceeds from Kars4Kids' sale of donated vehicles, lost property and opportunities, and attorneys' fees and costs.

155.  Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiffs and the California sub-class are entitled to restitution and injunctive relief from Defendants. The Court should also enter such equitable relief as it deems just and proper to prohibit Defendants' further fraudulent conduct.

### FOURTH CAUSE OF ACTION
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**(Against all Defendants)**

156.  Plaintiffs incorporate all preceding and subsequent paragraphs by reference as if set forth fully herein.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

157. Plaintiffs bring this claim individually and on behalf of the California sub-class under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

158. The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, or untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

**1.   Defendants' "Unfair" and "Fraudulent" Business Acts and Practices**

159. Defendants committed "unfair" and "fraudulent" business acts or practices by, among other things: (1) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the California sub-class members; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the California sub-class members; and (3) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Complaint.

160. The utility of Defendants' conduct as described herein is nonexistent. There is no utility to deceiving and misleading potential donors as to a charity's true purpose and use donation proceeds. The harm to potential donors caused by this conduct, by contrast, is significant. Defendants' conduct described herein not only deprived donors of the ability to make informed decisions about their property but also caused them to donate their vehicles to Kars4Kids under false pretenses and, thereby, unwittingly support a separate, undisclosed organization – Oorah – and its promotion of orthodox religious ideology to members of only one religion in a limited geographic area. Defendants' conduct deprived donors of both their property and alternative options for their donations and property.

161. Defendants' conduct as described in this Complaint is also immoral, unethical, oppressive, and unscrupulous, as well as substantially injurious to Plaintiffs and the California sub-class.  This is particularly evidenced by the ongoing nature of Defendants' scheme, despite multiple prior actions by state attorney generals against Defendants for this same or similar conduct in other states.

---

162. Defendants' conduct as described in this Complaint also offends established public policies. As detailed herein, Defendants' unfair and fraudulent practices include disseminating misleading and deceptive advertisements for the solicitation of charitable vehicle donations and using those donations for misrepresented and undisclosed purposes. Defendants' conduct violated numerous civil statutes, as described further herein. Those statutes exist for a reason: to protect consumers from unfair marketing practices. Such protections are especially important here, where a purported "charity" deceives unwitting donors into relinquishing control over their money or property.

### 2. Defendants' "Unlawful" Business Acts and Practices

163. Defendants' conduct as described in this Complaint was, and continues to be, unlawful. The law violations set forth herein serve as predicate violations under the UCL.

164. As detailed in Count Three and incorporated herein, Defendants' conduct violated California's FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*

165. As detailed in Counts One and Two and incorporated herein, Defendants' conduct violated RICO, 18 U.S.C. § 1961 *et seq.*

166. As detailed in Counts One and Two and incorporated herein, Defendants committed and conspired to commit multiple counts of wire fraud in violation of 18 U.S.C. § 1343.

167. As detailed in Counts One and Two and incorporated herein, Defendants committed and conspired to commit multiple counts of mail fraud in violation of 18 U.S.C. § 1341.

168. Defendants' conduct also violated Cal. Govt. Code § 12599.6, which prohibits charitable organizations and commercial fundraisers for charitable purpose from misrepresenting "the purpose of the charitable organization or the nature or purpose or beneficiary of a solicitation" through "words or conduct or failure to disclose a material fact." It also prohibits the use of "any unfair or deceptive acts or practices or engaging in any fraudulent conduct that creates a likelihood of confusion or misunderstanding," and "representing directly or by implication that a charitable organization will receive an amount greater than the actual net proceeds reasonably estimated to be retained by the charity for its use."

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

169. As detailed in Count Three and throughout this Complaint, Defendants created and disseminated misleading and deceptive "Kars4Kids" ads in California for the solicitation of charitable vehicle donations. The Kars4Kids ads are, by design, intended to mislead potential donors to believe that Kars4Kids will use their donations to benefit needy or disadvantaged children in California, without bias or exclusions for any particular ethnic or religious affiliation. These representations are misleading and deceptive because they fail to inform donors that, instead, their donations are used almost exclusively to: (i) fund Oorah and its orthodox "outreach" activities; (ii) benefit non-California residents of only one religion; and (iii) fund both Kars4Kids' and Oorah's significant operations and investments.

170. Defendants' conduct also violated Cal. Bus. & Prof. Code §§ 17510.3 and 17510.4, which require that, after a charitable donation is made in California, a "solicitation or sale for charitable purposes card shall be mailed to or otherwise delivered to the donor." The card must contain certain information, including "[t]he name and address of the combined campaign, each organization, or fund on behalf of which all or any party of the money collected will be utilized for charitable purposes," or, "[i]f there is no organization or fund, the manner in which the money collected will be utilized for charitable purposes." The receipts Kars4Kids mailed to California donors post-donation failed to include this required information and, instead, furthered Defendants' scheme to defraud by failing to disclose that donation proceeds would be used to fund Oorah and its narrow religious "outreach" activities, and both Kars4Kids' and Oorah's significant expenses and investments.

**3. Defendants' Misleading and Deceptive Advertising**

171. As detailed in Count Three and throughout this Complaint, Defendants created and disseminated misleading and deceptive "Kars4Kids" ads in California for the solicitation of charitable vehicle donations. The Kars4Kids ads are designed to make potential donors believe that Kars4Kids will use their donations to benefit needy or disadvantaged children in California, without bias or exclusions for any racial, ethnic, or religious affiliation. These representations are misleading and deceptive because they fail to inform donors that, in fact, their donations are instead used almost exclusively to: (i) fund Oorah and its orthodox "outreach" activities; (ii) benefit non-

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

California residents of only one religion; and (iii) fund Kars4Kids' and Oorah's significant operations and investments.

172.  Defendants broadcast their deceptive advertising campaign to solicit charitable vehicle donations on radio, TV, email, and Internet stations throughout California such that the vast majority of California residents who donate are exposed to the same or substantially similar misleading and deceptive ads.

173.  Defendants knew, or by the exercise of reasonable care should have known, that their representations and omissions were deceptive and misleading, and deliberately made the misrepresentations and omissions to deceive reasonable donors like Plaintiffs and the California class members.  Since at least 2009 and as recently as 2021, Defendants have been acutely aware that their Kars4Kids ads were, by design, deceiving and misleading reasonable donors based on multiple state attorney general investigations, settlements and other civil actions relating to the misleading nature of their ads.

174.  There were reasonable alternatives to further Defendants' legitimate business interests other than the conduct described herein. For example, Kars4Kids could have corrected its misrepresentations by disclosing in its advertisements its true purpose and use of donation proceeds – to fund Oorah and its narrow purpose of promoting orthodox religious ideology to non-orthodox Jews.

175.  Defendants engaged in these misleading and deceptive advertising practices to increase donation revenues.  Defendants knew that they would receive significantly less vehicle donations, and significantly less funding for Oorah's orthodox "outreach" activities, if donors knew the truth about their scheme and use of donations.

176.  Throughout this scheme, Kars4Kids served as Oorah's agent, under the direction and control of Oorah and its CEO, Mintz, to disseminate these misleading and deceptive ads and solicit donations on Oorah's behalf.  As a result of this agency relationship, Oorah is also separately liable under the doctrines of respondeat superior and vicarious liability for Kars4Kids' misconduct alleged herein and the damages arising therefrom.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

177.  As a direct and proximate result of Defendants' misleading and deceptive advertising, Plaintiffs and the California sub-class members have suffered injury in fact and have lost money or property from their vehicle donations. As alleged herein, Plaintiffs would not have donated their vehicles to Kars4Kids had they known the truth about Defendants' scheme and suffered injury in fact and lost money or property because of Defendants' conduct.  Based on Defendants' deceptive and misleading ads, Plaintiffs donated (and lost) their cars to Kars4Kids.  Plaintiffs suffered their injuries at the time they donated their vehicles under false pretenses, as well as when Kars4Kids transferred the proceeds to Oorah and/or used the proceeds from their vehicle donations for purposes other than those represented.  California sub-class members have been similarly injured by Defendants' misrepresentations and omissions.  This type of lost money or property, donated under false pretenses, is a classic form of injury in fact.

178.  Defendants' representations were material to Plaintiffs' and the California sub-class members' decisions to donate to Kars4Kids, and a reasonable person would attach importance to the truth or falsity of Defendants' representations in determining whether to donate a vehicle to Kars4Kids.  Plaintiffs and the California sub-class members reasonably relied on Defendants' misleading ads, including the misrepresentations and omissions set forth above, and donated their vehicles to Kars4Kids with the expectation that funds received therefrom would be used to help needy or disadvantaged children generally, particularly in California.  Plaintiffs and the California sub-class members made donations that they would not have otherwise made had they been adequately informed or aware that Defendants' representations were false.  At the very least, they could have made an informed decision about the disposition of their property.

179.  The unfair, unlawful, and fraudulent competitive practices described herein present a continuing threat to Plaintiffs and the California sub-class members in that Defendants persist and continue to engage in these practices and will not cease doing so unless and until forced to do so by this Court.  Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.  Under California Business & Professions Code § 17203, Plaintiffs are entitled to injunctive relief ordering Defendants to cease their unfair competitive practices, and Plaintiffs and the California sub-class members are entitled to restitution of the entirety of

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    Defendants' revenues associated with their unlawful acts and practices, or such portion of those

2    revenues as the Court may find equitable.

3        180. **Conspiracy**: Defendants conspired to commit the UCL violations alleged herein.

4    Defendants agreed together to commit and benefit from these wrongful acts and intended that these

5    wrongful acts be committed. Such an agreement is implied by Defendants' conduct and can be

6    inferred from the nature of the acts performed.

7        181. Oorah initially created Kars4Kids and its misleading ads as part of its own internal

8    fundraising arm for the purpose of soliciting vehicle donations to fund its operations and orthodox

9    "outreach" activities. In 2000, Oorah and its CEO, Mintz, created a separate "charity," also run by

10   Mintz, to oversee and broadcast the deceptive ads, initially under JOY and later under Kars4Kids

11   Inc. Despite this purported separation, Kars4Kids has continued, under Oorah's direction, to

12   "serve[] as the fundraising arm on behalf of Oorah," funneling over 99% of its purported charitable

13   spending to Oorah. While not disclosed in their ads, Defendants also continue to share the same

14   headquarters, office space, President and CEO, administrative staff, and common purpose – to

15   "fund[] Oorah."

16       182. Through these connections and coordination, each Defendant knew that, together, they

17   were engaged in a conspiracy and scheme to disseminate false and misleading ads in violation of

18   the UCL, and each agreed to pursue this common objective.  Each Defendant agreed to, and did,

19   facilitate, conduct, and participate in the scheme.  The participation and agreement of each

20   Defendant was necessary to perpetuate the misleading and deceptive advertising and UCL

21   violations alleged herein.  Each Defendant was a knowing, willing, and active participant in the

22   conspiracy and scheme, and each Defendant shared a common purpose, namely, the orchestration,

23   planning, perpetration, and execution of the scheme to defraud Plaintiffs and the California sub-

24   class members into donating their vehicles under false pretenses for the purpose of funding Oorah.

25   In the absence of agreement, the scheme and conspiracy could not have operated as it did.

26   Additional evidence of Defendants' agreement and participation is particularly within their

27   control.

28

CLASS ACTION COMPLAINT                    52                    CASE NO. _____

183.  Plaintiffs and the California sub-class members have been and will continue to be injured by reason of Defendants' UCL violations, in an amount to be determined at trial.  The injuries to Plaintiffs and the California sub-class are directly, proximately, and reasonably foreseeably resulting from or caused by these violations and include, but are not limited to, millions of dollars in proceeds from Kars4Kids' sale of donated vehicles, lost property and opportunities, and attorneys' fees and costs.

184.  Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204, Plaintiffs and the California sub-class are entitled to restitution and injunctive relief from Defendants.  The Court should also enter such equitable relief as it deems just and proper to prohibit Defendants' further fraudulent conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class and Sub-Class defined above, appointing Plaintiffs as representatives of the Classes, and designating their attorneys as Class Counsel;

B. Grant injunctive and/or declaratory relief, as permitted by law or equity, including an order prohibiting Defendants from engaging in the unfair, fraudulent, and unlawful acts described above;

C. Award to Plaintiffs and Class members restitution and/or other equitable relief, including without limitation disgorgement of all revenues, profits, and unjust enrichment that Defendants obtained from Plaintiffs and the Classes as a result of their unlawful, unfair, and deceptive business practices described herein;

D. Award Plaintiffs and Class members treble damages for the amount of damages they have sustained, plus the cost of this suit, including reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1964(c) and (d);

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1   E.  Award post-judgment interest on such monetary relief;

2   F.  Award reasonable attorneys' fees and costs; and

3   G.  Grant such further relief that this Court deems appropriate.

4

5                          **JURY DEMAND**

6       Plaintiffs, individually and on behalf of the putative Classes, demand a trial by jury on all

7   issues so triable.

8

9                                   Respectfully submitted,

10  Dated: November 4, 2025          **KELLER GROVER LLP**

11                          By: _____

12                                   ERIC A. GROVER
                                     *Attorneys for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861