Robyn E. Bladow (SBN 205189)
robyn.bladow@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Drive
Costa Mesa, CA 92626
Telephone:     (213) 680-8400
Facsimile:     (714) 982-8844

David I. Horowitz (SBN 248414)
david.horowitz@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
Telephone:     (310) 552-4200
Facsimile:     (310) 552-5900

*Attorneys for Defendants*
*Kars4Kids Inc. and Oorah, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| PAVEL SAVVA and ALEXANDER VICKERS, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>KARS4KIDS INC. and OORAH, INC.,<br><br>Defendants. | CASE NO. 4:25-CV-09498-YGR<br><br>**DEFENDANTS KARS4KIDS INC. AND OORAH, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date:  February 17, 2026<br>Hearing Time:  2:00 p.m.<br>Judge: Yvonne Gonzalez Rogers<br>Courtroom: Courtroom 1, 4th Floor<br><br>Complaint Filed Date:  November 4, 2025 |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on February 17, 2026, or as soon thereafter as it may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers, Defendant Kars4Kids Inc. ("Kars4Kids") and Defendant Oorah, Inc. ("Oorah") (collectively, "Defendants"), respectfully move under Fed. R. Civ. P. 9(b), 12(b)(1) and 12(b)(6) to dismiss Plaintiffs Pavel Savva and Alexander Vickers (collectively, "Plaintiffs") Class Action Complaint filed on November 4, 2025 in its entirety.

Defendants' Motion is supported by the Memorandum of Points and Authorities contained herein, the Request for Judicial Notice, the Declaration of Robyn E. Bladow and attached exhibits, the Notice of Manual Filing of Exhibit 1 to the Declaration of Robyn E. Bladow, the Proposed Order filed concurrently with this Motion, all other pleadings and papers filed in this action, and all other evidence, information, and argument that has been or will be presented to the Court in connection with the motion.

## STATEMENT OF RELIEF SOUGHT

Defendants seek to dismiss Plaintiffs' entire Complaint for failure to state a claim.

## STATEMENT OF ISSUES TO BE DECIDED

1. To state a RICO claim predicated on fraud, a plaintiff must plead each element of fraud with particularity and must show an injury to business or property. Does Plaintiffs' RICO claim fail where they did not allege any false or unlawfully omitted information or fraudulent intent, and they received the full benefit of the bargain they made with Kars4Kids?

2. To state a claim for conspiracy to violate RICO, a plaintiff must plead a RICO violation. Does Plaintiffs' conspiracy to violate RICO claim fail on the pleadings where they did not allege an actionable predicate act or injury?

3. To state an FAL claim or a UCL claim under the fraudulent prong, a plaintiff must plead with particularity circumstances showing fraud. Does Plaintiffs' FAL claim and UCL fraud claim (including the UCL unfairness claim, which is also grounded in

alleged fraud) fail on the pleadings where they do not allege any false or fraudulently omitted information?

4. To state a UCL claim under the unlawful prong, a plaintiff must state a claim for a violation of another law. Does Plaintiffs' UCL "unlawful" claim fail on the pleadings where they do not plausibly allege a predicate unlawful act?

5. Article III standing requires that an alleged injury is likely to be redressed by a favorable decision. Do Plaintiffs lack standing to bring their UCL and FAL claims, which seek restitution or injunctive relief, where restitution of property is not possible and they received the benefit of their bargain, and where there is no threat of future harm to warrant injunctive relief?

6. Alternatively, should all claims against Oorah be dismissed where Plaintiffs have not alleged that Oorah played any direct role or exercised control in disseminating the commercial upon which Plaintiffs base all of their claims?

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION..................................................................................................1

II. FACTUAL ALLEGATIONS.................................................................................4

III. LEGAL STANDARD ..........................................................................................8

IV. ARGUMENT ........................................................................................................8

    A.  The Complaint Fails to State Actionable RICO and RICO Conspiracy Claims.........8

        1.  The Complaint Does Not Allege Actionable Falsity, an Essential Element of the Predicate Act of Mail and Wire Fraud. ...............................8

        2.  The Complaint Does Not Allege an Intent to Defraud. ...............................14

        3.  The Complaint Does Not Allege RICO Standing........................................14

        4.  The RICO Conspiracy Claim Necessarily Fails as Well. ...........................15

    B.  The Complaint Does Not Allege Plausible Claims Under the FAL or UCL...........15

        1.  The FAL Claim and "Fraudulent" UCL Claim Fail Because the Complaint Does Not Allege Falsity...............................................................16

        2.  The UCL Unfairness Claim Falls with the FAL and UCL Fraud Claims. ................................................................................................17

        3.  The UCL "Unlawful" Claim Fails Because the Complaint Does Not Allege an Independent Violation of Law.......................................................17

        4.  The Complaint Also Does Not Allege Article III Standing for Plaintiffs' FAL and UCL Claims.................................................................18

    C.  To the Extent Any Claims Survive this Motion, the Court Should Dismiss Those Against Oorah. ................................................................................19

V.  CONCLUSION ...................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Wright,*
　　468 U.S. 737 (1984) .................................................................................................18

*Arroyo v. IA Lodging Santa Clara, LLC,*
　　2021 WL 2826707 (N.D. Cal. July 7, 2021) ...........................................................13

*Ashcroft v. Iqbal,*
　　556 U.S. 662 (2009) ..................................................................................................8

*Barrett v. Apple Inc.,*
　　2022 WL 2119131 (N.D. Cal. June 13, 2022) .........................................................16

*Beaver v. Tarsadia Hotels,*
　　816 F.3d 1170 (9th Cir. 2016) .................................................................................17

*Bell Atl. Corp. v. Twombly,*
　　550 U.S. 544 (2007) ..................................................................................................8

*Brown v. Madison Reed, Inc.,*
　　622 F. Supp. 3d 786 (N.D. Cal. 2022), *aff'd,* 2023 WL 8613496 (9th Cir. Dec. 13,
　　2023) .........................................................................................................................16

*Browning v. Am. Honda Motor Co.,*
　　549 F. Supp. 3d 996 (N.D. Cal. 2021) .......................................................................5

*Cal. Med. Assn. v. Aetna Health of Cal. Inc.,*
　　14 Cal. 5th 1075 (2023) ...........................................................................................18

*Castagnola v. Hewlett-Packard Co.,*
　　2012 WL 2159385 (N.D. Cal. June 13, 2012) .........................................................16

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
　　20 Cal. 4th 163 (1999) .............................................................................................17

*Chaset v. Fleer/Skybox Int'l, LP,*
　　300 F.3d 1083 (9th Cir. 2002) .................................................................................14

*City of Los Angeles v. Lyons,*
　　461 U.S. 95 (1983) ...................................................................................................19

*Coronavirus Rep. v. Apple, Inc.,*
　　85 F.4th 948 (9th Cir. 2023) ......................................................................................8

*Daugherty v. Am. Honda Motor Co.*,
   144 Cal. App. 4th 824 (2006) ..................................................................16

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ...............................................................8, 19

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ...............................................................13

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) .................................................................15

*Dinan v. Sandisk LLC*,
   2019 WL 2327923 (N.D. Cal. May 31, 2019) .........................................16

*Dugger v. Kars4Kids and Oorah*,
   No. 3:24-cv-02419, Dkt. 40 ............................................................. *passim*

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) .................................................................14

*Eidmann v. Walgreen Co.*,
   522 F. Supp. 3d 634 (N.D. Cal. 2021) ..................................................17

*Eller v. EquiTrust Life Ins. Co.*,
   778 F.3d 1089 (9th Cir. 2015) ........................................................8, 9, 10

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) .............................................................19, 20

*Farmers Ins. Grp. v. Cnty. of Santa Clara*,
   11 Cal. 4th 992 (1995) ...........................................................................20

*Howard v. Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) .................................................................15

*Illinois ex rel. Madigan Telemktg. Assocs.*,
   538 U.S. 600 (2003) ...............................................................................11

*In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*,
   785 F. Supp. 3d 1009 (D. Utah 2025) ....................................................13

*In re Toyota Motor Corp.*,
   826 F. Supp. 2d 1180 (C.D. Cal. 2011) ....................................................8

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130 (2020) ...........................................................................18

*Johnson v. Maker Ecosystem Growth Holdings, Inc.*,
   2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) .........................................20

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...........................................................................8, 17

*Knuttel v. Omaze, Inc.*,
   2022 WL 1843138 (C.D. Cal. Feb. 22, 2022)..................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ....................................................................................19

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)......................................................................................8, 18

*Marilao v. McDonald's Corp.*,
   632 F. Supp. 2d 1008 (S.D. Cal. 2009) ............................................................15

*Merritt v. Countrywide Fin. Corp.*,
   2015 WL 5542992 (N.D. Cal. Sept. 17, 2015), *aff'd*, 783 F. App'x 717 (9th Cir. 2019) .................................................................................................................20

*Meyer v. One W. Bank, F.S.B.*,
   91 F. Supp. 3d 1177 (C.D. Cal. 2015) ..............................................................14

*Neder v. United States*,
   527 U.S. 1 (1999)...............................................................................................10

*Ove v. Gwinn*,
   264 F.3d 817 (9th Cir. 2001) .............................................................................15

*Pasquantino v. United States*,
   544 U.S. 349 (2005)...........................................................................................11

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) .............................................................................20

*Pfizer Inc. v. Superior Court*,
   182 Cal. App. 4th 622 (2010) ............................................................................18

*Riley v. Nat'l Fed'n of Blind of N.C., Inc.*,
   487 U.S. 781 (1988)...........................................................................................11

*Searle v. Wyndham Int'l, Inc.*,
   102 Cal. App. 4th 1327 (2002) ..........................................................................17

*Stepps v. Allied Veterans of the World*,
   2015 WL 12838349 (M.D. Fla. Feb. 3, 2015) ..................................................15

*Swartz v. KMPG LLP*,
   476 F.3d 756 (9th Cir. 2007) .............................................................................19

*Turner v. Cook*,
    362 F.3d 1219 (9th Cir. 2004) ......................................................................................15

*United States v. Connolly*,
    24 F.4th 821 (2d Cir. 2022) ........................................................................................10

*United States v. Lloyd*,
    807 F.3d 1128 (9th Cir. 2015) .......................................................................................9

*Urzua v. Nat'l Veterans Servs. Fund*,
    2014 WL 12160751 (S.D. Cal. Jan. 28, 2014).......................................................11, 12

*Vashisht-Rota v. Harrisburg Univ.*,
    2024 WL 85884 (S.D. Cal. Jan. 8, 2024).......................................................................20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................................16

**Statutes**

18 U.S.C. § 1962 ..............................................................................................................8, 15

18 U.S.C. § 1964 ...................................................................................................................14

18 U.S.C. § 1984 ...................................................................................................................15

Cal. Bus. & Prof. Code § 17510.3 ..................................................................................10, 17

Cal. Bus. & Prof. Code § 17510.4 ..................................................................................10, 17

Cal. Govt. Code § 12599.6 ........................................................................................10, 17, 18

**Rules**

Fed. R. Civ. P. 9(b) ..............................................................................................8, 16, 19, 20

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................8

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................8

## I.    INTRODUCTION

Plaintiffs Pavel Savva ("Savva") and Alexander Vickers ("Vickers") (together, "Plaintiffs") each donated a vehicle to Kars4Kids Inc. ("Kars4Kids"). They say they did so after they "saw and heard Defendants' misleading TV, radio, and Internet solicitation ads numerous times" with the well-known jingle: "[sung] One-eight-seven-seven cars for kids; K-A-R-S cars for kids; one-eight-seven-seven cars for kids; donate your car today. [spoken] Donate your car at Kars4Kids.org." ¶¶ 30, 73, 78.[1] Although this jingle makes no representation about the residence, race, religion, socioeconomic status, or *any* characteristic of the children who might benefit from a donation, and the referenced website "Kars4Kids.org" through which Plaintiffs donated plainly discloses that Kars4Kids is a Jewish charity, Plaintiffs allege they were misled to believe their donations would be directed specifically to a "diverse group of needy or disadvantaged children, particularly in California." ¶¶ 73, 78. They further allege that, had they known only Jewish families would benefit from their donations, they would not have donated their twenty-year-old vehicles (one of which had a dead battery) to Kars4Kids. ¶¶ 7–8, 53, 79, 84. Plaintiffs allege there are "tens of thousands" more people who, like them, would never have donated their old cars had they known the proceeds would go to a Jewish organization and benefit "families of only one religion," *i.e.*, Jews. ¶¶ 7–8, 22, 57.

As Plaintiffs acknowledge in their Complaint, their counsel previously filed a similar action against Kars4Kids on behalf of another plaintiff who voluntarily dismissed his case after Judge Donato granted-in-part and denied-in-part Kars4Kids' motion to dismiss. ¶ 3. Specifically, the court dismissed the RICO claim and all claims against defendant Oorah, finding the plaintiff did not allege "facts regarding RICO injury and defendant Oorah's liability." *Dugger v. Kars4Kids and Oorah*, No. 3:24-cv-02419, Dkt. 40. And while the court's order did not articulate the court's bases for permitting the remaining claims to proceed, Plaintiffs here rely on Judge Donato's comment during the motion to dismiss hearing about the plausibility "that a reasonable consumer would be deceived even on the face of the ads." ¶ 3. While Kars4Kids disagrees with any suggestion that the "face of the ads" is deceptive, Plaintiffs' claims here still fail because *these* Plaintiffs admittedly viewed more than the "face of the

---

[1] Citations to "¶" are to the paragraphs of the Complaint. While Defendants do not concede the truth of Plaintiffs' factual allegations, this Motion's factual background is based on them.

ads." Indeed, in urging Judge Donato to deny reassignment, Plaintiffs emphasize they made "online donations" (as opposed to plaintiff Dugger's "telephone donation") and "[t]hus" they "saw and heard additional advertisements" than the prior plaintiff. *Dugger*, No. 3:24-cv-02419, Dkt. 52 at 2; *see also* ¶¶ 74, 79 (alleging that Plaintiffs donated their cars by filling out "Kars4Kids' online donation form"). Although Plaintiffs selectively quote from the Kars4Kids website they admittedly visited, the Court should consider it in full[2] because Plaintiffs (and anyone visiting the Kars4Kids.org website referenced in the advertisement) would have seen this in the middle of the landing page:

> A child's life is his home, school, friends and community. It takes a positive experience in all arenas to build a healthy child. Kars4Kids is a registered nonprofit Jewish organization who, together with Oorah, our sister charity, help thousands of children develop into productive members of the community.

Plaintiffs thus received a clear disclosure that Kars4Kids is a "Jewish organization" that works with "Oorah," its "sister charity." ¶ 39. And if they wanted to learn even more about Kars4Kids, they could have easily explored the "ABOUT" drop-down menu at the top of that same page:



Ex. 14. Had they done so, they would have seen prominent statements like "We're a registered 501(c)(3) nonprofit Jewish organization" (top of "About Kars4Kids" page, Exs. 18–20) and "We're a national Jewish nonprofit providing mentorship, educational support and nurturing year-round environments," as well as multiple videos regarding the programs supported by Kars4Kids ("Our Charity" page, Exs. 21–23).

---

[2] *See* Request for Judicial Notice and Incorporation by Reference ("RJN"), filed concurrently, and exhibits attached to the Declaration of Robyn Bladow ("Bladow Decl.") (cited as "Ex.").

Plaintiffs could have also clicked the bright blue hyperlink about Oorah on that same landing page, as shown below. Exs. 12–14.



You Help Kids

The proceeds from your vehicle supports the youth and educational programs of national nonprofit Kars4Kids and our sister charity Oorah.

Had they visited the Oorah page, they could have read descriptions of Oorah programs and seen a prominently featured picture of an Orthodox Jewish family (including a man and boys wearing yarmulkes) among other content demonstrating the obviously religious nature of the organization. Exs. 15–17.

Finally, Plaintiffs could have visited the "Kars4Kids.org/howtohelp" link displayed in text on the Commercial they say they saw "numerous times" (¶¶ 73, 78) and would have seen that their "donation will benefit Kars4Kids, a national organization dedicated to addressing the educational, material, emotional *and spiritual* needs of *Jewish* children and their families." ¶ 38 (emphasis added).

Although the Complaint selectively quotes from Kars4Kids' website, Plaintiffs say nothing of what they actually viewed when they admittedly visited the website, even though they claim that purportedly undisclosed facts about the use of their donation proceeds were "material" to them. *E.g.*, ¶¶ 93, 96. Of course, if Plaintiffs actually cared about which particular religious and ethnic groups the donation of their twenty-year old vehicles might benefit, apart from viewing the disclosures on Kars4Kids' landing page, they would have reviewed any of the other readily available subpages to find out even more about Kars4Kids' and Oorah's missions. Instead, they simply allege they filled out donation forms, and their 20+ year-old vehicles were picked up from their residences at no cost and with no strings attached. They then received the ability to take a tax deduction of up to $500 and received vacation vouchers. ¶¶ 76–77, 81–82. They nevertheless now purport to bring a 49-state class action on behalf of all persons who donated vehicles to Kars4Kids on the basis that they were misled about the Jewish nature of the organization.

Plaintiffs' Complaint fails for multiple reasons.

To begin, they have not alleged a misrepresentation or an actionable omission. Plaintiffs do not and cannot dispute that their "[C]ars" helped "Kids" and the Jewish nature of the charity was abundantly clear on the webpage they admittedly visited. And critically, to the extent the Complaint is based on a supposed failure to affirmatively tell donors exactly who will benefit from their donation proceeds and to what extent, Supreme Court and other precedents preclude that theory of deception or liability based on undisputable First Amendment jurisprudence.

Having pled no actionable deception, Plaintiffs cannot state claims for predicate acts of wire and mail fraud under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), nor for violations of California's False Advertising Law ("FAL") or Unfair Competition Law ("UCL").

Plaintiffs' RICO claim also fails, as it did in *Dugger*, because they do not plausibly allege fraudulent intent or standing and, without a RICO claim, they have no RICO conspiracy claim either.

Nor can Plaintiffs salvage their UCL claim by calling it a separate "unfairness" claim because their theory of liability is a unified fraudulent course of conduct that fails under the fraud prong. Plaintiffs have no plausible "unlawful" UCL claim either, as they do not allege an independent, actionable violation of any applicable law. Their RICO claim fails and they otherwise rely on statutes that are either inapplicable or require them to show fraud—which they do not and cannot do. In any event, Plaintiffs lack Article III standing to assert UCL or FAL claims because their claims are not redressable through restitution or an injunction, which are the only available remedies.

Finally, although Plaintiffs do not plead valid claims against either Defendant, as in *Dugger*, Plaintiffs' claims against Oorah also fail because Plaintiffs do not and cannot allege that Oorah directly participated in or had control over the ads upon which Plaintiffs base their claims.

The Court should dismiss Plaintiffs' Complaint in full.

## II.    FACTUAL ALLEGATIONS

Kars4Kids and Oorah are nonprofit organizations. ¶ 28. Kars4Kids runs a charity through which individuals can donate used vehicles. ¶ 1. Kars4Kids makes charitable grants to Oorah, Inc., which then offers various educational and other programs. ¶¶ 44, 49, 50. Kars4Kids promotes its charity nationwide through short TV, radio, and internet advertisements (the "Commercial") featuring a ubiquitous jingle that encourages listeners to donate their vehicles "for kids" and receive a "vacation

1   voucher and a tax deduction." ¶¶ 27–31. The jingle states, in its entirety: "One-eight-seven-seven cars

2   for kids; K-A-R-S cars for kids; one-eight-seven-seven cars for kids; donate your car today. Donate

3   your car at Kars4Kids.org. That's Kars with a K. Pickup is quick and easy. You'll also get a vacation

4   voucher and a tax deduction. One-eight-seven-seven cars for kids; donate your car today." ¶ 30.[3]

5       The Commercial refers viewers and listeners to "Kars4Kids' main website (Kars4Kids.org)

6   where donors can submit vehicle donation forms online[.]" ¶ 39. On that main website's landing page,

7   in addition to the donation form, the following black banner displays:

8   A child's life is his home, school, friends and community. It takes a positive experience in all arenas to build a healthy child.
    Kars4Kids is a registered nonprofit Jewish organization who, together with Oorah, our sister charity, help thousands of children
9                                                 develop into productive members of the community.

10  Exs. 12–14. That same webpage also reads, "[t]he proceeds from your vehicle supports the youth and

11  educational programs of national nonprofit Kars4Kids and our sister charity Oorah," with a bright blue

12  hyperlink on the word "Oorah" so a user can learn more about that organization. *Id.*

13

14                                    

15                              You Help Kids

16                              The proceeds from your vehicle supports
                                the youth and educational programs of
                                national nonprofit Kars4Kids and our sister
17                              charity Oorah.

18      In addition to the spoken word reference to "Kars4Kids.org" during the Commercial, text

19  displayed during the Commercial explains that donors can "Learn how you can make a difference in

20  the life of a child" at "Kars4Kids.org/howtohelp." ¶¶ 31, 37–38. The Commercial "directs viewers to

21  a webpage that encourages people generally to volunteer as mentors, advocates or by running

22  awareness campaigns." ¶ 32. That webpage explains that "Your donation will benefit Kars4Kids, *a*

23  *national organization dedicated to addressing the educational, material, emotional and spiritual*

24  *needs of Jewish children and their families*." ¶ 38 (emphasis added); Exs. 3–5. And if prospective

25  ――――――――――――――
    [3]Plaintiffs' Complaint omits the Commercial, which is attached as Ex. 1 to the Bladow Decl., along
26  with complete Kars4Kids and Oorah webpages from which Plaintiffs selectively quote. Exs. 3–23.
    Given Plaintiffs' claims are grounded entirely on the Commercial and websites, which they
    extensively cite and quote in the Complaint, *e.g.*, ¶¶ 30–32, 37–38, the Court should consider them
27  incorporated by reference. *See Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1003–05
    (N.D. Cal. 2021) (courts routinely consider websites incorporated-by-reference where a complaint
28  quotes or relies upon a portion of the page). *See* RJN.

―――――――――――――――――――――――――――――――――――――――――
DEFENDANTS' NOTICE OF MOTION                    5               CASE NO. 4:25-CV-09498-YGR
AND MOTION TO DISMISS COMPLAINT

donors want to learn even more about Kars4Kids, they can click the "ABOUT" link at the top of the page, which also makes plain the Jewish nature of the charity and affiliation with Oorah. Exs. 6–8 ("We're a registered nonprofit Jewish organization who, together with our sister charity Oorah help thousands of children …").

Similarly, the Kars4Kids.org landing page includes an "ABOUT" drop-down menu in the upper right-hand corner, which allows an interested viewer to toggle to "About Kars4Kids," "Our Charity," and "Volunteer" pages:



Ex. 14. The following disclosure is at the very top of the "About Kars4Kids" page:

> We roll up our sleeves to plant roots and invest in children because they are our future. We're a registered 501(c)(3) nonprofit Jewish organization who, together with our sister charity Oorah, help thousands of children.

Exs. 18–20. Additionally, the following disclosure is on the "Our Charity" page, along with multiple videos regarding Kars4Kids-supported programs:

> We're a national Jewish nonprofit providing mentorship, educational support and nurturing year-round environments. Whether it's tailored care from staff in summer camp, the safe haven of afterschool groups, or a mentor's listening ear, we provide the support youth need to thrive.

Exs. 21–23. There is also a banner at the bottom of that page, which reads "Your donation will benefit Kars4Kids, a national organization dedicated to addressing the educational, material, emotional and spiritual needs of Jewish children and their families." *Id*. This is the same language as is on the link from the website displayed on the Commercial. ¶ 38.

Individuals can donate their cars to Kars4Kids via phone or online. ¶ 33. While it is possible, but highly unlikely, that a telephone donor who chose not to visit the website was not exposed to all the website disclosures discussed above (despite the websites being referenced orally and in writing on the Commercial), online donors—like both Plaintiffs here—were. In either case, the donor provides vehicle information to Kars4Kids, and Kars4Kids then secures towing of the vehicle and sells or disposes of the vehicle. ¶¶ 33–35. Kars4Kids then "mails or emails donors a receipt indicating the amount the vehicle sold for so the donor can claim an itemized tax deduction … Kars4Kids also sends donors a travel voucher for a three-day, two-night hotel-stay through a third-party vendor." ¶ 35.

Plaintiffs allege they "saw and heard" Kars4Kids' "TV, radio, and Internet solicitation ads numerous times," including "during the months and years immediately prior to contacting Kars4Kids and donating [their] vehicle[s]." ¶¶ 73, 78. In September 2024, Savva donated a 2003 Audi A4 (¶ 9) and in March 2025, Vickers donated a 2005 Mitsubishi Lancer with a dead battery. ¶¶ 10, 79. Both Plaintiffs purportedly believed their donations would "help a diverse group of needy or disadvantaged children, particularly in California." ¶¶ 73, 78. Plaintiffs do not say when they last saw or heard a Kars4Kids ad before donating their 20+-year-old vehicles. Nor do they identify any Kars4Kids ad or statement that mentions California, a "diverse group," or "needy or disadvantaged children."

Plaintiffs do not allege any communication with any Kars4Kids employee or agent. Instead, they allege they "contacted Kars4Kids through its website to donate" their vehicles and filled out an online donation form. ¶¶ 74, 79. That means each Plaintiff necessarily visited Kars4Kids.org (¶ 39), though neither Plaintiff alleges what he read (or did not read) on that website. A towing company then retrieved their vehicles. ¶¶ 74, 79. Plaintiffs then received letters informing them that they could claim a tax deduction in the amount of the vehicle's value up to $500 and vacation vouchers for a three-day, two-night hotel stay. ¶¶ 76–77, 81–82.

According to Plaintiffs, they believed their donations would "help needy or disadvantaged children in California, without regard to any ethnic, religious, or ideological affiliations," even though the Commercials say nothing of the sort. ¶ 89. They further allege that, had they known they were donating to a religious Jewish organization and that their donations would help Jewish families in New York and New Jersey, they never would have donated their car to that charity. ¶¶ 7, 52, 84, 96.

1

## III.   LEGAL STANDARD

2

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must allege "enough facts to state a

3

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

5

do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for

6

more than a sheer possibility that a defendant has acted unlawfully." *Id*.

7

Because Plaintiffs' claims are all grounded in supposed fraud regarding the use of donation

8

proceeds (*see* ¶¶ 126 (RICO); 138 (RICO Conspiracy); 144–53 (FAL); 160–78 (UCL)), Rule 9(b)'s

9

heightened pleading standards apply. *See Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir.

10

2023) (RICO); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (FAL and UCL);

11

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (UCL).

12

Rule 12(b)(1) permits challenges to a plaintiff's Article III standing where there is potentially

13

no "case" or "controversy" for which the plaintiff is entitled to adjudication. *See Lujan v. Defs. of*

14

*Wildlife*, 504 U.S. 555, 559 (1992). This includes where, like here, it is not "likely" that the alleged

15

injury will be "redressed by a favorable decision." *Id*. at 560–61.

16

## IV.   ARGUMENT

17

### A.   The Complaint Fails to State Actionable RICO and RICO Conspiracy Claims.

18

A civil RICO claim requires that plaintiffs allege: "(1) conduct (2) of an enterprise[4] (3) through

19

a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's

20

business or property." *Coronavirus Rep*, 85 F.4th at 958. The Complaint fails multiple elements.

21

#### 1.   The Complaint Does Not Allege Actionable Falsity, an Essential Element of the Predicate Act of Mail and Wire Fraud.

22

A RICO claim requires "racketeering activity (known as predicate acts)." *Eller v. EquiTrust*

23

*Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (cleaned up). Here, Plaintiffs' RICO claim depends

24

entirely on a purported pattern of mail and wire fraud. ¶ 126. "Mail and wire fraud can be premised

25

26

---

[4] Plaintiffs' claim fails at the outset because they cannot allege that Kars4Kids and Oorah are distinct
entities forming an enterprise or that they acted beyond the scope of their regular business. *See, e.g.*,

27

*In re Toyota Motor Corp.*, 826 F. Supp. 2d 1180, 1201–02 (C.D. Cal. 2011) (dismissing RICO claim
for failure to allege an enterprise where all corporate defendants were allegedly both the RICO

28

"person[s]" and "enterprise," and conducted their regular business activities fraudulently).

on either a non-disclosure or an affirmative misrepresentation." *Eller*, 778 F.3d at 1092. Affirmative misrepresentations consist of statements that are literally false, as well as deceitful statements or "misleading half-truths." *United States v. Lloyd*, 807 F.3d 1128, 1153 (9th Cir. 2015). A pure "non-disclosure, however, can support a fraud charge only when there exists an independent duty that has been breached by the person so charged." *Eller*, 778 F.3d at 1092 (cleaned up). "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." *Id.* (cleaned up).

**No False Statement.** Plaintiffs have not alleged any literally false statement. Kars4Kids ads are all literally truthful. The entire Commercial contains: (1) a jingle with a phone number; (2) a suggestion to donate one's car for kids; (3) a statement that the donation process is easy; and (4) a website address where further information can be obtained. Plaintiffs do not claim any of that content is false—because it is not.

Plaintiffs call the Commercial deceptive because: (1) it somehow "suggest[s] and represent[s]" (without ever saying so) that the "donations would be used to help local needy or disadvantaged children, without regard to any particular ethnic, religious or ideological affiliations" (¶ 90); (2) Kars4Kids supports its mission of "helping kids" by granting funds to Oorah, its sister charity (¶¶ 43–52) (which is fully disclosed); and (3) Kars4Kids and Oorah spend portions of their collected donations on expenses other than "helping kids," such as overhead, advertising, investment, and reserves (*id.*) (which is not only lawful but protected against challenges under the First Amendment).

None of these allegations hold water because the Commercial: (1) nowhere promises that any particular children in any particular locality will benefit from any particular donation, (2) does not promise that Kars4Kids will *directly* "help kids" as opposed to grant funds to another nonprofit that does; and (3) does not assert that Kars4Kids has no administrative expenses or overhead. Plaintiffs, therefore, have not plausibly alleged any literal falsity.[5]

---

[5] Plaintiffs' reference to a separate, individual action filed against Oorah and Kars4Kids several years ago (¶¶ 69–70; *see Puterbaugh v. Oorah et al.*, No. 8:21-cv-01593-CJC-DFM) does not support any misrepresentation finding here. In *Puterbaugh*, the individual plaintiff survived a motion to dismiss because, unlike here, he alleged (though later retracted) that a Kars4Kids representative made separate, *affirmative* misstatements to him over the phone about how his donation would be used and the percentage the organization takes for costs. *Puterbaugh*, Dkt. 27 at 2.

---

**No Duty to Disclose.** Nor can Plaintiffs base a mail or wire fraud claim on an omission, which would require an *independent duty* between the speaker and listener. *Eller*, 778 F.3d at 1092. Plaintiffs do not and cannot allege Kars4Kids are their fiduciary. The only source Plaintiffs cite for such an independent duty is Cal. Bus. & Prof. Code § 17510.3 (¶ 36), which requires the disclosure of organizational information when soliciting certain charitable donations. But by its own terms, that law does not apply to "any radio or television solicitation of 60 seconds or less." *Id.* § 17510.4. Plaintiffs do not, and cannot, allege any Kars4Kids Commercial is more than 60 seconds long as is required for the cited Code section to apply. Ex. 1. This limitation, of course, makes sense, as Plaintiffs cannot seriously contend that a 30-second TV spot must conspicuously provide details about the innerworkings and expenses of the sponsoring charitable organization, every program that will benefit from donations to the organization, and the organization's mission and religious affiliation and focus—especially when all of that information is readily available on the websites identified orally and in writing during the Commercial. ¶ 30. Plaintiffs would apparently have each child actor on the Commercial wear a prominent Star of David to make sure viewers know that Jews might benefit from the proceeds of their donations.[6] That is not the law. Section 17510.3 thus creates no duty by Kars4Kids to disclose the allegedly omitted facts in the Commercial.[7]

**No "Half-Truths."** Plaintiffs' mail and wire fraud theory—and indeed their entire Complaint—thus turns on whether the Commercial contains misleading "half-truths" under the mail and wire fraud statutes. That is, whether the Commercial made a "representation stating the truth so far as it goes but is nonetheless misleading because of the 'failure to state additional or qualifying matter[.]'" *United States v. Connolly*, 24 F.4th 821, 833–34 (2d Cir. 2022) (cleaned up, quoting Restatement (Second) of Torts § 529); *see Neder v. United States*, 527 U.S. 1, 22 (1999) (acknowledging that, in enacting the mail and wire fraud statutes, Congress intended to adopt the definition of "fraud" that prevailed in common law). For instance, when defendants submitted customs

---

[6] Equally offensive is Plaintiffs' not-so-subtle reference to the "racially diverse-looking group of kids" in the Commercial (¶ 30), apparently suggesting that children of Jewish faith cannot be racially diverse.

[7] To the extent Plaintiffs intend to rely on Cal. Govt. Code § 12599.6—cited in passing in Plaintiffs' UCL claim (¶ 168)—it similarly does not create any freestanding duty of disclosure.

forms that failed to disclose that they were importing liquor into Canada, those defendants "represented to Canadian customs officials that their drivers had no goods to declare." *Pasquantino v. United States*, 544 U.S. 349, 357 (2005). In context, those defendants' omissions effectively became a fraud by misrepresentation. *Id.*

None of the Complaint's alleged implied misrepresentations meet the half-truth test. Not disclosing the alleged fact that Kars4Kids donations send Jewish kids in New York and New Jersey to camp (or that the camp is an *Orthodox* Jewish camp) or provide other programs for Jewish children does not make any statement in the Commercial false or misleading in isolation (and particularly so when coupled with the plain disclosures on the website). The donations are, indeed, still "for kids." The Commercial is 100% true, even were the allegedly omitted facts disclosed. *Cf. id.*

Similarly, omitting the fact that Kars4Kids accomplishes its goal of helping kids by granting money to Oorah, which then helps pay for Jewish kids to go to camp or attend religious based schools or other programs, does not render the Commercial false. The Commercial makes no representation as to *how* Kars4Kids goes about helping kids. That Kars4Kids helps kids through a "sister charity" does not change the fact that Kars4Kids helps kids. The same is true about the alleged omissions regarding the use of donated funds, in part, to cover organizational expenses.

**First Amendment Precludes Any Claim Absent Affirmative Misrepresentation.** Indeed, Plaintiffs' theories about "undisclosed" use of donation proceeds *all* fail because the Supreme Court has spoken on this issue, and district courts have followed, to ensure that charitable speech is protected by the First Amendment against efforts by plaintiffs to scrutinize an organization's use of funds. In *Illinois ex rel. Madigan Telemarketing Assocs.*, 538 U.S. 600, 601 (2003), the Supreme Court held that charitable speech is protected by the First Amendment. To that end, the Court found that a fraud action may *only* be maintained where there is an *affirmative misrepresentation* of how funds are used, and that "[s]imply labeling an action one for 'fraud' … will not carry the day." *See also Riley v. Nat'l Fed'n of Blind of N.C., Inc.*, 487 U.S. 781, 795, 800 (1988). Similarly, in *Urzua v. Nat'l Veterans Servs. Fund*, 2014 WL 12160751, at *1, 3–4 (S.D. Cal. Jan. 28, 2014), the court granted a motion to dismiss false advertising claims based on the plaintiff's allegation that his National Veterans Services Fund donation did not sufficiently benefit veterans. The court found no "falsity" because "[n]owhere

does [defendant] claim that donations would be used in a certain way, or that a certain percentage of donations would be passed directly to veterans." *Id*. at *3. The court concluded that "Plaintiff's sweeping allegations run headlong into the First Amendment." *Id*. The same is true here, where Plaintiffs identify no affirmative representation, let alone <u>mis</u>representation, about exactly where their donation proceeds would be used. *See Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *7–8 (C.D. Cal. Feb. 22, 2022) (distinguishing "mere reference to 'donation'" which "is not an affirmative misrepresentation that renders fraudulent [defendant's] retention of up to 85% of the money it receives" from explicit representation "that money donated to the campaign 'will be given to [specifically named charity]'"). Having pled no *affirmative* misrepresentation regarding how exactly Kars4Kids' (or Oorah's) funds will be spent or allocated, Plaintiffs' claims "run headlong into the First Amendment" and should be dismissed.[8]

**Facts Were Disclosed.** The Commercial cannot be a misleading half-truth in any event because Kars4Kids *did*, in fact, disclose facts that should have disabused Plaintiffs of their purported assumption about the Kars4Kids organization, its connection to Oorah, and which religion or how religious the kids are who might benefit from their donation. Indeed, right below Plaintiffs' online donation forms (¶¶ 74, 79), the webpage explains "[t]he proceeds from your vehicle supports the youth and educational programs of national nonprofit Kars4Kids and our sister charity <u>Oorah</u>." Exs. 12–14;[9] ¶ 39. And the highlighted blue link to Oorah's website allows an interested donor to further explore those youth programs and their Jewish nature.

This same webpage also discloses "Kars4Kids is a registered nonprofit Jewish organization who, together with Oorah, our sister charity, help thousands of children[.]" Exs. 12–14. Plaintiffs cannot allege a misleading half-truth while ignoring adjacent language on a webpage they admittedly visited regarding Kars4Kids' status as a Jewish charity and Oorah's involvement.[10] The Complaint

---

[8] The *Dugger* court did not reach the First Amendment issue, but advised the parties that it would later take the issue up. Ex. 24 at p. 20. Plaintiff Dugger dismissed his complaint before the court was able to do so. There is no reason to not address this dispositive issue now.

[9] Ex. 12, an archive of the Kars4Kids.org webpage from when Savva filled out a donation form in September 2024 (¶ 74), similarly states "[y]our donation supports the youth and educational programs of national nonprofit Kars4Kids and our sister charity, <u>Oorah</u>." Ex. 12.

[10] The Complaint cites information from Oorah's and Kars4Kids' tax returns to try to support their challenge to these organizations' relationship and organizational costs, but these documents are also

---

also admits that on Kars4Kids.org/howtohelp—the URL cited in the Commercial—Kars4Kids explains that "[y]our donation will benefit Kars4Kids, a national organization dedicated to addressing the educational, material, emotional and spiritual needs of Jewish children and their families." ¶¶ 32, 38; Exs. 3–5.[11] When a literally true advertisement points a consumer to a place where he can get more information about its subject, the advertisement cannot be misleading if the alleged omission is disclosed in that locale. *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1158, 1163–64 (9th Cir. 2012) (holding that defendant's advertisement did not fraudulently omit that a credit card it offered had an annual fee because the terms and conditions available on defendant's website and referenced in the ad disclosed it). This is especially true where, as here, Plaintiffs admittedly visited the website to enter into the transactions at issue. *See Arroyo v. IA Lodging Santa Clara, LLC*, 2021 WL 2826707, at *2 (N.D. Cal. July 7, 2021) (granting motion to dismiss claims that hotel failed to disclose information about accessibility after considering disclosures made on judicially noticed and incorporated-by-reference public webpages containing disclosures).

    **No Plausible Materiality.** If Plaintiffs in opposition contend that they somehow put on blinders and did not view these many disclosures, then they cannot reconcile their generalized allegations that the mission of the organization was somehow material to their donation decision. Nor are such generalized allegations sufficient to plausibly allege materiality in any event. *See In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 785 F. Supp. 3d 1009, 1039–40 (D. Utah 2025) (dismissing fraudulent concealment claim that church failed to disclose separate entity that received donations, where donations were directed, and various investment activities, finding (among other

---

publicly available, and were, at all pertinent times, posted on Kars4Kids' and Oorah's websites. *Financials*, KARS4KIDS PROGRAMS, https://www.kars4kidsprograms.org/about-us/financials.php.

[11] Plaintiffs try to diminish this disclosure by complaining about having to "scroll[]" to see it and that it is "in small type" and "vague[]." ¶ 38. Although this plain statement is anything but vague and the white words on black background are easily viewed, it is just one of several website statements disclosing Kars4Kids' mission. *See, e.g.*, Exs. 6–8 ("We're a registered nonprofit Jewish organization. …"); Exs. 9–11 ("Our all-encompassing programs give Jewish children and their families the support, resources and guidance they need to develop into productive members of the community.") (photos of young men in yarmulkes). In any event, by suggesting such disclosures are required (or are insufficient), Plaintiffs essentially ask the Court to require Jewish business owners to conspicuously identify themselves in all advertising so that people can decide not to patronize them on that basis.

---

reasons) the complaint "is devoid of any allegations identifying why and how [the undisclosed] information would be material to an objectively reasonable donor").

Given that there were no affirmative misrepresentations, that none of the allegedly omitted facts rendered the Commercial misleading and that, as a matter of law, Plaintiffs could not have been misled by "omitted" information that is protected by the First Amendment (or was in fact disclosed), they have not alleged plausible predicates of mail or wire fraud, and thus their RICO claim must fail.

### 2.   The Complaint Does Not Allege an Intent to Defraud.

A RICO claim premised on mail or wire fraud also requires plausible allegations of the defendant's specific intent to defraud. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). "Conclusory statements of law" do not suffice. *Id.* at 998. Moreover, the *facts* must "tend to exclude a plausible and innocuous alternative explanation." *Id.*

Here, other than wholly conclusory allegations (¶¶ 130, 136), the Complaint does not plausibly allege any *facts* that establish fraudulent intent. Kars4Kids' website, cited in the Commercial, reveals the nature of its charitable mission, and Plaintiffs admit they visited that "website to donate [their] vehicle[s]." ¶¶ 74, 79. Disclosure of accurate facts is flatly inconsistent with an intent to defraud. *See Meyer v. One W. Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1184 (C.D. Cal. 2015) (dismissing RICO claim based on "scheme" to pay kickbacks because disclosures stating force-placed insurance might be more expensive and that mortgage servicer might receive compensation "were incompatible with allegations of a scheme intended to deceive"). Given the myriad website disclosures, Plaintiffs have not dispelled the plausible and innocuous explanation that the finer programmatic details of Kars4Kids' work on children's behalf would be impossible to disclose in a 30-second TV spot.

### 3.   The Complaint Does Not Allege RICO Standing.

"[A] RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by [reason of] the conduct constituting the violation." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (cleaned up); *see* 18 U.S.C. § 1964(c). A plaintiff does not "suffer an injury cognizable under RICO" when it receives the benefit it bargained for in a transaction. *Chaset*, 300 F.3d at 1087. "Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing." *Id.* (quotation omitted). "Without a harm

to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).

As in *Dugger*, the Complaint does not allege injury. Plaintiffs received the full monetary and property benefit advertised. Plaintiffs agreed to donate their unwanted vehicles. Kars4Kids agreed to collect their vehicles and provide them tax write-off documentation and "a vacation voucher ... from Vacation Breakaway."[12] ¶¶ 76, 81. Both parties got what they expected. There is no injury.

Defendants are aware of no authority that would consider the use of proceeds from a donor's in-kind donation consistent with his donative intent a property interest, especially when the donor receives the promised in-kind benefit for his donation. *See generally Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (injury to intangible right to receive honest services, absent concrete financial harm, is not injury to business or property under 18 U.S.C. § 1984(d)); *see also Stepps v. Allied Veterans of the World*, 2015 WL 12838349, at *4 (M.D. Fla. Feb. 3, 2015) (dismissing RICO claim because expectation that "a significant portion of Allied's proceeds would benefit veterans' organizations" is an "intangible" injury). Plaintiffs have not alleged injury to business or property and thus have no RICO standing.

### 4.    The RICO Conspiracy Claim Necessarily Fails as Well.

Finally, "failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy" under 18 U.S.C. § 1962(d). *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004). Plaintiffs' RICO conspiracy claim fails.

### B.    The Complaint Does Not Allege Plausible Claims Under the FAL or UCL.

Plaintiffs' state law claims fail for many of the same reasons as their RICO claim.

---

[12] That Plaintiffs did not use the vacation voucher (¶¶ 76, 81) and Savva failed to take a tax deduction for his charitable donation (¶ 77) are irrelevant. *See Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013 (S.D. Cal. 2009) (concluding plaintiff failed to "allege that he lost money or property, as his gift card still retains its value to redeem it").

1

### 1.    The FAL Claim and "Fraudulent" UCL Claim Fail Because the Complaint Does Not Allege Falsity.

Similar to Plaintiffs' RICO claims premised on wire fraud, their FAL claim and UCL "fraudulent" claim do not adequately allege falsity. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (falsity must be alleged with Rule 9(b) particularity). To that end, they must allege that a statement: (1) is literally untrue, (2) omits material information that is contrary to an affirmative representation, or (3) omits information the defendant has an affirmative duty to disclose. *See Barrett v. Apple Inc.*, 2022 WL 2119131, at *10–11 (N.D. Cal. June 13, 2022) (dismissing UCL and FAL claims where plaintiffs "failed to state a claim for fraud based on affirmative misrepresentations"; failed to allege an affirmative "duty to disclose"; and failed to identify an omission contrary to a representation).

For the reasons described above, Plaintiffs have not alleged a single false statement. *Supra* IV.A.1.

Plaintiffs also do not allege a half-truth in the form of a material omission that would make affirmatively stated facts untrue or misleading. *Id*. Here, there was no omission *at all* (let alone one that would make a representation misleading) because Plaintiffs concede the "omitted" information was available for review on the website (¶¶ 29–30, 36), which both Plaintiffs visited before making their donations. ¶¶ 74, 79; *see, e.g.*, *Dinan v. Sandisk LLC*, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019) ("What ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting: the package actually discloses the fact that Plaintiff complains it omits[.]"); *Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, at *10 (N.D. Cal. June 13, 2012) (dismissing UCL claim after considering the "clear and easily understandable terms" that were "on the same page and in close proximity to the box provided to [sign up]"); *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 806 (N.D. Cal. 2022), *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) (dismissing FAL and UCL omission claims "based on the product box and the website, which [plaintiff] visited" because defendant "plainly disclosed the [allegedly omitted] ingredients in both places").

Nor can Plaintiffs allege any freestanding duty of disclosure regarding how funds are used. *Supra* IV.A.1; *see Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) ("We

cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL."); *Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1335 (2002) (no FAL or fraudulent UCL claim where no duty to disclose facts).

All fraud-based claims should be dismissed because Plaintiffs do not allege falsity.

### 2. The UCL Unfairness Claim Falls with the FAL and UCL Fraud Claims.

The Ninth Circuit has held that when a plaintiff alleges a unified fraudulent course of conduct and grounds his claims in fraud, and his claims under the fraudulent prong are inadequately pled, the court need not "separately analyz[e] . . . claims under the unfairness prong of the UCL." *Kearns*, 567 F.3d at 1127. That is the case here. *See* ¶¶ 159–62 (combining "Unfair" and "Fraudulent" business practices allegations); *e.g.*, *Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021) (dismissing claim under unfair prong of UCL that "consists entirely of the allegations also proffered to support [plaintiff's] claim under the fraudulent prong of the UCL" which court dismissed). Plaintiffs' UCL unfairness claim must be dismissed.

### 3. The UCL "Unlawful" Claim Fails Because the Complaint Does Not Allege an Independent Violation of Law.

"The UCL's unlawful prong looks to other sources of substantive law . . . to proscribe the kinds of unlawful business practices punishable under the statute." *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) (cleaned up). In doing so, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, the Complaint alleges violations of (1) RICO; (2) the FAL; (3) California Business & Professions Code §§ 17510.3 and 17510.4, which require disclosure of certain information in connection with charitable solicitations; and (4) California Government Code § 12599.6, which proscribes false or misleading statements by fundraisers in the course of soliciting charitable donations. ¶¶ 164–70.

As to (1) and (2), the unlawfulness claim falls with the substantive claims for RICO, RICO conspiracy, and the FAL. *Supra* IV.A, IV.B.1. And as to (3), as noted above, the disclosure obligations of § 17510.3 do not apply to a television advertisement that is less than 60 seconds long. Cal. Bus. & Prof. Code § 17510.4. To the extent Plaintiffs suggest a violation of § 17510.3 for failure to make a

---

disclosure *after* they donated their vehicles, *see* ¶ 170, that non-disclosure logically could not have been the cause of their donation. Absent a loss of money or property caused by a violation, there is no basis for a private UCL claim. *See Cal. Med. Assn. v. Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1096 (2023) (Cal. Bus. & Prof. Code § 17204 creates "a causation requirement on UCL standing").

Finally, as to (4), California Government Code § 12599.6 prohibits a charitable organization from, in relevant part: (a) "misrepresent[ing] the purpose of the charitable organization or the nature or purpose or beneficiary of a solicitation," and (b) "using any unfair or deceptive acts or practices or engaging in any fraudulent conduct that creates a likelihood of confusion or misunderstanding." *See* Cal. Govt. Code § 12599.6(a), (f)(2). Plaintiffs' apparent theory is that Defendants violated § 12599.6(a) for essentially the same reasons they violated the FAL or the fraudulent prong of the UCL. ¶ 154. Section 12599.6 has not been meaningfully construed by any court. But there is no reason to believe that concepts of unfairness, deception, or fraud expressed in that statute apply any differently than they do under the UCL more generally. *Accord Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1159 (2020) (harmonizing terms that appear across different code provisions directed to similar subjects). Thus, since there are no actionable allegations under those theories, there is no independent violation of § 12599.6 to substantiate an "unlawfulness" claim.

### 4.    The Complaint Also Does Not Allege Article III Standing for Plaintiffs' FAL and UCL Claims.

Article III of the U.S. Constitution limits federal court jurisdiction to "cases" and "controversies," of which standing is "an essential and unchanging" component. *Lujan*, 504 U.S. at 560. "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). The Article III standing test requires that it is "likely," as opposed to merely "speculative," that the claimed injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal citations omitted).

"The remedies available in a UCL or FAL action are generally limited to injunctive relief and restitution." *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 631 (2010). "Restitution" would require the defendant to "restore" money or property to the plaintiff that the defendant obtained as a

result of its unfair competition or false advertising. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003). Here, Kars4Kids obtained property from Plaintiffs, not money. But restitution of property is impossible here because, as Plaintiffs acknowledge, Kars4Kids already sold their vehicles. ¶¶ 75–77, 80–82, 84. Restitution of the property's value would similarly be improper because Plaintiffs no longer wanted the vehicles and already obtained the expected benefit from their donation of tax write off documentation and vacation vouchers (and taking twenty-year-old vehicles—one of which was non-functioning—off their hands). *Id*. Disgorgement of the proceeds Kars4Kids earned by selling the vehicles at auction would not be a proper remedy either. *Korea Supply*, 29 Cal. 4th at 1140 (disgorgement of profits not proper UCL remedy). Restitution is thus unavailable under the UCL or FAL. *See id*. at 1144–45. It is irrelevant that Plaintiffs allegedly did not itemize their donations or use their vacation voucher when they still received what they bargained for.

Article III standing to obtain injunctive relief exists only "where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Although "a previously deceived consumer may have standing to seek an injunction" where he is now aware of the fraudulent practices, the consumer still must allege an *actual threat of future harm*. *Davidson*, 889 F.3d at 969–71. Plaintiffs allege nothing more than broad, hypothetical "continuing threat." ¶ 179. That is not enough.

Plaintiffs' UCL and FAL claims do not permit judicial redress and thus fail under Article III.

### C.    To the Extent Any Claims Survive this Motion, the Court Should Dismiss Those Against Oorah.

Finally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together . . . ." *Swartz v. KMPG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). That is true for both federal and state law claims. *Id.*; *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) ("A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500."). A plaintiff must allege a defendant's "personal participation." *Emery*, 95 Cal. App. 4th at 960.

Plaintiffs do not and cannot plead that Oorah played any direct role in disseminating the Commercial upon which Plaintiffs base their claims. The Complaint alleges only that (1) Kars4Kids

"fundrais[es] on Oorah's behalf" and is "Oorah's 'sister charity,'" ¶¶ 25–26 and (2) Oorah "creat[ed] Kars4Kids … and began 'doing business as' ("d/b/a") Kars4Kids in 1995," ¶ 25, and "created … the Kars4Kids solicitation jingle … in 1999." ¶ 27. These allegations contain no *facts* plausibly showing Oorah participated in any supposed violation of RICO, the UCL or FAL. *See Merritt v. Countrywide Fin. Corp.*, 2015 WL 5542992, at *15 (N.D. Cal. Sept. 17, 2015), *aff'd*, 783 F. App'x 717 (9th Cir. 2019) (dismissing claims where "Plaintiffs' pleadings continue to fail to set forth *each* defendant's alleged misrepresentations with specificity. Defendants … are grouped together … with no way to distinguish who did what"); *Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2023 WL 2191214, at *4 (N.D. Cal. Feb. 22, 2023) (failure to inform defendant of its false statements violates Rule 9(b)).

Further, there is no secondary liability for UCL or FAL violations. *Emery*, 95 Cal. App. 4th at 960 ("A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500."); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 809 (9th Cir. 2007) (finding that defendant could not be "secondarily liable under California unfair competition and false advertising laws" for another entity's conduct). In any event, Plaintiffs' conclusory allegations about "agency" and "the doctrines of respondeat superior and vicarious liability" are not sufficient; they must (and do not) allege *facts* supporting the supposed "agency" relationship, let alone that Oorah has "control" over Kars4Kids (*Vashisht-Rota v. Harrisburg Univ.*, 2024 WL 85884, at *3 (S.D. Cal. Jan. 8, 2024) (rejecting vicarious liability where "complaint completely fails to allege any non-conclusory facts to establish agency control")) or the existence of an employer-employee relationship between Oorah and Kars4Kids. *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1010 (1995) ("a basic tenet of respondeat superior law" is "that for the doctrine to apply, the tortious act must arise out of the employment").

As in *Dugger*, 3:24-cv-02419, Dkt. 40, all claims against Oorah should be dismissed.

## V.    CONCLUSION

The Court should dismiss Plaintiffs' claims or, at a minimum, dismiss Oorah as a Defendant.

1    DATED: January 12, 2026                    KIRKLAND & ELLIS LLP

2

3                                              */s/ Robyn E. Bladow*
                                               Robyn E. Bladow (SBN 205189)
4                                              robyn.bladow@kirkland.com
                                               KIRKLAND & ELLIS LLP
5                                              695 Town Center Drive
                                               Costa Mesa, CA 92626
6                                              Telephone:    (213) 680-8400
                                               Facsimile:    (714) 982-8844
7
                                               David I. Horowitz (SBN 248414)
8                                              david.horowitz@kirkland.com
                                               KIRKLAND & ELLIS LLP
9                                              2049 Century Park East, Suite 3700
                                               Los Angeles, CA  90067
10                                             Telephone:    (310) 552-4200
                                               Facsimile:    (310) 552-5900
11
                                               *Attorneys for Defendants*
12                                             *Kars4Kids Inc. and Oorah, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

DEFENDANTS' NOTICE OF MOTION              21              CASE NO. 4:25-CV-09498-YGR
AND MOTION TO DISMISS COMPLAINT