ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
SARAH R. HOLLOWAY (SBN 254134)
sholloway@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861


*Attorneys for Plaintiffs*
Pavel Savva and Alexander Vickers

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

<table>
<tr><td>PAVEL SAVVA and ALEXANDER VICKERS, individually and on behalf of classes of similarly situated individuals,<br><br>        Plaintiffs,<br><br>        v.<br><br>KARS4KIDS INC. and OORAH INC., inclusive,<br><br>        Defendants.</td><td>Case No:  4:25-CV-09498-YGR<br><br><br>**PLAINTIFFS PAVEL SAVVA AND ALEXANDER VICKERS' OPPOSITION TO DEFENDANTS KARS4KIDS INC. AND OORAH, INC.'S MOTION TO DISMISS COMPLAINT**<br><br><br>Judge:       Hon. Yvonne Gonzalez Rogers<br>Hearing Date:  June 2, 2026<br>Time:       2:00 pm<br>Courtroom:  Courtroom 1, 4th Floor<br><br>Complaint Filed: November 4, 2025</td></tr>
</table>

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................................ 7

II. STATEMENT OF FACTS ............................................................................................ 11

III. LEGAL STANDARD .................................................................................................. 14

IV. ARGUMENT ................................................................................................................ 15

    A. Plaintiffs Sufficiently Plead Fraud Under Rule 9(b) ............................................. 15

    B. Plaintiffs Adequately Pleads RICO Claims .......................................................... 15

        1. Defendants' solicitation ads are deceptive and misleading......................... 16

        2. Generalized disclosures buried on Defendants' various websites do not make their *advertisements* less misleading. ......................................... 19

        3. There is no First Amendment protection for misleading charitable solicitations. ................................................................................................ 22

        4. Defendants' misrepresentations and omissions were material.................... 23

        5. The Complaint alleges a RICO enterprise and scheme to defraud. ........... 24

        6. The Complaint adequately alleges Defendants' intent to defraud. ............ 25

        7. Plaintiffs suffered concrete financial injury for RICO standing. .............. 25

    C. Plaintiffs Adequately Plead FAL and UCL Claims .............................................. 26

        1. Plaintiffs allege falsity under the FAL and UCL. ..................................... 27

        2. Plaintiffs allege unfair and fraudulent conduct under the UCL. ............... 28

        3. Plaintiffs allege predicate law violations under the UCL. ....................... 29

        4. Plaintiffs have FAL and UCL standing...................................................... 29

    D. The Complaint Sufficiently States Claims Against Oorah ................................... 30

V. CONCLUSION .............................................................................................................. 31

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Adams v. Starbucks Corp.*,
2020 U.S. Dist. LEXIS 131380 (C.D. Cal. Jul. 9, 2020) ................................................ 19

*Arroyo v. IA Lodging Santa Clara, LLC*,
2021 U.S. Dist. LEXIS 126806 (N.D. Cal. Jul. 7, 2021) ............................................... 19

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) ................................................. 24, 25, 26, 29

*Brickman v. Fitbit, Inc.*,
2016 U.S. Dist. LEXIS 150125 (N.D. Cal. Jul. 15, 2016) ........................................ 10, 19

*Brookhaven Town Conservative Comm. v. Walsh*,
258 F. Supp. 3d 277 (E.D.N.Y. 2017) ........................................................ 25

*Brown v. Madison Reed, Inc.*,
622 F. Supp. 3d 786 (N.D. Cal. 2022) ..................................................... 28

*Castagnola v. Hewlett-Packard Co.*,
2012 U.S. Dist. LEXIS 82026 (N.D. Cal. Jun. 13, 2012) ...................................... 28

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012)............................................................ 19

*Deno v. State Farm Gen. Ins. Co.*,
2022 U.S. Dist. LEXIS 162243 (N.D. Cal. Sept. 8, 2022).................................*passim*

*Diamond Resorts United States Collection Dev. v. Pandora Mktg.*,
2021 U.S. Dist. LEXIS 79925 (C.D. Cal. Apr. 12, 2021)................................... 29

*Dinan v. Sandisk, LLC*,
2019 U.S. Dist. LEXIS 91633 (N.D. Cal. May 31, 2019) ................................. 27, 28

*Dugger v. Kars4Kids Inc. et al.*,
No. 3:24-cv-02419 (N.D. Cal.) ............................................................ 7

*Exec. Comm. Representing the Signing of the Archdiocese of the Western United
    States v. Kaplan*,
2004 U.S. Dist. LEXIS 31799 (C.D. Cal. Sept. 17, 2004).................................. 25, 28, 29

*First Resort, Inc. v. Herrera*,
80 F. Supp. 3d 1043 (N.D. Cal. 2015) ................................................. 10, 22

*In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*,
785 F. Supp. 3d 1009 (D. Utah 2025) ...................................................... 23

*In re Nat'l Western Life Ins. Deferred Annuities Litig.*,
2012 U.S. Dist. LEXIS 16946 (S.D. Cal. Feb. 10, 2012) ................................. 9, 16, 18

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
2008 U.S. Dist. LEXIS 118344 (S.D. Cal. Jul. 8, 2008)................................... 19

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

*Jerome's Furniture Warehouse v. Ashley Furniture Indus.*,
  2021 U.S. Dist. LEXIS 75644 (S.D. Cal. Apr. 20, 2021) ................................................. 19

*Knuttel v. Omaze, Inc.*,
  2022 U.S. Dist. LEXIS 65091 (C.D. Cal. Feb. 22, 2022).................................................. 19

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
  431 F.3d 353 (9th Cir. 2005) ......................................................................................... 16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008)....................................................................................... 14

*McLellan v. Fitbit, Inc.*,
  2018 U.S. Dist. LEXIS 94685 (N.D. Cal. Jun. 5, 2018) ........................................... 14, 18

*Miller v. Thane Int'l, Inc.*,
  519 F.3d 879 (9th Cir. 2008).......................................................................................... 16

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020)........................................................................................ 17

*Nat'l Prods, Inc. v. Gamber-Johnson LLC*,
  699 F. Supp. 2d 1232 (W.D. Wash. 2010) ...................................................................... 16

*Natural Immunogenics Corp. v. Newport Trial Grp.*,
  2016 U.S. Dist. LEXIS 197817 (C.D. Cal. Aug. 1, 2016) ................................................ 26

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007)............................................................................... 14, 24, 25

*Puterbaugh v. Kars4Kids Inc.*,
  No. 8:21-cv-01593-CJC-DFM (C.D. Cal.) ....................................................................... 7

*Puterbaugh v. Oorah, Inc.*,
  2023 U.S. Dist. LEXIS 116477 (2023) .................................................................... *passim*

*Schrieber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986)........................................................................................ 31

*Sihler v. Fulfillment Lab, Inc.*,
  2021 U.S. Dist. LEXIS 67685 (S.D. Cal. Apr. 7, 2021) ............................... 19, 24, 25, 27

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
  160 F. Supp. 3d 1214 (D. Or. 2016) ............................................................................... 25

*United States ex rel. Anita Silingo v. Wellpoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018).......................................................................................... 15

*Urzua v. Nat'l Veterans Servs. Fund*,
  2014 U.S. Dist. LEXIS 195131 (2014) ........................................................................... 22

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008)....................................................................................... 9, 27

*Winger v. Best Buy Co.*,
  2011 U.S. Dist. LEXIS 29569 (D. Ariz. Mar. 21, 2011) ........................................... 16, 25

**STATE CASES**

*Buck v. Peace Apostolic Church, Inc.*,
2024 Cal. Super. LEXIS 12760 (2024)................................................................... 25, 27, 29

*Cel-Tech Comm's Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999) ................................................................................................. 29

*Heaps v. Heaps*,
124 Cal. App. 4th 286 (2024)......................................................................................... 8

*Illinois ex rel. Madigan v. Telemarketing Assocs.*,
538 U.S. 600 (2003) ............................................................................................... 22, 23

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ............................................................................... 25, 26, 29, 30

*People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes*,
139 Cal. App. 4th 1006 (2006)..................................................................................... 17

**FEDERAL STATUTES**

Title 18 U.S.C.
§ 1341............................................................................................................................ 6
§ 1343............................................................................................................................ 6

**STATE RULES**

California Rules of Evidence
Rule 9 .................................................................................................................*passim*

California Rules of Court
Rule 3.1590 ................................................................................................................... 8

**STATE STATUTES**

California Business & Professions Code
§ 17200......................................................................................................................... 27
§ 17500......................................................................................................................... 26
§ 17510.3...................................................................................................................... 14
§ 17510.4...................................................................................................................... 14

California Government Code
§ 12599.6............................................................................................................ 6, 28, 29

**KELLER GROVER LLP**
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1. Have Plaintiffs Pavel Savva and Alexander Vickers (collectively, "Plaintiffs") adequately pled Racketeer Influenced and Corrupt Organizations Act ("RICO") claims where they allege with particularity that Defendants Kars4Kids Inc. ("Kars4Kids") and Oorah, Inc. ("Oorah") (collectively, "Defendants") operated as an association-in-fact enterprise, using U.S. wires and mails, to (i) disseminate deceptive and misleading advertisements soliciting vehicle donations under false pretenses; (ii) receive, process and monetize those donations; (iii) transfer funds received from those donations to Oorah; (iv) use those funds in ways other than represented; and (v) coordinate their activities for this common purpose?

2. Have Plaintiffs adequately pled RICO conspiracy claims where they allege with particularity each Defendants' specific participation, coordinated efforts, and agreement to further underlying RICO violations?

3. Have Plaintiffs adequately pled California False Advertising Law ("FAL"), Unfair Competition Law ("UCL"), and conspiracy claims where they allege with particularity that Defendants conspired to disseminate, and did disseminate, deceptive and misleading ads soliciting vehicle donations under false pretenses?

4. Have Plaintiffs adequately pled UCL claims under the statute's "unlawful" prong where they plead with particularity Defendants' violations of multiple laws, including FAL, RICO, wire fraud laws under 18 U.S.C. § 1343, mail fraud laws under 18 U.S.C. § 1341, and Cal. Govt. Code § 12599.6?

5. Do Plaintiffs have standing under RICO, FAL, and UCL where they donated and lost property under false pretenses because of Defendants' misrepresentations?

6. Have Plaintiffs adequately stated claims against Defendant Oorah where they allege with particularity its specific involvement in the false advertising scheme to defraud, racketeering activities, and conspiracies to commit RICO, FAL, and UCL violations, including its control over Kars4Kids and use of donation funds received under false pretenses?

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I. INTRODUCTION

For more than a decade, Defendants have broadcast deceptive ads on TV, radio, and the Internet throughout the country, including California, soliciting vehicle donations to purportedly help needy kids. The ads feature young children singing a catchy jingle soliciting vehicle donations "for kids." They do not mention or reference any religious, ideological, or geographic affiliations and are designed to mislead donors, like Plaintiffs, to believe that Kars4Kids will use their donations to help needy or disadvantaged kids, regardless of religion (or any other limiting factors), including in California, where it heavily advertises and receives around a quarter of its donations. These ads are misleading. ***Kars4Kids has no programs for needy kids in California or elsewhere***. Instead, after monetizing donations and covering its own expenses, Kars4Kids simply funnels the money to Oorah, a separate *haredi* (or "ultra-orthodox") Jewish organization formed and run by the New Jersey-based Mintz family for the purpose of *kiruv rechokim*—the practice of converting non-orthodox Jews to orthodoxy. Oorah then uses the donation funds, at its own discretion, for its own narrow (and undisclosed in the ads) purpose of promoting orthodox religious ideology to *Jewish-only adults and families*, primarily in New York and New Jersey, and to fund its own significant expenses and investments. That is actionable.

Multiple courts have already found, at various stages, that Defendants' ads mislead reasonable consumers—the legal standard for this case. In *Dugger v. Kars4Kids Inc. et al.*, No. 3:24-cv-02419 (N.D. Cal.), a prior class action against Defendants for RICO, FAL and UCL violations, District Court Judge James Donato denied Kars4Kids' motion to dismiss as to the FAL and UCL claims, finding it plausible "***that a reasonable consumer would be deceived even on the face of the ads***."[1] In *Puterbaugh v. Kars4Kids Inc.*, No. 8:21-cv-01593-CJC-DFM (C.D.

---

[1] Declaration of Eric A. Grover in Support of Plaintiffs' Request for Judicial Notice, filed herewith ("Grover Decl."), Ex. A at 13:16-14:17. Mr. Dugger voluntarily dismissed his putative class action prior to summary judgment. Prior to dismissal, the court granted him leave to add additional allegations relating to his RICO injury and Oorah's liability. *Id.,* Ex. B. All emphasis has been added and internal citations/quotations omitted unless otherwise indicated. References to "¶" are to the Complaint (ECF No. 1). References to "Mot." are to Defendants' motion to dismiss (ECF No. 17).

Cal.), an individual action against Kars4Kids alleging only FAL and UCL violations, District Court Judge Cormac J. Carney denied Kars4Kids' motion to dismiss *and* motion for summary judgment, finding that "***a reasonable jury could conclude that Kars4Kids' advertising was misleading because it indicated donations would benefit needy children nationwide when it actually benefited primarily children of a particular faith in a particular geographic location***."[2]

More significantly, after surviving summary judgment, *Puterbaugh* was remanded to the Orange County Superior Court and went through a bench trial in November 2025 before Judge Gassia Apkarian. In her March 30, 2025, Minute Order tentative ruling and proposed statement of decision, Judge Apkarian found that Kars4Kids' ads were "***misleading,***" "***likely to deceive the public***," and violated both the FAL and UCL.[3] Specifically, Judge Apkarian found, based on evidence presented, that "[t]he public is ***misled*** into believing donations aid underprivileged children in California, when in fact the funds primarily support a separate organization benefiting specific families in New York, New Jersey, and abroad based on religious affiliation," and these omissions are "***inherently deceptive.***"[4] Accordingly, Judge Apkarian found that Defendants' advertising scheme, as alleged here, "is fraudulent" and "constitutes an actionable strategy of deception":

> The Court finds that [Kars4Kids'] stated intent to make the advertisement "memorable" through extreme repetition, while simultaneously stripping it of all substantive facts, ***constitutes an actionable strategy of deception***. . . The practice of broadcasting this jingle repeatedly over two decades ***is fraudulent*** because, by

---

[2] *Puterbaugh v. Oorah, Inc.*, 2023 U.S. Dist. LEXIS 116477, at \*7-9, 11-12 (C.D. Cal. Jun. 14, 2023. Defendants represent to the Court that *Puterbaugh* survived motion to dismiss only because "unlike here, [the plaintiff] alleged (though later retracted) that a Kars4Kids representative made separate, affirmative misstatements to him over the phone . . ." Mot. at 9 n.5. Defendants, however, are well-aware that the *Puterbaugh* court explicitly reviewed Kars4Kids' same ads as alleged here when ***denying*** its ***summary judgment*** motion in that case. *See Puterbaugh,* 2023 U.S. Dist. LEXIS 116477, at \*11.

[3] Grover Decl., Ex. C at 6-7. Plaintiffs recognize that Judge Apkarian's March 30, 2026, Minute Order was "tentative." However, as Judge Apkarian highlighted in the March 30 Minute Order, the ability to object to the proposed statement of decision is quite narrow. Cal. Rule of Court 3.1590; *Heaps v. Heaps,* 124 Cal.App.4th 286, 292 (2024). Plaintiffs expect the statement of decision to be finalized before the June 2, 2026, hearing on Defendants' motion and will file the final statement of decision as soon as it is available.

[4] Grover Decl., Ex. C at 6-7.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Defendant's own admission, the advertisement "says nothing," thereby allowing the public to rely on false assumptions created by the Defendant's calculated silence. Consequently, the Defendant is in violation of the [UCL] and [FAL].[5]

Judge Apkarian also found that Mr. Puterbaugh had standing and suffered economic loss from his donation, ordered Kars4Kids to pay ***monetary restitution***, and ***permanently enjoined*** Kars4Kids from broadcasting its ads within California absent specific express disclosures.[6]

Despite this history, Defendants continue to recycle their same arguments to argue dismissal: (i) Defendants' ads are not deceptive because they say nothing and are thus "literally truthful;" (ii) Defendants' misrepresentations in the ads are dispelled by disclosures buried on their various websites and protected by the First Amendment; (iii) Plaintiffs do not allege intent or conspiracy; (iv) Plaintiffs were not injured and lack standing because they received a tax receipt and unrequested vacation voucher; and (v) Plaintiffs fail to allege Oorah's participation in the scheme. Each argument fails.

*First*, it is well-established that advertising is deceptive if it is false ***or***, although true, is "actually misleading or . . . has a capacity, likelihood or tendency to deceive or confuse the public."[7] This includes ads, like Defendants' here, that omit information necessary "to prevent [them] from being misleading."[8] Plaintiffs allege that Defendants' ads mislead donors to believe Kars4Kids will use donations to help needy kids nationwide, regardless of religion (or any other limiting factor), but instead uses them to fund Oorah and *its* investments, expenses, and religious programs for *Jewish-only adults* and families in one limited geographic area. "The complaint clearly sets out the who, what, when, where, and how" of Defendants' scheme, and *why* the ads

---

[5] *Id.*

[6] *Id.* at 7. Judge Carney similarly found at summary judgment that: (i) Mr. Puterbaugh demonstrated sufficient injury in fact from the loss of his donated car; and (ii) his property loss "was caused by [Kars4Kids'] unfair business practice or false advertising." *Puterbaugh*, 2023 U.S. Dist. LEXIS 116477, at *7-9, 11-12.

[7] *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

[8] *In re Nat'l Western Life Ins. Deferred Annuities Litig.*, 2012 U.S. Dist. LEXIS 16946, at *14 (S.D. Cal. Feb. 10, 2012); Grover Decl., Ex. C at 6-7.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

were misleading.[9] To plead fraud, "[t]hat is all that Rule 9(b) requires."[10]

*Second*, generalized disclosures buried on Defendants' various websites do not make their deceptive *ads* any less misleading. Donors "are not expected to do research" beyond Defendants' ads to uncover the truth.[11] "***The law is the ad on its face***."[12] The First Amendment also does not shield Defendants from liability, as "there is no First Amendment protection for commercial speech that is false or misleading."[13]

*Third,* Plaintiffs sufficiently plead Defendants' intent by alleging they *intended* to mislead and, in fact, *knew* their ads were misleading donors based on multiple actions by State Attorney Generals and private litigants. Their intent is also inferred from the well-pled scheme, which was designed to, and did, deceive reasonable donors. Plaintiffs also allege that Defendants used an association-in-fact enterprise and wires and mails to further their fraud, and agreed and *conspired* to commit these violations, setting forth in detail their unique participation, coordinated efforts, and agreement to further the scheme. This is sufficient to plead intent and conspiracy.

*Fourth*, Plaintiffs adequately plead standing, which requires only that they lost money *or property* due to Defendants' conduct. Plaintiffs allege that they relied on Kars4Kids' misleading ads and donated their vehicles, *not* to receive a tax receipt or vacation voucher, but because they reasonably believed Kars4Kids would use their donations to help needy kids of all faiths, including in California. Because it did *not* use their donations for that purpose, Plaintiffs did *not* receive the benefit of their bargain and, thus, have standing to seek damages (RICO) *and* restitution (FAL/UCL).

*Fifth,* Plaintiffs specifically allege Oorah's knowledge and direct participation in the scheme and conspiracies to defraud, including its direct control over Kars4Kids and its use of donation proceeds received by Kars4Kids under false pretenses. This is sufficient to plead its

[9] *Deno v. State Farm Gen. Ins. Co.*, 2022 U.S. Dist. LEXIS 162243, at *7-8 (N.D. Cal. Sept. 8, 2022).

[10] *Id.* at *9.

[11] *Brickman v. Fitbit, Inc.*, 2016 U.S. Dist. LEXIS 150125, at *9 (N.D. Cal. Jul. 15, 2016).

[12] Grover Decl., Ex. D at 136:15-137:15.

[13] *First Resort, Inc. v. Herrera*, 80 F. Supp. 3d 1043, 1049 (N.D. Cal. 2015).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

"personal participation" in the alleged violations. Ultimately, "[t]he complaint provides [Defendants] with ample 'notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge . . .'"[14] The Court should therefore deny Defendants' motion in its entirety.

## II. STATEMENT OF FACTS

For more than a decade, Defendants have broadcast deceptive ads on TV, radio, and the Internet throughout the country, including California, soliciting vehicle donations to "help kids."[15] These ads depict young kids of various genders and racial backgrounds singing a catchy jingle ("one-eight-seven-seven cars for kids; K-A-R-S cars for kids; one-eight-seven-seven cars for kids; donate your car today") and encourage potential donors to "donate your car today" . . . "BECAUSE KIDS ARE OUR FUTURE."[16] By design, the ads contain *no* mention or reference to any religious or geographic affiliations and are designed to mislead donors to believe that Kars4Kids will use donations to "help" needy kids nationwide (*i.e.* "4 Kids"), regardless of religion or any other limiting factors, including in California, where it advertises heavily and receives around *25%* of its donations.[17] But Kars4Kids has no programs to help kids in California or elsewhere.[18] Instead, though not disclosed in its ads, after monetizing vehicle donations through auction or scrapyard sales and covering its own expenses, Kars4Kids simply funnels the money (around $45 million each year) to Oorah, its purported "sister charity."[19] Oorah then uses a portion of the proceeds to promote orthodox ideology to Jewish adults and families in New York and New Jersey, its only purported "charitable" purpose.[20] The rest it retains for its own expenses and investments.[21]

---

[14] *Deno*, 2022 U.S. Dist. LEXIS 162243, at *9.

[15] ¶¶ 1, 6, 28-32.

[16] ¶¶ 28-31, 37.

[17] ¶¶ 37, 40-42, 54.

[18] ¶¶ 43, 53-57.

[19] ¶¶ 43-52, 58-64.

[20] ¶¶ 58-64.

[21] *Id.*

Oorah designed this scheme and initially created Kars4Kids and its misleading ads in 1995 to serve as Oorah's internal "fundraising" arm.[22]  Oorah and its President and CEO, Rabbi Eliyohu Mintz ("Mintz"), later spun off Kars4Kids as a purportedly separate "charity" in 2000, *also run by Mintz*.[23]  Despite this fiction, Kars4Kids' purpose remained the same – to solicit donations to "fund[] Oorah."[24]  Since then, Kars4Kids and Oorah have conspired and operated as an association-in-fact enterprise for the common purpose of soliciting donations to fund Oorah's proselytizing activities and investments, under the guise of "helping" needy children.[25]

Like millions of others in California and nationwide, Plaintiffs, California residents, saw and heard these misleading ads running multiple times a day.[26]  Plaintiffs, like thousands of others, reasonably believed based on Kars4Kids' ads that it would use their donations to help needy kids *regardless of their religion*, including (and especially) in California where they saw the ads and made their donations.[27]  Based on these misleading ads, Plaintiff Savva donated a 2003 Audi A4 in September 2024, and Plaintiff Vickers donated a 2005 Mitsubishi Lancer in March 2025.[28]  Both vehicles were in operable condition (though Mr. Vickers' Lancer had a dead battery) at the time of donation.[29]

Plaintiffs used Kars4Kids' online donation form to make their donations.[30]  The website housing this form, www.Kars4Kids.org, provides information about Kars4Kids' "Fast, Free Pickup" and how donors can "Save Money On Your Taxes," and states generally that "[y]our donation supports the *youth* and *educational programs* of national nonprofit Kars4Kids and our

---

[22] ¶¶ 5, 23-26.

[23] ¶¶ 5, 25.

[24] ¶¶ 5, 25-26, 43-51.

[25] ¶¶ 43-63, 85-87, 114-126, 135-138, 144-148, 151-153, 169-176, 180-182.

[26] ¶¶ 7, 73, 78.

[27] ¶¶ 7, 73, 78, 83-84.

[28] ¶¶ 9-10, 73-84.

[29] ¶¶ 74, 79.

[30] ¶¶ 73-74, 78-79.

sister charity Oorah."[31]  It also claims (albeit falsely) in large bold print that: **"We don't use a middleman.** By keeping our process in-house, we cut out the extra costs often incurred by other charities. This means a *higher percentage* of your donation goes to help kids."[32]  Neither the ads, nor the website or online donation form, mention or disclose to donors that: (i) Kars4Kids does *not*, in fact, operate *any* charitable programs and, after covering its own expenses, simply transfers 99% of the remaining donation proceeds to Oorah; (ii) Oorah uses the donation proceeds at its discretion for its own expenses, investments (such as a recent $16 million investment in Israel), and promotion of orthodox ideology to *Jewish-only adults* and families, with programs such as *adult* travel programs in Israel and *adult* matchmaking programs; (iii) the vast majority Oorah's "beneficiaries" are located only in New York and New Jersey; and (iv) contrary to the donation website, Defendants use multiple "middlemen," including towing companies, auction houses, and scrapyards, resulting in a "[*lower*] percentage" of donations going to purportedly "help kids."[33]  Indeed, Kars4Kids itself is as a "middleman" in this process—accepting and processing donations *on Oorah's behalf*.  After covering its own significant expenses, Kars4Kids transfers the donation proceeds to Oorah, where they receive another "haircut" for *Oorah's* expenses.[34] Ultimately, though not disclosed in their ads or online donation form, both Kars4Kids *and* Oorah use the donation proceeds for their expenses, investments and religious proselytizing activities – *not* helping kids.[35]  Notably, donors who donate online, such as Plaintiffs, are not required to view *any* Kars4Kids (or Oorah) websites or materials other than the online donation form, which provides *no disclosures*, prior to donating.[36]  Donors who donate by phone are not required to view *any* Kars4Kids or Oorah websites or materials at all.[37]

Kars4Kids accepted Plaintiffs' online donations, arranged for a towing company to

---

[31] ¶ 39.

[32] *Id.*

[33] ¶¶ 39-64.

[34] ¶¶ 58-64.

[35] ¶¶ 43-64.

[36] ¶ 39.

[37] *Id.*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

retrieve the vehicles, and arranged for a third-party auction house to sell the cars at auction (paid for out of the auction sale proceeds).[38] Kars4Kids then sent each Plaintiff an Official Receipt and vacation voucher via email, which they did not request or use.[39] Regarding the use of Plaintiffs' donations, the Official Receipts stated only that:

> Your donation makes a difference in the lives of the children we assist. Besides giving us the opportunity to help these youngsters and their families, your sincere interest in our cause brings us one step closer to making this troubled world a better place in which to live.[40]

The receipts and emails made no mention of Oorah, its narrow religions purpose or activities, or that Defendants would use Plaintiffs' donations to support religious "outreach" and proselytizing activities for adults and families of one religion.[41] Kars4Kids' ads and online donation form also did not disclose this material information. Plaintiffs also did not receive a "Solicitation or Sale for Charitable Purposes Card" disclosing the true use of the donation proceeds and entities involved, as required by California law.[42] At no point did Kars4Kids inform Plaintiffs that it would use their vehicle donations to fund Oorah, its promotion of orthodox religious ideology directed to adults and families of *one* religion in *one* geographic area, or its investments and expenses.[43]

### III.    LEGAL STANDARD

In reviewing a motion to dismiss, courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."[44] Rule 9(b) further requires that a plaintiff plead fraud with particularity "so that the defendant can prepare an adequate answer from the allegations."[45] "The touchstone of Rule 9(b) is notice."[46]

---

[38] ¶¶ 74-77, 79-82.

[39] ¶¶ 75-77, 80-82.

[40] ¶¶ 75, 80.

[41] *Id.*

[42] ¶ 83; *see* Cal. Bus. & Prof. Code §§ 17510.3, 17510.4.

[43] ¶¶ 75, 80, 83.

[44] *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).

[45] *Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir. 2007).

[46] *McLellan v. Fitbit, Inc.*, 2018 U.S. Dist. LEXIS 94685, at *4 (N.D. Cal. Jun. 5, 2018).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

This requires a plaintiff to allege the "who, what, when, where, and how" of the alleged fraud, and why a statement or omission was false or misleading.[47] As described herein, Plaintiffs do so.

## IV. ARGUMENT

### A. Plaintiffs Sufficiently Plead Fraud Under Rule 9(b)

Plaintiffs allege that Defendants conspired and used an association-in-fact enterprise to solicit vehicle donations under false pretenses. Plaintiffs allege with particularity: (1) *who* committed the alleged fraud: Kars4Kids and Oorah;[48] (2) *what* the alleged fraudulent conduct was: misleading ads soliciting vehicle donations and misuse of donation funds;[49] (3) *where* the alleged fraud took place: on TV, radio, and the Internet in California and throughout the U.S.;[50] (4) *when* the alleged fraud occurred: beginning with Defendants' creation of the misleading ads in 2014 and continuing through the filing of the Complaint;[51] (5) *how* Defendants accomplished their scheme: using wires and mails to disseminate misleading ads, process donations, transfer funds to Oorah, and coordinate their actions;[52] and (5) *why* the conduct was fraudulent: the ads misled reasonable donors to believe Kars4Kids would use donations to help needy kids nationwide, regardless of religion, including in California, when, in fact, they were instead funneled to Oorah to fund its exclusionary religious programs, investments, and expenses.[53] Plaintiffs further allege that they relied on the misleading ads, donated their vehicles to Kars4Kids, and were damaged thereby.[54] At this stage, nothing more is required.

### B. Plaintiffs Adequately Pleads RICO Claims

To plead a RICO claim, Plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to

---

[47] *United States ex rel. Anita Silingo v. Wellpoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018).

[48] ¶¶ 5-6, 23-32, 43-64, 85-95.

[49] ¶¶ 1, 6-8, 27-32.

[50] ¶¶ 27-32.

[51] ¶¶ 25-32.

[52] ¶¶ 85-96, 114-126, 136-138, 144-148, 152-153, 171-176, 181-182.

[53] ¶¶ 37-64, 144, 169, 171.

[54] ¶¶ 73-84, 127-130, 139, 149-150, 154, 177-178, 183.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

plaintiff's business or property."[55] Plaintiffs' RICO claims are based on predicate acts of mail and wire fraud.[56] They allege that Defendants formed a scheme to defraud donors by disseminating deceptive ads, used mails and wires to further the scheme, and did so with specific intent to deceive or defraud.[57]

### 1. Defendants' solicitation ads are deceptive and misleading.

Defendants argue that the Kars4Kids' ads cannot be deceptive because they are silent on *which* kids they help and *how* and, thus, are "100% true."[58] Defendants are wrong. Under the relevant "reasonable consumer" standard, even statements "literally true on their face may nonetheless be misleading when considered in context."[59] Thus, advertising can be deceptive if it is false *or*, although true, "likely to mislead or confuse consumers."[60] This includes ads, like those alleged here, that *omit* information necessary "to prevent [them] from being misleading."[61]

Plaintiffs allege that Defendants' ads are deceptive because they mislead reasonable donors, like them, to believe Kars4Kids will use donations to help needy kids nationwide, *regardless of religion*, including in California, while failing to disclose that, in fact, it simply funnels the money to Oorah to fund its exclusionary religious programs, directed to *adults* and families of only *one* religion in *one* limited geographic area, and its expenses and investments.[62] As Judge Apkarian tentatively found, these ads "create[] a false sense of a universal, secular, and local charity. The 'Kars4Kids' name, when coupled with an advertisement that 'does not mention

---

[55] *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

[56] ¶¶ 85-87, 126; *see Nat'l Western Life,* 2012 U.S. Dist. LEXIS 16946, at *13.

[57] ¶¶ 85-87, 114-126; *see Winger v. Best Buy Co.*, 2011 U.S. Dist. LEXIS 29569, at *11 (D. Ariz. Mar. 21, 2011) (elements of a mail and wire fraud claims).

[58] Mot. at 9, 11.

[59] *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).

[60] *Nat'l Prods, Inc. v. Gamber-Johnson LLC*, 699 F. Supp. 2d 1232, 1237 (W.D. Wash. 2010), *aff'd*, 449 F. App'x 638 (9th Cir. 2011) (analyzing false advertising under the Lanham Act).

[61] *Nat'l Western Life*, 2012 U.S. Dist. LEXIS 16946, at *14.

[62] ¶¶ at 37-64; *see* Mot. at 9 (admitting the ads solicit donations "for kids"). By design, the ads do *not* reveal any religious or geographic affiliations, disclose that Oorah (not Kars4Kids) is the true beneficiary or disclose *how* Oorah will use those funds. ¶¶ 37, 40, 42.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

anything' about its specific mission (as admitted by the COO), is *likely to deceive the public*."[63] Donors exposed to these ads, like Plaintiffs, "would reasonably assume their contributions benefit a general class of children, including those within their own state."[64] Thus, "[t]he public is *misled* into believing donations aid underprivileged children in California, when in fact the funds primarily support a separate organization benefiting specific families in New York, New Jersey, and abroad based on religious affiliation."[65]

That is deceptive. Kars4Kids has no programs to help kids in California or elsewhere.[66] Its COO, Esti Landau ("Landau"), has repeatedly testified that Kars4Kids simply "funds Oorah."[67] Oorah then uses the donation proceeds, at its own discretion, to promote orthodox ideology to *Jewish-only* adults and families, primarily in New York and New Jersey, rather than helping kids.[68] Oorah also retains a significant portion (*after* Kars4Kids' expenses) for *its* own expenses and to fund its own assets and investments, which as of 2023 exceeded *$199 million* (funded by Kars4Kids donations).[69] This type of misrepresentation about donation use is "necessarily deceptive."[70]

Defendants also ignore that many of Oorah's religious programs funded by Kars4Kids donations are not directed to "kids" at all, and none are directed to *non-Jewish* kids. Most notably, Oorah's programs funded by Kars4Kids donations include: (i) funding Oorah's assets and investments, which as of 2023 exceeded $199 million (¶ 26 n.6); (ii) over $16 million sent by

---

[63] Grover Decl., Ex. C at 6.

[64] *Id.*

[65] *Id.*

[66] ¶¶ 43-51; *see Puterbaugh,* 2023 U.S. Dist. LEXIS 116477, at *11-12 ("Kars 4 Kids does not have any programs designed or intended to benefit needy children in California.").

[67] ¶ 26 n. 6.

[68] ¶¶ 53-63. Whether reasonable donors would consider proselytizing orthodox ideology to Jewish adults and families as "helping kids" (had they known the truth) is a "question of fact not appropriate for decision" on a motion to dismiss. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020).

[69] ¶¶ 58-63.

[70] *People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes*, 139 Cal.App.4th 1006, 1016-17 (2006) (advertising "free towing" of donated cars, while not disclosing towing cost was deducted from the donation "is *necessarily deceptive*."); *see also* Grover Decl., Ex. C at 7.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Oorah to undisclosed recipients in Israel (¶ 62 n.10); (iii) a program in Israel for *Jewish adults* pursuing religious studies (¶ 53 n.9); (iv) weekly "Ask the Rabbi" classes for *Jewish adults* (*id.*); (v) holiday-related programs for *Jewish adults* and families (*id.*); and (vi) Rebbetzins, a "matchmaking" program to connect single *Jewish adult men* with single *Jewish adult women* (*id.*). These programs are not designed "for kids." Oorah's only programs that purportedly "help" kids even close to the age of those depicted in its ads are its "scholarships" and summer camps in upstate New York that instruct Jewish children on religious orthodoxy.[71] But even then, Oorah simply uses Kars4Kids donation funds to subsidize tuition to *its own camps*.[72] And the amount Oorah spends on such "charitable" purposes is miniscule. In 2021, for instance, of the over ***$66 million*** it received from Kars4Kids, Oorah spent only ***$3.5 million*** on "scholarships for students," including to cover tuition for its *own* camps, and $85,000 as "grants" to various orthodox Jewish organizations (including its own affiliated organization, Congregation Oorah) in New York and New Jersey to "promote religious education."[73] These camps and scholarships are available ***only*** to Jewish recipients – non-Jewish children are not allowed.[74]

Defendants nonetheless claim they have no duty to disclose *how* Kars4Kids uses donations to "help" kids, *which* kids it purportedly "helps," or *where* the donations are used.[75] This duty arises, however, where, as here, "a defendant presents a half-truth that requires the disclosure of information to prevent the earlier statement from being misleading."[76] As Defendants themselves admit, the ads contain "a suggestion to donate one's car *for kids*" (Mot. at 9) without any limiting factors or religious bias. The ads also encourage donors to "donate today . . . because kids are ***our*** future," referring to the collective "our" – ***all*** kids, ***all*** people, ***not*** limited

---

[71] ¶¶ 50-51, 61.

[72] ¶ 61.

[73] ¶¶ 61-62.

[74] ¶¶ 53, 56, 61-63, 67.

[75] Mot. at 9-10.

[76] *Nat'l Western Life*, 2012 U.S. Dist. LEXIS 16946, at *14; *McLellan*, 2018 U.S. Dist. LEXIS 94685, at *7 ("An omission is actionable if it is 'contrary to a representation actually made by the defendant, or [is] an omission of fact that the defendant was obliged to disclose.'").

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

to any one particular group.[77] By suggesting Kars4Kids would use donations to help needy kids *of all faiths* nationwide, but instead using them to fund Oorah's private investments, expenses, and exclusionary religious activities, Defendants' ads deceived and misled donors.[78] Further, Defendants **knew** (or should have known) their ads were misleading donors.[79] This type of "telling of a half-truth calculated to deceive is a fraud."[80]

### 2. Generalized disclosures buried on Defendants' various websites do not make their *advertisements* less misleading.

Acknowledging the *ads'* deficiencies, Defendants claim that they "disclosed" (*i.e.*, buried) these disclosures on their various websites instead.[81] Donors, however, "are not expected to do research" beyond Defendants' ads to determine the truth.[82] Indeed, "no authority requires that a consumer be expected to search a company's entire website for such content."[83] Rather, "a reasonable consumer would be misled by an affirmative misstatement" in Kars4Kids' ads that donations are "for kids" generally, notwithstanding disclosures "in the fine print of [its] website."[84] Indeed, as Judge Apkarian aptly noted during the *Puterbaugh* trial, "[t]his case is not

---

[77] ¶ 31.

[78] *See Puterbaugh,* 2023 U.S. Dist. LEXIS 116477, at *12. Reasonable donors would want to know that their donation is being used to promote a particular religious ideology.

[79] ¶¶ 65-71; *see also* Grover Decl., Ex. C at 6 (charging Kars4Kids with this knowledge).

[80] *Iorio v. Allianz Life Ins. Co. of N. Am.,* 2008 U.S. Dist. LEXIS 118344, at *49-50 (S.D. Cal. Jul. 8, 2008).

[81] Mot. at 2-3, 5-6, 12-13. To support this argument, Defendants improperly cite various websites not referenced in the Complaint or underlying Plaintiff's claims. As set forth in Plaintiff's RJN opposition, the Court should deny Defendants' request to judicially notice or incorporate these documents by reference.

[82] *Brickman*, 2016 U.S. Dist. LEXIS 150125, at *9; *Sihler v. Fulfillment Lab, Inc.*, 2021 U.S. Dist. LEXIS 67685, at *5, 13-16 (S.D. Cal. Apr. 7, 2021) (terms or conditions "hidden or buried on a landing page," which "consumers do not need to read or acknowledge . . . in order to complete their purchase" insufficient to avoid misleading consumers); *Puterbaugh,* 2023 U.S. Dist. LEXIS 116477, at *9 ("Just because 'there was alternative information available to Plaintiff does not mean he did not rely on Kars 4 Kids advertisements in deciding to donate" his vehicle.").

[83] *Adams v. Starbucks Corp.,* 2020 U.S. Dist. LEXIS 131380, at *18 (C.D. Cal. Jul. 9, 2020).

[84] *Knuttel v. Omaze, Inc.*, 2022 U.S. Dist. LEXIS 65091, at *21 (C.D. Cal. Feb. 22, 2022); *Jerome's Furniture Warehouse v. Ashley Furniture Indus.*, 2021 U.S. Dist. LEXIS 75644, at *12-13 (S.D. Cal. Apr. 20, 2021) (disclaimer "buried in tiny fine print at the bottom of the ad" insufficient to avoid misleading consumers). The cases Defendants cite are inapposite. For instance, in *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012), the plaintiff
*(Cont'd)*

about whether the ad with the website is misleading. This is about whether the *ad* is misleading."[85] "*The law is the ad on its face*."[86]

Even considering Defendants' websites though, *none* of the webpages referenced in the ads inform donors that their donations are used almost *exclusively* to fund Oorah and its expenses, investments, and (mostly adult) religious proselytizing activities. The website address that flashes briefly on the screen for *less than one second* during the TV ad (Kars4kids.org/howtohelp) simply directs viewers to a webpage that encourages people generally to volunteer as mentors, advocates or by running awareness campaigns.[87] It does *not* discuss vehicle donations, Kars4Kids' use of donation funds, or Oorah. Only by scrolling all the way down to the fine print that includes Kars4Kids' copyright notation at the very bottom of the page, in very small white print on black background, does it eventually vaguely state: "Your donation will *benefit Kars4Kids*, a national organization dedicated to addressing the educational, material, emotional and spiritual needs of Jewish children and their families."[88] It does not disclose that the true beneficiary is *Oorah* and its exclusionary religious programs for Jewish adults and families. Donors are also *not* required to visit this webpage to donate, making it irrelevant to the donation process.

Kars4Kids main website (Kars4Kids.org), where donors can submit vehicle donation forms online, is even less revealing and woefully inadequate to avoid misleading consumers. Among various promotional information about Kars4Kids' "Fast, Free Pickup" and how donors can "Save Money On Your Taxes," it states that "**You Help Kids** . . . The proceeds from your

*failed to read* the disclosures provided to him, despite "*checking the box accepting those terms and conditions*." *See also Arroyo v. IA Lodging Santa Clara, LLC*, 2021 U.S. Dist. LEXIS 126806, *12-18 (N.D. Cal. Jul. 7, 2021) (dismissing ADA claims that defendant's *website* failed to provide sufficient details about hotel accessibility because the *website*, in fact, complied with ADA requirements). That is not the case here.

[85] Grover Decl., Ex. E at 178:9-11.

[86] Grover Decl., Ex. D at 136:15-137:15, Ex. C at 7 (rejecting Kars4Kids' argument that a website disclosure is sufficient).

[87] ¶ 32.

[88] ¶ 38.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

vehicle supports the *youth* and *educational programs* of national nonprofit Kars4Kids and our sister charity Oorah."[89] Scrolling further down, the webpage further states:

> "**Your car impacts kids' lives**. A child's life is his home, school, friends and community. It takes a positive experience in all areas to build a healthy child. Kars4Kids is a registered nonprofit Jewish organization who, together with Oorah, our sister charity, help thousands of *children* develop into productive members of the community.[90]

*Nothing* in these vague disclosures informs donors that (i) Kars4Kids, in fact, has no "youth and educational programs" and instead simply transfers 99% of donation funds, after covering its own expenses, to Oorah; (ii) Oorah uses those funds at its own discretion to fund its exclusionary religious programs and for its own investments; (iii) Oorah's programs are available *only* to Jewish individuals; and (iv) many of Oorah's programs are directed to Jewish *adults*, not children, in one limited geographic area. Indeed, simply disclosing that Kars4Kids is a "Jewish organization" in the fine print does *not* inform donors that it (or Oorah), in fact, *discriminates* against all other religions in its programming.[91] As one consumer blog aptly put it: "The issue is not that they do not tell people that they are a Jewish organization. The issue is that they do not tell people that they are a *kiruv* [proselytizing] organization. *Nobody considers it a charity to evangelize for another's religion*."[92] It also does not inform donors that *Oorah* will use donations to fund tens of millions of dollars in overseas investments or adult-only programming, such as matchmaking services and travel programs to Israel.[93] Ultimately, Defendants' "failure to disclose that funds benefit adults and families—and that such support is contingent upon specific religious affiliation and geography—constitutes a *material omission*."[94]

While Kars4Kids' website has other equally vague and misleading pages, it is structured

---

[89] ¶ 39.

[90] ECF No. 19-14 (Def's Ex. 14).

[91] The Salvation Army, for instance, is an evangelical part of the universal Christian Church yet provides services for those in need from *all* religious backgrounds *without discrimination*. *See* https://www.salvationarmyusa.org/about-us/.

[92] ¶ 93.

[93] ¶¶ 53 n.9, 61-62 n.10; Grover Decl., Ex. C at 3-4, 6.

[94] Grover Decl., Ex. C at 6.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

so that donors need not view any other pages or disclosures to submit a donation form online, making them wholly irrelevant to the donation process.[95] Donors who donate over the phone are not required to view *any* Kars4Kids (or Oorah) website or other information prior to donating.[96]

### 3. There is no First Amendment protection for misleading charitable solicitations.

Defendants' ads are not protected under the First Amendment because "there is no First Amendment protection for commercial speech that is false or misleading."[97] Judge Apkarian explicitly rejected Defendants' same First Amendment argument during the *Puterbaugh* trial:

> While charitable solicitation is protected, the First Amendment does not protect fraudulent charitable appeals or false advertising. States have a legitimate interest in preventing fraud and can sue fundraising firms or charities for misrepresenting how donations will be used. . . The First Amendment protects a charity's general right to solicit funds. It does *not* shield it from liability for making fraudulent or intentionally misleading claims to donors. . . ***The First Amendment also does not protect the charity from liability for deception by omission***. It does not shield fraud in the case of *Urzua* which centered on allegations of deceptive practices and misrepresentation. . . ***Deception by omission of material fact in solicitations is a form of deceptive practice that is not entitled to the First Amendment protection***.[98]

Defendants' reliance on *Urzua v. Nat'l Veterans Servs. Fund*, 2014 U.S. Dist. LEXIS 195131 (S.D. Cal. 2014) is unavailing. In *Urzua*, the plaintiff's claims rested *solely* on the defendant's failure to disclose its high cost of fundraising.[99] The court found that *some* statement about the defendant's charitable purpose or costs was required.[100] Here, though, Plaintiffs do not merely allege that Kars4Kids failed to disclose *its* advertising or overhead expenses. They allege Kars4Kids *affirmatively misrepresented* its charitable purpose and donation use (*i.e.*, to help needy kids generally) *and* *omitted* to disclose that, instead, it used donations to "fund[] Oorah"

---

[95] ¶ 39.

[96] *Id.*

[97] *First Resort, Inc. v. Herrera*, 80 F. Supp. 3d 1043, 1049 (N.D. Cal. 2015); *Illinois ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 642 (2003) (First Amendment does *not* protect "false or misleading representations designed to deceive donors about how their donations will be used").

[98] Grover Decl., Ex. E at 74:15-78:12.

[99] *Urzua,* 2014 U.S. Dist. LEXIS 195131, at *9.

[100] *Id.* at *11-12.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

and *its* investments, expenses, and discriminatory religious programs.[101] As Judge Apkarian correctly held, this type of deceptive omission is *not* entitled to First Amendment protection.[102]

### 4. Defendants' misrepresentations and omissions were material.

Defendants suggest that Plaintiffs' failure to scour Defendants' websites for additional information about their "mission" and true use of donations means it was not material to their donation decision. But there is no such requirement under the law. This case is about whether Defendants' *ads*, upon which Plaintiffs relied, are misleading, not the ads *plus* any additional information that might exist in the public sphere.

Defendants' reliance on *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.* is thus, misplaced. There, the plaintiffs failed to plead that "they actually heard or read . . . any specific representation, [or] that any individual representation induced them to donate."[103] They also failed to identify *who* made the allegedly false statements, *what* the statements were, or *where* and *when* the statements were made.[104] Thus, they failed to provide "adequate notice of the factual circumstances" underlying their fraud claims under Rule 9(b).[105]

Plaintiffs' Complaint does not suffer from such deficiencies. Plaintiffs adequately allege that they heard and saw Defendants' misleading ads before donating and relied on the ads in

---

[101] ¶¶ 37-64; *see also Madigan,* 538 U.S. at 618 (statement that "a significant amount of each dollar donated" would be used for charitable purposes, when defendant knew 15 cents or less of each dollar would be used for that purpose, was misleading). Notably, the very websites Defendants cite contain false statements similar to those in *Madigan,* such as: "We don't use a middleman. By keeping our process in-house, we cut out the extra costs often incurred by other charities. ***This means a higher percentage of your donation goes to help kids***." ¶ 39. Kars4Kids does *not* keep the process "in-house." It uses outside towing companies and auctions houses. *See* ¶¶ 33-35. It then transfers the funds generated by the auction sales to Oorah to fund *its* investments and operations, rather than "helping kids." Kars4Kids is itself a "middleman" and, thus, "a [*lower*] percentage" of donations "goes to help kids." ¶ 39.

[102] Grover Decl., Ex. E at 74:15-78:12; Ex. C at 5 (finding that "the First Amendment does not shield [Kars4Kids]").

[103] *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 785 F. Supp. 3d 1009, 1036 (D. Utah 2025).

[104] *Id.* at 1037.

[105] *Id.* at 1038.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

making their donations.[106] They further allege that Defendants' misrepresentations were material to their donation decisions, and they would not have donated to Kars4Kids had they known the truth about its' and Oorah's use of their donations.[107] The Complaint "clearly sets out the who, what, when, where, and how" of Defendants' scheme, and *why* the ads were misleading, which is all "that Rule 9(b) requires." [108]

Ultimately, "[a] reasonable consumer donating to a 'kids' charity would attach importance to the fact that their donation is actually supporting adult matchmaking and general family subsidies."[109] Defendants' failure to disclose these facts in their ***ads*** was, thus, "a material omission."[110]

### 5. The Complaint alleges a RICO enterprise and scheme to defraud.

Plaintiffs allege that Defendants formed an association-in-fact enterprise to solicit vehicle donations under false pretenses to fund Oorah.[111] Defendants accomplished this scheme using wires and mails to, *inter alia*, disseminate misleading ads, process donations, transfer funds to Oorah, and use funds in ways other than represented.[112] Plaintiffs allege the enterprise continued from 2014 through the filing of the Complaint and included multiple predicate acts.[113] This "coordinated" effort sufficiently pleads an ongoing RICO enterprise.[114]

---

[106] ¶¶ 7, 73-74, 78-79, 83-84, 96.

[107] ¶¶ 83-84, 128-129, 149-150, 177-178.

[108] *Deno*, 2022 U.S. Dist. LEXIS 162243, at *7-9.

[109] Grover Decl., Ex. C at 6.

[110] *Id.* at 5.

[111] ¶¶ 22-26, 85-87, 114-122. An association-in-fact enterprise does not require any particular organizational structure. *Odom*, 486 F.3d at 551-553.

[112] ¶¶ 85-87, 126. Defendants do ***not*** dispute that (i) Kars4Kids uses wires to disseminate its ads; (ii) Kars4Kids uses wires and mail to process donations and transfer funds to Oorah; (iii) Oorah uses those funds for its orthodox proselytizing activities directly at Jewish families in New York and New Jersey and its own investments and expenses; and (iv) Defendants' activities included thousands of wire and mail predicate acts over the course of more than a decade in furtherance of this scheme and are ongoing, as the Complaint alleges.

[113] ¶¶ 85-87, 123-126.

[114] *Sihler*, 2021 U.S. Dist. LEXIS 67685, at *28-30; *Odom*, 486 F.3d at 552-53; *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 942 (N.D. Cal. 2013) ("[defendant's] challenge that its actions
*(Cont'd)*

### 6. The Complaint adequately alleges Defendants' intent to defraud.

While fraud must be pled with particularity, intent "may be alleged generally."[115] Intent "may be inferred from a defendants' statements or conduct," *Sihler*, 2021 U.S. Dist. LEXIS 67685, at *33, and is satisfied by "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension."[116] Plaintiffs allege Defendants' individual conduct and scheme with sufficient particularity to infer their fraudulent intent.[117] They further allege that Defendants *intended* to mislead donors, benefited significantly from doing so, and *knew* their ads were misleading donors.[118] This is sufficient to plead their intent.

### 7. Plaintiffs suffered concrete financial injury for RICO standing.

To have RICO standing, a plaintiff must allege injury to his business or property that was caused by the RICO violation.[119] "Lost money or property" donated under false pretenses is a "classic form of injury in fact."[120] Plaintiffs allege they relied on Defendants' ads and reasonably believed Kars4Kids would use their donations to help needy kids of all faiths, including in California.[121] Based on those ads, Plaintiffs donated (and lost) their vehicles to Kars4Kids.[122] This harm "falls squarely within RICO's statutory ambit."[123]

---

were simply 'normal business dealings' without the existence of an enterprise or any 'common purpose' [under RICO] is fact-determinative and cannot be resolved at this juncture").

[115] *Odom*, 486 F.3d at 554.

[116] *Bias*, 942 F. Supp. 2d at 937; *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 160 F. Supp. 3d 1214, 1228 (D. Or. 2016) ("a scheme to defraud pled with sufficient factual specificity may give rise to a reasonable inference of specific intent to defraud").

[117] ¶¶ 85-87, 88-95, 43-63, 114-126, 135-138, 145-148, 152-153, 171-176, 181-182.

[118] ¶¶ 37, 40, 42, 53, 65-72; *Winger*, 2011 U.S. Dist. LEXIS 29569, at *14 (allegations that defendant "specifically intended its misrepresentations to deceive consumers" sufficient to allege intent).

[119] *Bias*, 942 F. Supp. 2d at 936.

[120] *Buck v. Peace Apostolic Church, Inc.,* 2024 Cal. Super. LEXIS 12760, at *27 (2024).

[121] ¶¶ 7, 9-10, 52, 57, 64, 73-74, 78-79, 83-84, 128-129, 149-150, 177-178.

[122] ¶¶ 7, 9-10, 73-74, 78-79, 83-84.

[123] *Brookhaven Town Conservative Comm. v. Walsh*, 258 F. Supp. 3d 277, 285 (E.D.N.Y. 2017) (injury pled where defendants "fraudulently induced plaintiffs to take actions and make expenditures that . . . result[ed] in their financial injury"); *Exec. Comm. Representing the Signing of the Archdiocese of the Western United States v. Kaplan,* 2004 U.S. Dist. LEXIS 31799, at *10
*(Cont'd)*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Defendants, however, argue that Plaintiffs were not injured because they received a tax receipt and unrequested "vacation voucher."[124] But that was not the "benefit of the bargain," as Defendants claim. Plaintiffs donated their cars because they reasonably believed, based on Defendants' ads, that Kars4Kids would use the cars to help needy kids in California, *not* for a tax receipt or vacation voucher. Because Kars4Kids did ***not*** use their donations for that purpose, Plaintiffs did ***not*** receive the benefit of the bargain and were injured thereby.[125]

### 8. The Complaint adequately alleges RICO conspiracy.

"To allege a RICO conspiracy . . ., the plaintiff need only allege an agreement to commit a substantive RICO violation."[126] Plaintiffs do so. As set forth above, the Complaint alleges substantive RICO violations, as well as Defendants' specific participation, coordinated efforts, and agreement to further those violations.[127] Having sufficiently alleged that Defendants "developed and designed the scheme," Plaintiffs easily "meet the pleading standard" for a conspiracy claim.[128]

### C. Plaintiffs Adequately Plead FAL and UCL Claims

The FAL prohibits unfair, deceptive, untrue or misleading advertising.[129] The UCL

---

(C.D. Cal. Sept. 17, 2004) (injury pled where "but for Defendants' allegedly false representations regarding the use of the money, Plaintiffs would not have donated the money"); *Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 330 (2011) (allegations that plaintiff "would not have bought the product but for the misrepresentation" sufficient to allege economic injury and causation); *Puterbaugh,* 2023 U.S. Dist. LEXIS 116477, at \*6-8 (economic injury and causation established where plaintiff "donated his car because Kars4Kids' jingle let him to believe that it would use donations to benefit needy children across the country, including in California").

[124] Mot. at 15.

[125] *Kwikset,* 51 Cal.4th at 332 (consumers do not receive the "benefit of the bargain" when their purchase or donation is based on misrepresentations); *Puterbaugh,* 2023 U.S. Dist. LEXIS 116477, at \*6-8 (economic injury and causation established where plaintiff "donated his car because Kars4Kids' jingle let him to believe that it would use donations to benefit needy children across the country, including in California"); Grover Decl., Ex. C at 5 (finding the plaintiff had standing and suffered an economic loss by donating his car to Kars4Kids).

[126] *Natural Immunogenics Corp. v. Newport Trial Grp.*, 2016 U.S. Dist. LEXIS 197817, at \*39 (C.D. Cal. Aug. 1, 2016).

[127] *See* § IV.B, *supra*; ¶¶ 135-138.

[128] *Bias*, 942 F. Supp. 2d at 942.

[129] Cal. Bus. & Prof. Code § 17500.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."[130] To plead a claim under either statute, a plaintiff must allege: (1) misleading or deceptive advertising, (2) reliance, and (3) economic injury.[131] "Whether a business practice is deceptive or misleading under these California statutes [is] governed by the 'reasonable consumer' test."[132] "[T]hese laws prohibit not only advertising that is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public," and apply to charitable solicitations.[133]

### 1. Plaintiffs allege falsity under the FAL and UCL.

Just as Plaintiffs allege falsity under RICO, they also allege falsity under the FAL and UCL. As set forth above, Plaintiffs allege that Defendants' ads mislead reasonable donors, like them, to believe Kars4Kids will use donations to help needy children of all faiths, including in California.[134] Plaintiffs allege why this was misleading: Kars4Kids instead funnels donation proceeds to Oorah to fund its investments, expenses, and exclusionary religious programs directed to Jewish adults and families in New York and New Jersey.[135] These allegations are sufficient "to place Defendants on notice of the circumstances constituting the alleged fraudulent scheme, and to plausibly state claims under the . . . FAL[] and UCL."[136]

The cases Defendants cite are inapposite. In *Dinan v. Sandisk LLC*, the plaintiff alleged the defendant misled consumers about its USB flash drive storage by failing to disclose that the drives contained 64 *decimal* GBs (1,000,000,000 bytes) of storage, rather than 64 *binary* GBs (1,073,741,824 bytes) of storage.[137] The court found the packaging was not misleading, however,

---

[130] Cal. Bus. & Prof. Code § 17200.

[131] *Sihler,* 2021 U.S. Dist. LEXIS 67685, at *13.

[132] *Id.* at *11.

[133] *Williams*, 552 F.3d at 938; *Buck*, 2024 Cal. Super. LEXIS 12760, at *25-26.

[134] *See* §§ IV.B., *supra*; ¶¶ 37-42.

[135] *See* §§ IV.B., *supra;* ¶¶ 43-64.

[136] *Sihler*, 2021 U.S. Dist. LEXIS 67685, at *15. "Whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams,* 552 F.3d at 938.

[137] *Dinan v. Sandisk, LLC*, 2019 U.S. Dist. LEXIS 91633, *3 (N.D. Cal. May 31, 2019).

because it "***actually disclosed***" the accurate byte storage ("1,000,000,000 bytes").[138]  Likewise, in *Brown v. Madison Reed, Inc.*, the court dismissed a claim based on failure to disclose certain hair color ingredients on the product box because the defendant did, in fact, list the those exact ingredients on the product box.[139]  Here, though, Defendants failed to disclose in their ads that donations were ***not***, in fact, used to "help" needy kids generally, as the ads themselves suggest.

### 2.  Plaintiffs allege unfair and fraudulent conduct under the UCL.

Unfair acts under the UCL "are those that 'offend[] established public policy' or are 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'"[140] Plaintiffs allege Defendants knowingly disseminated misleading ads soliciting donations for one purpose (to help needy kids of all faiths nationwide), but instead used them for a wholly separate purpose (to fund Oorah, its investments, and its exclusionary adult religious programs).[141] These acts offend public policy designed to protect donors from misleading solicitations (*see, e.g.,* Cal. Govt. Code § 12599.6), and are immoral, unethical and substantially injurious to Plaintiffs and other California donors.[142] "Because the test for 'unfair' practices is broad, . . . these allegations are sufficient to state a claim for unfair business practices under [the UCL]."[143]

Defendants' conduct is also fraudulent. "Fraudulent acts are those that are likely to deceive the public."[144] Defendants' ads are likely to deceive, and do deceive, reasonable donors to believe Kars4Kids uses donations to help needy kids of all faiths, including in California, when

---

[138] *Id.* at *21-22.

[139] *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 805-806 (N.D. Cal. 2022); *see also Castagnola v. Hewlett-Packard Co.*, 2012 U.S. Dist. LEXIS 82026, at *25-29 (N.D. Cal. Jun. 13, 2012) (plaintiffs were not deceived into subscribing to membership service following an online purchase where (i) they had to affirmatively enter their email addresses, zip code and click "yes" to the offer, and (ii) the membership details were clearly provided to them at the ***same time*** as the allegedly misleading statements, with the monthly fee amounts in bold print).

[140] *Kaplan,* 2004 U.S. Dist. LEXIS 31799, at *17.

[141] ¶¶ 37-64.

[142] ¶¶ 159-162.

[143] *Kaplan*, 2004 U.S. Dist. LEXIS 31799, at *18.

[144] *Id.* at *17.

it does not.[145] This is sufficient to state a claim for fraudulent business practices under the UCL.[146]

### 3. Plaintiffs allege predicate law violations under the UCL.

The UCL also prohibits unlawful business practices. In doing so, it "borrows" alleged violations of other laws and makes them "independently actionable" under the UCL.[147] Plaintiffs sufficiently allege that Defendants violated RICO, the FAL, and Cal. Govt. Code § 12599.6 (prohibiting misleading charitable solicitations).[148] "That is enough under the UCL."[149]

### 4. Plaintiffs have FAL and UCL standing.

A FAL or UCL claim may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."[150] A plaintiff need only allege that the misrepresentation "played a substantial part" in his decision; it need not be the only cause.[151] As with their RICO claims, Plaintiffs allege that they lost property by donating (and losing) their vehicles based on Defendants' misleading ads.[152] As both the District Court and Superior Court in *Puterbaugh* held, economic injury and causation are established where, as here, Plaintiffs "donated [their] car[s] because Kars4Kids' jingle led [them] to believe that it would use donations to benefit needy children across the country, including in California."[153] This is a "classic form of injury in fact" for FAL and UCL standing.[154]

---

[145] ¶¶ 37-64; *see Puterbaugh*, 2023 U.S. Dist. LEXIS 116477, at \*12 ("a reasonable jury could conclude that Kars 4 Kids' advertising was misleading . . .").

[146] *Kaplan*, 2004 U.S. Dist. LEXIS 31799, at \*18-19.

[147] *Cel-Tech Comm's Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999).

[148] *See* §§ IV.B., IV.C, *supra*; ¶¶ 164-170.

[149] *Deno*, 2022 U.S. Dist. LEXIS 162243, at \*5. Plaintiff also sufficiently pleads conspiracy to commit FAL and UCL violations. ¶¶ 151-154, 180-183; *see Diamond Resorts United States Collection Dev. v. Pandora Mktg.,* 2021 U.S. Dist. LEXIS 79925, at \*24 n.1 (C.D. Cal. Apr. 12, 2021).

[150] *Bias*, 942 F. Supp. 2d at 930.

[151] *Id*.

[152] *See* § IV.B.7., *supra; Kwikset*, 51 Cal.4th at 322.

[153] *Puterbaugh*, 2023 U.S. Dist. LEXIS 116477, at \*6-8; Grover Decl., Ex. C at 5.

[154] *Buck*, 2024 Cal. Super. LEXIS 12760, at \*27.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Despite their obvious economic injury, Defendants claim Plaintiffs nonetheless lack standing because Kars4Kids sold their cars, thereby precluding their ability to obtain restitution. Not so. That Defendants monetized the cars post-donation *for their own benefit* does not preclude Plaintiffs from recovering restitution for their economic injury caused by Defendants' fraudulent conduct. Indeed, Defendants themselves maintain records of the monetary value of Plaintiffs' (and other Class Members') donated vehicles. Plaintiffs are entitled to monetary restitution to be made whole from Defendants misconduct.[155]

The California Supreme Court has also made clear that "the standards for establishing standing under [UCL § 17204] and eligibility for restitution under [UCL § 17203] *are wholly distinct*."[156] Thus, "ineligibility for restitution is *not* a basis for denying standing under [the UCL]."[157]

### D. The Complaint Sufficiently States Claims Against Oorah

Defendants claim that, despite orchestrating, leading, and participating in this fraudulent scheme, Oorah should not be held accountable for what Defendants assert are solely *Kars4Kids'* ads. But Oorah need not have personally broadcast the misleading ads to be liable under RICO, FAL or UCL. Plaintiffs sufficiently allege that Kars4Kids operates as *Oorah's agent* to disseminate deceptive ads soliciting vehicle donations *on Oorah's behalf*.[158] Oorah itself created the misleading ads and Kars4Kids, and continues to control Kars4Kids as its *own* "fundraising arm" to solicit donations to find its *own* operations.[159] Indeed, the whole purpose of the scheme is to surreptitiously "*fund[] Oorah*."[160]

Far from "lump[ing]" Defendants together, Plaintiffs specifically allege Oorah's knowledge of and direct participation in the fraudulent scheme. Plaintiffs allege that Oorah: (i)

---

[155] *See* Grover Decl., Ex. C at 7-8 (awarding plaintiff monetary restitution for his donated vehicle and permanently enjoining Kars4Kids from running its ads in California).

[156] *Kwikset*, 51 Cal.4th at 335-37.

[157] *Id.* at 337.

[158] ¶¶ 86-87, 122, 176.

[159] ¶¶ 23-26, 115-122.

[160] ¶ 26.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

created Kars4Kids and its misleading ads to solicit vehicle donations under false pretenses to fund Oorah's operations; (ii) conspired with Kars4Kids, which serves as Oorah's agent, to continue disseminating these deceptive ads on Oorah's behalf; (iii) continues to use and *control* Kars4Kids as its own "fundraising arm" to solicit vehicle donations on its behalf, through their joint-CEO Mintz, despite registering Kars4Kids as a separate entity; (iv) has received hundreds of millions of dollars in vehicle donations over the past four years (and prior) from Kars4Kids by mail and/or wire pursuant to this fraudulent scheme; and (vi) uses Kars4Kids donation funds at its own discretion to fund its own expenses, investments and exclusionary religious programs.[161] Oorah is a ***direct participant*** in this scheme, including dissemination of the misleading ads. Plaintiffs have thus sufficiently stated claims against Oorah for RICO, RICO conspiracy, FAL and UCL violations.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs have properly alleged claims under RICO, FAL and UCL. The Court should deny Defendants' motion in its entirety. However, should the Court grant any part of Defendants' motion, Plaintiffs respectfully request leave to amend.[162]

Respectfully submitted,

Dated: April 14, 2026                        **KELLER GROVER LLP**

By: /s/ *Eric A. Grover*
ERIC A. GROVER
*Counsel for Plaintiffs*

---

[161] *See* ¶¶ 25-26, 43-51, 53-56, 58-63, 85-87, 126, 176.

[162] *See Schrieber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861