Robyn E. Bladow (SBN 205189)
robyn.bladow@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Drive
Costa Mesa, CA 92626
Telephone:     (213) 680-8400
Facsimile:     (714) 982-8844

David I. Horowitz (SBN 248414)
david.horowitz@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
Telephone:     (310) 552-4200
Facsimile:     (310) 552-5900

*Attorneys for Defendants*
*Kars4Kids Inc. and Oorah, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| PAVEL SAVVA and ALEXANDER VICKERS, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>KARS4KIDS INC. and OORAH, INC.,<br><br>Defendants. | CASE NO. 4:25-CV-09498-YGR<br><br>**DEFENDANTS KARS4KIDS INC. AND OORAH, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>Hearing Date: June 2, 2026<br>Hearing Time: 2:00 p.m.<br>Judge: Yvonne Gonzalez Rogers<br>Courtroom: Courtroom 1, 4th Floor<br><br>Complaint Filed Date:  November 4, 2025 |

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS

CASE NO. 4:25-CV-09498-YGR

**TABLE OF CONTENTS**

**Page**

I. THE DECISIONS IN PRIOR LITIGATIONS AGAINST KARS4KIDS ARE NEITHER BINDING NOR PERSUASIVE. ...........................................................1

II. PLAINTIFFS' RICO AND RICO CONSPIRACY CLAIMS MUST BE DISMISSED.2

    A. Plaintiffs' Opposition Does Not Identify Any Actionable Falsity.............................3

        1. Plaintiffs Concede that "1-877-Kars-4-Kids" Is Not Facially False...............3

        2. "1-877-Kars-4-Kids" Is Not a "Half-Truth."....................................................3

            a. "1-877-Kars-4-Kids" Cannot Be a "Half-Truth" Because No Reasonable Person Would Believe that It Stated the "Whole Truth" Regarding the Nature of Kars4Kids' Charitable Purpose..........................................................................................4

            b. The Allegedly Omitted Material Information Was Disclosed on Kars4Kids' Website, Which Plaintiffs Admit They Visited...............8

        3. The First Amendment Precludes this Case from Proceeding on a Pure Omissions Theory. ....................................................................................10

    B. Plaintiffs Cannot Avoid Their Obligation To Allege Scienter. ...............................11

    C. Plaintiffs Have Not Identified a Tangible Injury To Support RICO Standing. ........12

III. PLAINTIFFS' UCL AND FAL CLAIMS SHOULD BE DISMISSED. ........................13

    A. Given Kars4Kids' Compliance with Statutorily-Mandated Disclosures of the Allegedly Omitted Information, Plaintiffs Cannot State an Actionable Claim Under the UCL or FAL.........................................................................................13

    B. Plaintiffs Do Not Address Their Lack of Article III Standing to Bring UCL or FAL Claims.............................................................................................................14

    C. With the Dismissal of the RICO, FAL, and UCL Unfairness and Fraudulent Claims, Nothing Remains for Plaintiffs to Base an "Unlawful" Claim....................15

IV. PLAINTIFFS HAVE NOT IDENTIFIED ALLEGATIONS OF ANY ACTIONABLE CONDUCT BY OORAH.................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Starbucks Corp.*,
2020 WL 4196248 (C.D. Cal. July 9, 2020)................................................................9

*Alpine Bank v. Hubbell*,
555 F.3d 1097 (10th Cir. 2009) ..............................................................................7

*Assocs. In Adolescent Psychiatry, S.C. v. Home Life Ins.*,
941 F.2d 561 (7th Cir. 1991)..................................................................................8

*Benson Tower Condo. Owners Ass'n v. Victaulic Co.*,
2014 WL 5285475 (D. Or. Oct. 15, 2014)................................................................4

*Bimbo Bakeries USA, Inc. v. Sycamore*,
39 F.4th 1250 (10th Cir. 2022) ..............................................................................7

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ................................................................................14

*Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*,
819 F.2d 151 (6th Cir. 1987) ..................................................................................8

*Bogle v. Phillips Petroleum Co.*,
24 F.3d 758 (5th Cir. 1994) ...................................................................................2

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ...................................................................2

*Capito v. San Jose Healthcare Sys., LP*,
17 Cal. 5th 273 (2024) ...................................................................................13, 14

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...............................................................................................15

*Contreras-Velazquez v. Fam. Health Ctrs. of San Diego, Inc.*,
62 Cal. App. 5th 88 (2021) ....................................................................................2

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) .........................................................................4, 5, 6

*People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes*,
139 Cal. App. 4th 1006 (2006) ...............................................................................6

*Durning v. Citibank, N.A.*,
950 F.2d 1419 (9th Cir. 1991) ................................................................................2

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) .................................................................................11, 12

*Eller v. EquiTrust Life Ins.*,
  778 F.3d 1089 (9th Cir. 2015) ........................................................................................3

*FindWhat Inv. Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) .....................................................................................6

*Freeney v. Bank of Am. Corp.*,
  2015 WL 4366439 (C.D. Cal. July 16, 2015).................................................................1

*Howard v. Am. Online Inc.*,
  208 F.3d 741 (9th Cir. 2000) .......................................................................................13

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
  921 F. Supp. 2d 903 (N.D. Ill. 2013) .............................................................................4

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
  2008 WL 8929013 (S.D. Cal. July 8, 2008) ...............................................................6, 7

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*,
  2021 WL 1541649 (S.D. Cal. Apr. 20, 2021).................................................................9

*Kleffman v. Vonage Holdings Corp.*,
  49 Cal. 4th 334 (2010) ...................................................................................................5

*Knuttel v. Omaze, Inc.*,
  2022 WL 1843138 (C.D. Cal. Feb. 22, 2022).................................................................9

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ...............................................................................................14

*Ill., ex rel. Madigan v. Telemarketing Assocs., Inc.*,
  538 U.S. 600 (2003).....................................................................................................11

*MGM Grand Hotel, Inc. v. Imperial Glass Co.*,
  533 F.2d 486 (9th Cir. 1976) .........................................................................................2

*Morris v. JPMorgan Chase Bank, N.A.*,
  78 Cal. App. 5th 279 (2022) ........................................................................................14

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
  2012 WL 440820 (S.D. Cal. Feb. 10, 2012).................................................................7

*Neder v. United States*,
  527 U.S. 1 (1999)............................................................................................................3

*Newtyn Partners, LP v. All. Data Sys. Corp.*,
  165 F.4th 947 (6th Cir. 2026) .......................................................................................6

*Nike, Inc. v. Kasky*,
539 U.S. 654 (2003) ...................................................................................................15

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,
157 Cal. App. 4th 835 (2007) ...................................................................................4, 7

*Oscar v. Univ. Students Co-op. Ass'n*,
965 F.2d 783 (9th Cir. 1992) (en banc) ......................................................................12

*Persson v. Smart Inventions, Inc.*,
125 Cal. App. 4th 1141 (2005) .....................................................................................5

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000) ........................................................................................7

*Randi W. v. Muroc Joint Unified Sch. Dist.*,
14 Cal. 4th 1066 (1997) ................................................................................................5

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988) .....................................................................................................11

*Rubenstein v. The Gap, Inc.*,
14 Cal. App. 5th 870 (2017) .........................................................................................3

*Sadler v. State Farm Mut. Auto. Ins.*,
2007 WL 2778257 (W.D. Wash. Sept. 20, 2007) .........................................................7

*Sciacca v. Apple, Inc.*,
362 F. Supp. 3d 787 (N.D. Cal. 2019) ..........................................................................3

*Sihler v. Fulfillment Lab, Inc.*,
2021 WL 1293839 (S.D. Cal. Apr. 7, 2021) .................................................................8

*Smith v. Allstate Ins.*,
160 F.Supp.2d 1150 (S.D. Cal. 2001) ...........................................................................7

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
646 F. Supp. 2d 510 (S.D.N.Y. 2009) ...........................................................................7

*Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*,
245 Cal. App. 4th 821 (2016) .......................................................................................5

*United States v. Bohonus*,
628 F.2d 1167 (9th Cir. 1980) ................................................................................11, 12

*United States v. Davis*,
825 F.3d 1014 (9th Cir. 2016) .......................................................................................7

*United States v. Jesenik*,
152 F.4th 924 (9th Cir. 2025) ........................................................................................3

*United States v. Shields*,
844 F.3d 819 (9th Cir. 2016) ..............................................................................3, 7, 11

*Universal Health Servs., Inc. v. United States*,
579 U.S. 176 (2016)..................................................................................................4

*Urzua v. Nat'l Veterans Servs. Fund, Inc.*,
2014 WL 12160751 (S.D. Cal. Jan. 28, 2014)........................................................11

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ....................................................................................6

*Winger v. Best Buy Co.*,
2011 WL 995937 (D. Ariz. Mar. 21, 2011) ............................................................12

*Yanase v. Auto. Club of S. Cal.*,
212 Cal. App. 3d 468 (1989) .....................................................................................5

**Statutes**

18 U.S.C. § 1964(c) .............................................................................................3, 12, 13

26 U.S.C § 6033(b) ...................................................................................................14

26 U.S.C. § 6104(b), (d) ...........................................................................................14

Cal. Gov. Code § 12591.1...........................................................................................15

Cal. Gov. Code § 12599.6...........................................................................................15

**Other Authorities**

Dobbs, *et al.*, *The Law of Torts* § 682 (2026 online ed.) ..................................................4

Donald C. Langevoort, *Half-Truths: Protecting Mistaken Inferences by Investors and
Others*, 52 Stan. L. Rev. 87, 93 (1999) ........................................................................4

Prosser & Keeton, The Law of Torts (5th ed. 1984) Misrepresentation and
Nondisclosure, § 106 ...................................................................................................5

Restatement (Second) of Contracts § 159 cmt. B........................................................5

Plaintiffs contend that Kars4Kids' 30-second ad—a child-sung repetition of the phone number "1-877-Kars-4-Kids"—is unlawful racketeering and violates California law because it does not disclose pages worth of alleged facts Plaintiffs claim were material to their decision to donate their old cars. But all of these facts *are* disclosed on the very website Plaintiffs visited to donate their vehicles. That Plaintiffs—who purport to care so deeply about how their donations would be used—apparently ignored the contents of the website does not make Kars4Kids a fraudster. It makes Plaintiffs *unreasonable* consumers, whose idiosyncratic subjective beliefs cannot support a fraud claim.

Plaintiffs' opposition does not adequately address any of the Complaint's fatal deficiencies. Among other things, Plaintiffs do not identify any affirmative misrepresentations; their "half-truth" theory fails because no reasonable person would think that the "1-877-Kars-4-Kids" song purports to tell the "whole truth" about *anything*; and the First Amendment categorically precludes any pure omissions-based claim. But more fundamentally, it just makes no sense for these Plaintiffs to claim that Kars4Kids fraudulently omitted facts that were clearly and openly disclosed on the website referenced in the ad, which they admittedly used to make their donations. The Complaint also suffers from evident defects in both RICO and Article III standing. The Complaint fails to state any claim and should be dismissed.

## I.   THE DECISIONS IN PRIOR LITIGATIONS AGAINST KARS4KIDS ARE NEITHER BINDING NOR PERSUASIVE.

As a threshold matter, the Opposition relies heavily on tentative and interlocutory rulings from two prior actions involving plaintiffs who, unlike those here, did not transact online—*Dugger v. Kars4Kids Inc. et al.*, No. 3:24-cv-02419 (N.D. Cal.) and *Puterbaugh v. Oorah et al.*, No. 8:21-cv-01593-CJC-DFM (C.D. Cal.), *on remand to state court*, 30-2021-01216844-CU-BT-CJC (Orange County Super. Ct.). *See* Opp. 4, 7, 8, 9, 17, 19–24, 26, 29, 30. None are binding or persuasive here.

*Dugger* was voluntarily dismissed after Judge Donato issued an unreasoned four-sentence mixed decision on Defendants' motion to dismiss, depriving them of an opportunity to further litigate the case. *See* Pls. RJN, Ex. B.[1] The federal court in *Puterbaugh* denied motions to dismiss and

---

[1] "¶" citations are to the Complaint, numbered exhibits are from Defendants' RJN, lettered exhibits are from Plaintiffs' RJN. Although Plaintiffs' exhibits are unpersuasive and largely irrelevant, they appear to be public records of state and federal courts. The documents therefore may be judicially noticeable, but the Court has no basis to assume the truth of their contents, nor can Plaintiffs use them to amend their complaint to survive this motion to dismiss. *See Freeney v. Bank of Am. Corp.*,

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

1

CASE NO. 4:25-CV-09498-YGR

summary judgment, but then found it lacked subject matter jurisdiction and remanded the action to state court, rendering its prior orders "void and of no effect." *See Bogle v. Phillips Petroleum Co.*, 24 F.3d 758, 762 (5th Cir. 1994). After remand, *Puterbaugh* was tried to the state court, which tentatively found in the plaintiff's favor. Ex. C. If that ruling becomes a judgment, Defendants will appeal.

None of these rulings has the requisite finality for issue preclusion against Defendants. *See Contreras-Velazquez v. Fam. Health Ctrs. of San Diego, Inc.*, 62 Cal. App. 5th 88, 103 (2021). At best, they are persuasive authority, *see MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 489 n.5 (9th Cir. 1976)—worth only the weight of the strength of their reasoning. *Accord Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1070 (C.D. Cal. 2023) ("[P]ersuasive authority … is only relevant to the extent of its ability to *persuade*[.]"). The orders, however, do not persuade. The *Dugger* decision has no reasoning. The federal court's pre-remand orders in *Puterbaugh* are *void* because they were entered without subject matter jurisdiction. *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 (9th Cir. 1991) (noting a vacated opinion has "no precedential authority whatsoever"). And, as discussed below, the reasoning of the superior court in the *Puterbaugh* tentative on remand is superficial, deeply flawed, and simply wrong about the law and record evidence on several issues. It follows that none of these decisions can bear the strain of the weight Plaintiffs place on them.

But, more practically, both *Dugger* and *Puterbaugh* bear a crucial factual difference from this case. In both cases, the plaintiffs alleged they saw the Kars4Kids ad on TV and arranged their donations entirely over the phone. Here, however, Plaintiffs admit they visited and used the Kars4Kids website. *See*, *e.g.*, ¶¶ 39, 74, 79. In fact, Plaintiffs opposed a related-case transfer on the basis that this case was different than *Dugger* because they "saw and heard additional advertisements" during their online transaction. Dkt. 12, Ex. A at 2 (opposing transfer because "Mr. Dugger's allegations related to a telephone donation" and "Mr. Savva's and Mr. Vickers' allegations relate to online donations"). As discussed below, that is a critical and dispositive distinction.

## II.   PLAINTIFFS' RICO AND RICO CONSPIRACY CLAIMS MUST BE DISMISSED.

Plaintiffs say the broadcast of "1-877-Kars-4-Kids" is wire fraud, and that its repetition is

---

2015 WL 4366439, at *17 (C.D. Cal. July 16, 2015) ("Plaintiffs' attempt to amend their complaint through judicial notice to include facts purportedly demonstrating [their theory] is improper.").

racketeering. But their claim must fail because it does not allege (1) actionable falsity; (2) scienter; or (3) RICO standing under 18 U.S.C. § 1964(c).

### A.    Plaintiffs' Opposition Does Not Identify Any Actionable Falsity.

As the Motion explained (Mot. 8–9), there are three ways to plead wire fraud: (1) an affirmative false statement; (2) an actionable "half-truth"; or (3) a pure omission of material fact but only when there is an independent duty of disclosure. *United States v. Jesenik*, 152 F.4th 924, 938 (9th Cir. 2025); *Eller v. EquiTrust Life Ins.*, 778 F.3d 1089, 1092 (9th Cir. 2015); *United States v. Shields*, 844 F.3d 819, 822 (9th Cir. 2016).[2] While the Complaint is unclear, their Opposition now purports to claim a "half-truth." Opp. 19. In any case, Plaintiffs have not alleged falsity under any theory.

### 1.    Plaintiffs Concede that "1-877-Kars-4-Kids" Is Not Facially False.

Plaintiffs do not respond to Kars4Kids' argument that "Plaintiffs have not alleged any literally false statement." Mot. 9. Nor could they possibly construe a sung phone number incorporating a charity's name as an affirmative misrepresentation. They have thus abandoned the issue. *See Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 801 (N.D. Cal. 2019) ("[A] district court may find a cause of action waived where a plaintiff fails to defend the cause of action in opposition to a motion to dismiss." (cleaned up)).

### 2.    "1-877-Kars-4-Kids" Is Not a "Half-Truth."

The Opposition confirms that Plaintiffs' fraud theory is based on supposed "half-truths"—that Kars4Kids' ads are false because they omit various details about the operation of the charity and its beneficiaries. Opp. 16–19. But that theory fails for two key reasons. First, nothing in the ads merits an inference that "1-877-Kars-4-Kids" was a *complete* description of Kars4Kids' charitable purposes. And second, the allegedly omitted material facts Plaintiffs claim make the ads misleading are disclosed on the Kars4Kids website referenced in the ad, *which Plaintiffs concede they visited*.

---

[2] The wire and mail fraud statutes adopt the common law definition of "fraud," which includes the common law conceptions for falsity and omissions when there is a duty to disclose. *See Neder v. United States*, 527 U.S. 1, 22 (1999). The same is true for the UCL and FAL. *See Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 879 (2017) (finding that common law rules regarding the actionability of omissions apply to UCL and FAL claims). This section will accordingly rely on authorities applying the common law, state law fraud prohibitions such as the UCL, and criminal cases applying the wire and mail fraud statutes, except in specific contexts where the law diverges.

| DEFENDANTS' REPLY RE MOTION TO DISMISS COMPLAINT | 3 | CASE NO. 4:25-CV-09498-YGR |
| --- | --- | --- |

### a.   "1-877-Kars-4-Kids" Cannot Be a "Half-Truth" Because No Reasonable Person Would Believe that It Stated the "Whole Truth" Regarding the Nature of Kars4Kids' Charitable Purpose.

Plaintiffs list various alleged facts that don't appear in Kars4Kids' 30-second ad, claiming their *omission* renders the ad an actionable half-truth. Opp. 16, 18–19; *see also* ¶¶ 43–63. That is, "a partial or ambiguous statement that is misleading unless additional facts are disclosed[.]" *See* Dobbs, *et al.*, *The Law of Torts* § 682 (2026 online ed.) (*Dobbs*).

But Plaintiffs miss a threshold legal requirement. To premise a fraud claim on a half-truth—as opposed to a pure omission—the defendant must make a statement that "*purports to convey the whole truth about a subject.*" *See OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 854 (2007) (cleaned up; emphasis added); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009); *In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 919 (N.D. Ill. 2013) (applying rule to RICO wire fraud allegation). In other words, to be a half-truth, a factual statement must give rise to a "reasonable, but erroneous inference" upon which the plaintiff could justifiably rely. *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 2014 WL 5285475, at *15 (D. Or. Oct. 15, 2014). As a well-regarded scholar of securities fraud has explained: "[T]he law of half-truths is all about determining what, if any, implication follows from one party's statements that would entitle the other party to rely without seeking further clarification." Donald C. Langevoort, *Half-Truths: Protecting Mistaken Inferences by Investors and Others*, 52 Stan. L. Rev. 87, 93 (1999).

In *Universal Health Servs., Inc. v. United States*, 579 U.S. 176 (2016), the Supreme Court gave two "classic example[s] of an actionable half-truth." *Id.* at 188–89. The first was "the seller who reveals that there may be two new roads near a property he is selling, but fails to disclose that a third potential road might bisect the property." *Id.* at 189. There, the "enumeration of two streets, described as unopened but projected, was a tacit representation that the land to be conveyed was subject to no others, and certainly subject to no others materially affecting the value of the purchase." *Id.* (citation omitted). The second was "an applicant for an adjunct position at a local college [who] makes an actionable misrepresentation when his resume lists prior jobs and then retirement, but fails to disclose that his 'retirement' was a prison stint for perpetrating a $12 million bank fraud." *Id.* (citing *Dobbs* § 682). In both examples, the information affirmatively disclosed merited an inference that other

| DEFENDANTS' REPLY RE MOTION TO DISMISS COMPLAINT | 4 | CASE NO. 4:25-CV-09498-YGR |
|---|---|---|

information on the same subject—the number of streets or the applicants' job history—had not been withheld.[3]

But the mere fact that a defendant has spoken about *something* does not merit an inference that it has offered the whole truth about some other issue. *Yanase v. Auto. Club of S. Cal.*, 212 Cal. App. 3d 468 (1989) is illustrative. There, the publisher of a tourism guidebook rated a motel, signifying that it "[o]ffers very comfortable and attractive accommodations." *Id.* at 472. The plaintiff—whose relative was murdered in the hotel's parking lot—sued the publisher for negligent misrepresentation, arguing that the publisher failed to disclose that the motel was in an unsafe neighborhood. *Id.* The California Court of Appeal, however, affirmed a sustained demurrer because nothing in the rating made "a positive assertion concerning neighborhood safety or the security measures taken in connection with the motel." *Id.* at 473. Nor were those "matters … even implied[.]" *Id.*; *see also Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 347 (2010) (email header not deceptive where same sender sent multiple emails from different email addresses because "an e-mail cannot reasonably be understood to be an implied assertion that the source of that e-mail is different from the source of another e-mail containing a different domain name"); (*Randi W. v. Muroc Joint Unified Sch. Dist.*, 14 Cal. 4th 1066, 1082 (1997) (finding a misleading half-truth adequately alleged because "half of the truth may obviously amount to a lie, *if it is understood to be the whole*") (quoting Prosser & Keeton, The Law of Torts (5th ed. 1984) Misrepresentation and Nondisclosure, § 106, p. 738)).

And in *Crichton v. Golden Rule Ins.*, 576 F.3d 392 (7th Cir. 2009), plaintiff sued his insurance company for fraud and RICO, alleging that the insurer's descriptions of its policies as "group" insurance and its summary of claims-handling practices were misleading because they failed to disclose other underwriting practices that led to increased premiums. *Id.* at 398. The Seventh Circuit held that the omission was not an actionable half-truth because plaintiff's allegations did not "remotely suggest that any of these communications from [insurer] purported to be an explanation of all of the

---

[3] *See also Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1165 (2005) (defendant who told counterparty that it would "paint you the truest picture possible of where the company is right now" but omitted facts about the company's most important product stated actionable half-truth); *Tenet Healthsystem Desert, Inc. v. Blue Cross of Cal.*, 245 Cal. App. 4th 821, 839 (2016) (insurer that repeatedly stated that treatment was "authorized" but knew that there were grounds under which it would ultimately deny reimbursement stated actionable half-truth); Restatement (Second) of Contracts § 159 cmt. B (providing further illustrations of actionable half-truths).

underwriting factors that might affect [plaintiff's] insurance premiums. … Golden Rule did not purport to explain the 'whole truth' of its underwriting practices." *Id.*[4]

Here, a reasonable viewer or listener would not conclude that by airing its 30-second "1-877-Kars-4-Kids" jingle, Kars4Kids purported to speak the "whole truth" about its charitable operations. And to the extent Plaintiffs contend they inferred—*solely from the repetition of a telephone number* in an ad that directs viewers to a website—that the beneficiaries of their donations would only be "needy or disadvantaged kids regardless of religion (or any other limiting factors), including in California" (Opp. 7), that conclusion is also not one that can reasonably be drawn without more. Indeed, that Plaintiffs used 27 paragraphs to allege all the "facts" that they contend were misleadingly omitted from the ad confirms the ad could not possibly have intended to convey the "whole truth" about Kars4Kids. And certainly no prospective donor, especially one who purports to care about who might benefit from the proceeds of the sale of a twenty-year-old vehicle, would reasonably draw these conclusions without seeking further clarification from sources that were readily available to them at no cost on the very website Plaintiffs admittedly visited.

The half-truth cases Plaintiffs cite (with no discussion of their facts) are distinguishable for this reason. In each, the alleged half-truth was a statement from which a listener or reader could draw a reasonable but erroneous inference because the statement would be understood as stating the "whole truth" as to an issue. In *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008), product packaging representing that a product was made with "fruit juice and other all natural ingredients" merited a reasonable inference that "all the ingredients in the product were natural, which appear[ed] to be false." *Id.* at 939. In *People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes*, 139 Cal. App. 4th 1006 (2006), the defendant affirmatively represented "free towing" to vehicle donors, but failed to disclose that a towing charge would be deducted from the portion of the sale proceeds otherwise designated for charity. *Id*. at 1016–17. In *Iorio v. Allianz Life Ins. Co. of N. Am.*, 2008 WL 8929013 (S.D. Cal. July

---

[4] *See also FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011) ("Requiring that disclosures be complete and accurate does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting, market-wise." (cleaned up)); *Newtyn Partners, LP v. All. Data Sys. Corp.*, 165 F.4th 947, 963 (6th Cir. 2026) (generic remarks about defendant's client base "would not cause a reasonable investor to infer anything about the terms of [its] specific contractual relationships").

| DEFENDANTS' REPLY RE MOTION TO DISMISS COMPLAINT | 6 | CASE NO. 4:25-CV-09498-YGR |
|---|---|---|

8, 2008), the court found that "the promise of an 10% *immediate* bonus" was an affirmative misrepresentation because the bonus was not available for years. *Id.* at \*11 (emphasis added). And *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 2012 WL 440820 (S.D. Cal. Feb. 10, 2012) found that a statement that annuities offered for sale "featured a premium bonus and had no upfront sales charges or policy fees" was a half-truth because the defendant did, in fact, pay commissions to sales agents for selling the annuities. *Id.* at \*4 (cleaned up). In each of these cases, the defendant's statement reasonably implied the non-existence of the undisclosed fact. Not one of them holds—or even suggests—that a plaintiff could make out an actionable half-truth case on a theory that a single phrase tagline—*which is just a telephone number that incorporates the charity's name*—is fraud unless many paragraphs of minute factual detail were simultaneously disclosed. If that is the law, it is difficult to imagine a 30-second TV or radio ad that isn't a half-truth.[5]

The Opposition's half-truth discussion also relies heavily on the trial court's tentative decision in *Puterbaugh*. Opp. 16–19 & nn.63–65, 79. But while that order finds the ad "misleading by omission," Ex. C at 6, it lacks any analysis on what makes a half-truth actionable—that the defendant makes a statement that "purports to convey the 'whole truth' about a subject." *OCM*, 157 Cal. App. 4th at 854. Indeed, the reasoning of the order rests not on a half-truth (which is not mentioned), but on a pure omissions theory and an assumption that Defendants were under a duty to disclose any fact that might be material to a consumer's decision to donate her car. Ex. C at 6–7. But nowhere does the order identify the source of any "independent duty" of disclosure that Defendants owed the public at large, without which there is no fraud. *See Shields*, 844 F.3d at 822. Because the superior court did not analyze the law of half-truths, it has no persuasive value on the point. *Accord United States v. Davis*, 825 F.3d 1014, 1024 (9th Cir. 2016) (decisions that "lack [ ] meaningful analysis … lack persuasive

---

[5] It is worth noting that most cases that deal with brief slogans or taglines used in advertising do not even reach this point in the analysis because the statements at issue are found to be unactionable puffery. *See, e.g.*, *Sadler v. State Farm Mut. Auto. Ins.*, 2007 WL 2778257, at \*3 (W.D. Wash. Sept. 20, 2007) ("like a good neighbor" slogan not actionable); *Smith v. Allstate Ins.*, 160 F.Supp.2d 1150, 1152 (S.D. Cal. 2001) ("in good hands" slogan not actionable); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498 (5th Cir. 2000) ("Better Ingredients. Better Pizza" slogan not actionable); *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009) (slogan that bank would "take care of everything else" not actionable); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 525 (S.D.N.Y. 2009) (claim that beverage was "The Complete Sports Drink," not actionable); *Bimbo Bakeries USA, Inc. v. Sycamore*, 39 F.4th 1250, 1266 (10th Cir. 2022) (slogan that bakery's bread was "Fresh. Local. Quality" not actionable).

force").

**b.      The Allegedly Omitted Material Information Was Disclosed on Kars4Kids' Website, Which Plaintiffs Admit They Visited.**

Even if airing the ad obliged Kars4Kids to disclose more information about the nature of its charity, as the Opening Brief pointed out, that information was disclosed in detail on Kars4Kids' website (which the ad references). Plaintiffs offer three points in response: (1) the only question is whether "the ad is misleading"; (2) the information is "buried" in "fine print"; and (3) not every detail that they claim to care about is disclosed. Opp. 19–22.

The first point is wrong. As discussed above, "1-877-Kars-4-Kids" is not an actionable half-truth. But it is *also* wrong because, under the facts alleged, both Plaintiffs did, in fact, visit the Kars4Kids website. ¶¶ 74, 79. Plaintiffs cannot make out a half-truth claim based on the omission of *facts that were actually disclosed* on a website they *actually visited*, simply because they apparently chose to ignore them.

Plaintiffs cite a handful of district court orders that they assert stand for the proposition that they were under no obligation to review the Kars4Kids website to ascertain the truth. Notably none of them are federal wire or mail fraud cases,[6] where federal courts have consistently held that a defendant cannot be guilty of those offenses by omitting information that is generally available to the public. *See Blount Fin. Servs., Inc. v. Walter E. Heller & Co.*, 819 F.2d 151, 153 (6th Cir. 1987) (RICO defendant did not commit mail fraud by misquoting the prime interest rate because the rate was publicly available); *Assocs. In Adolescent Psychiatry, S.C. v. Home Life Ins.*, 941 F.2d 561, 570 (7th Cir. 1991) (*AIAP*) (holding, in a RICO action, that there was no scheme to defraud when the plaintiffs could have verified the veracity of the allegedly fraudulent statements in newspapers). As the Seventh Circuit has noted, "no jury could find that a reasonable investor would be misled by the statements [defendant] related, when the truth was under his nose in black and white (many times over)." *AIAP*, 941 F.2d at 571. In any event, none of the cases Plaintiffs cite stand for the proposition that a plaintiff can make a half-truth claim when the corrective information that has allegedly been omitted is prominently laid out on the very website that plaintiffs admit they used to transact with defendants. *See Sihler v.*

---

[6] This appears to be one area where the law with respect to wire and mail fraud is clearer than fraud under the UCL or FAL. The significance of Plaintiffs' cases as to those claims is addressed below.

*Fulfillment Lab, Inc.*, 2021 WL 1293839, at *2 (S.D. Cal. Apr. 7, 2021) (alleging fraudulent statements (not half-truths) were made on product landing pages, but that those pages were "hidden" and replaced with "false front" websites with clear terms and conditions and no false statements if someone tries to dispute charge) (cited Opp. 19).[7]

As to Plaintiffs' argument that additional information required to make "1-877-Kars-4-Kids" the "whole truth" was "buried" in "generalized" website disclosures (Opp. 19–20), that glib assertion is belied by the website's actual content (which Plaintiffs do not dispute, though they tellingly ask the Court to ignore it anyway, *see* Dkt. 27 at 11–16 (Pls. RJN Opp.)). As previously detailed (Mot. 2–6), the Kars4Kids homepage states, in clear, legible font, that "Kars4Kids is a registered nonprofit Jewish organization who, together with Oorah, our sister charity, help thousands of children develop into productive members of the community." Exs. 12–14. A reader who actually *cares* about the specifics of the organization's work need only click the "About" dropdown menu to learn about "Our Charity," to again see that Kars4Kids is "a national Jewish nonprofit providing mentorship, educational support and nurturing year-round environments together." Exs. 21–23. From there, a potential donor can learn about "Our Programs," where the opening page explains "[o]ur all-encompassing programs give Jewish children and their families the support, resources and guidance they need to develop into productive members of the community." Exs. 9–11. Or if the donor were curious about Oorah, she could click the hyperlink and be directed to Oorah's webpage, which describes and shows, in detail, the various programs it offers, all of which are clearly and obviously devoted to serving the educational, spiritual, and community needs of Jewish youth and young adults. Exs. 15–17 (multiple photos of men in yarmulkes; descriptions of programs like "TorahMates", "Ask the Rabbi", "Torah Classes" and "Shabbazone"; descriptions of "Rosh Hashana", "Chanukah", and other Jewish holidays). Or a donor concerned about the stewardship of her donation could click the link to "Financials," which leads to a page from which the donor can access Kars4Kids' Form 990 for the

---

[7] *See also Adams v. Starbucks Corp.*, 2020 WL 4196248, at *3 (C.D. Cal. July 9, 2020) (misleading images related to amount of caffeine in various Starbucks cup sizes made at point of in-person sale not corrected by information on defendant's website); *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *8 (C.D. Cal. Feb. 22, 2022) (affirmatively false statement (not half-truth) not addressed by "fine print" at bottom of defendant's webpage); *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, 2021 WL 1541649, at *4 (S.D. Cal. Apr. 20, 2021) (disclaimers of affirmatively false statements "buried in tiny fine print at the bottom of the ad").

prior four tax years, which details Kars4Kids' charitable and financial operations, including its relationship with Oorah. RJN at 9. None of this information is difficult to navigate, hidden, or buried in legalese.[8] So the entire premise of Plaintiffs' claims is that they cared so deeply about who would benefit from their donation proceeds, but yet, they did not spend any time reading that readily available information on the website that they were already visiting to make their donations. That isn't fraud.

Finally, Plaintiffs argue that these myriad disclosures are still insufficient, suggesting that details like Kars4Kids' relationship with and transfer of funds to Oorah are not disclosed. But Kars4Kids' Form 990 fully discloses the extent of its grants to Oorah and the purposes to which those grant monies are applied. RJN at 9. Plaintiffs also claim that Kars4Kids does not disclose that "Oorah's programs are available only to Jewish individuals," or that Jewish adults are also beneficiaries of Oorah's programming. But the "Programs" page of the Kars4Kids website quite prominently says "[o]ur all-encompassing programs give *Jewish children and their families* the support, resources and guidance they need to develop into productive members of the community." Exs. 9–11 (emphasis added). In any event, even if every minor detail identified is not fully spelled out, the facts that dispel Plaintiffs' purported assumption they assert was material to their decision to donate—that the donated funds would "help local needy or disadvantaged children, without regard to any ethnic or religious affiliation or ideology" ¶ 52—are all there out in the open.

As Plaintiffs emphasize, the standard for deception looks to a reasonable consumer. If such a consumer actually cared about the facts Plaintiffs argue render the advertising a half-truth, they are all there for the viewing, for free, with a click or two of a mouse. If Plaintiffs instead chose to donate based on the wildly speculative assumptions they purportedly drew from the sung phone number "1-877-Kars-4-Kids" without looking at anything on the websites they admittedly viewed to set up their donations, they are not the victims of fraud. They are just not reasonable consumers.

### 3. The First Amendment Precludes this Case from Proceeding on a Pure Omissions Theory.

As noted, setting aside the "half-truth" scenario, a fraud case can only arise from a pure

---

[8] Indeed, while the same counsel cited to Kars4Kids' Form 990s to support certain factual allegations in *Dugger* (*e.g.*, *Dugger*, Dkt. 1, ¶¶ 57–58), they make the same allegations here without any reference to the public documents. *See, e.g.*, ¶¶ 45–46. Of course, deleting those citations from the Complaint does not erase their existence or accessibility to anyone interested.

omission if the defendant is subject to some "independent duty" to disclose material information to the plaintiff. *Shields*, 844 F.3d at 822. The Complaint does not identify any duty under federal or California law, nor any facts giving rise to one. Its only reference to duty is in ¶ 90, which is the duty that arises when one utters a half-truth. That alone should preclude any omissions-based claim.

But as discussed in the Opening Brief, and as the Supreme Court has made crystal clear, the First Amendment precludes any omissions claim here. *See* Mot. 11–12; *see also Ill., ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 611, 624 (2003) (First Amendment protects "charitable solicitation[s]" and only affirmative false representations are actionable); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800 (1988) (state cannot impose duty to disclose revenue proportion spent on fundraising). The upshot of this is not a debatable point of law—the First Amendment precludes a fraud claim against a charity if premised on an omission alone.

Plaintiffs' only response is to block quote from the *Puterbaugh* trial transcript and then argue that they "allege Kars4Kids *affirmatively misrepresented* its charitable purpose and donation use" in addition to alleged omissions. Opp. 22. In addition to the state court's tentative statements in *Puterbaugh* having no weight here (*supra* II.A), they are also patently contrary to the law. *Compare, e.g.*, Ex. E at 75:10–18 (stating "[t]he First Amendment also does not protect the charity from liability for deception by omission" and citing *Urzua*), *with Urzua v. Nat'l Veterans Servs. Fund, Inc.*, 2014 WL 12160751, *3–4 (S.D. Cal. Jan. 28, 2014) ("bare failure to disclose … does not suffice to establish fraud" and "[a] fraud action may be maintained only when fundraisers make false or misleading representations").

As for Plaintiffs' emphatic insistence that they allege an affirmative misrepresentation, the paragraphs they cite contain no such thing. Opp. 22–23, n.101 (citing ¶¶ 37–64). "1-877-Kars-4-Kids" is a phone number and hardly a representation at all, let alone an affirmative misrepresentation.

Plaintiffs have not pled a misrepresentation, half-truth, omission, or any actionable falsity.

**B.      Plaintiffs Cannot Avoid Their Obligation To Allege Scienter.**

Plaintiffs ignore the on-point Ninth Circuit authority requiring that they allege "a specific intent to defraud." Mot. 14 (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014)); *see also United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980) ("[T]here is

no fraudulent scheme without specific intent."). Citing district court cases, Plaintiffs argue, without elaboration, that it is adequate that their Complaint says there was a "fraudulent scheme" and Defendants "intended to mislead donors." *Id.* & nn.117, 118 (citing, without explanation, nearly 60 paragraphs of the Complaint). None of those cases actually says a bare allegation of "intent to mislead" suffices. But if, for instance, *Winger v. Best Buy Co.*, 2011 WL 995937, at *5 (D. Ariz. Mar. 21, 2011) could be read to find a formulaic recitation of scienter adequate to sustain a RICO claim (Opp. 25 n.118), it is irreconcilable with the Ninth Circuit's 2013 decision in *Eclectic Properties*, which requires plaintiffs to allege actual *facts* that "exclude a plausible and innocuous alternative explanation," not just "legal conclusions" and "threadbare recitals of a cause of action." 751 F.3d at 998.

In any event, as in *Eclectic Properties*, an innocent explanation here is orders of magnitude more plausible. Namely, Kars4Kids solicits charitable donations of old and often unusable cars (one of the cars here had a dead battery) through their brief television and radio ads, with an earworm jingle that sticks in a consumer's memory, in the way that a six-page recitation of the full scope of Defendants' operations and charitable activities might not. Many donors do not particularly care what use their donations would be put to: they are content to have their decrepit, often nonfunctioning vehicles taken off their hands for free, for which they receive a tax deduction and a vacation voucher. The alternative is to deal with the hassle of selling the car or, if it doesn't work, paying a towing company to bring it to a junkyard. If, however, a donor actually cares about the nature of the charity, a quick perusal of Defendants' websites—whose accuracy Plaintiffs have not questioned—discloses everything they now claim was omitted. Incanting the word "scheme" over and over again doesn't make it so, and certainly does not *exclude* this plausible and innocuous explanation.

## C. Plaintiffs Have Not Identified a Tangible Injury To Support RICO Standing.

A RICO plaintiff must allege it was "injured in his business or property" by virtue of the violation. Mot. 14–15 (citing 18 U.S.C. § 1964(c)). A deprivation of an intangible, non-financial interest is not the kind of "concrete financial loss" necessary to satisfy § 1964(c). *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir. 1992) (en banc) ("[I]njuries to property are not actionable under RICO unless they result in tangible financial loss to the plaintiff."). Here, Plaintiffs donated their cars to Kars4Kids in exchange for a tax credit and a vacation voucher. That was the deal

they struck. Plaintiffs' disappointment that their donations were subsequently used in a manner that differed from how they (unreasonably) thought they would be used did not deprive Plaintiffs of any business or property. Opp. 9. Put another way, the alleged dismay Plaintiffs felt after learning their donations may have benefitted Jewish children is not injury to business or property. Standing under § 1964(c) has not been alleged.

\*   \*   \*

Plaintiffs do not state a RICO claim, and thus do not state a RICO conspiracy claim either. *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

## III.   PLAINTIFFS' UCL AND FAL CLAIMS SHOULD BE DISMISSED.

The falsity standard for UCL and FAL claims largely tracks that for common law fraud, and accordingly, for mail and wire fraud as well. Thus, as with the RICO claim, the UCL and FAL claims fail to allege actionable falsity. Plaintiffs' opposition on this issue largely echoes their opposition on the RICO claim. But three points specific to these statutes bear emphasis. First, a recent decision of the California Supreme Court precludes Plaintiffs' theory of UCL and FAL liability. Second, Plaintiffs lack Article III standing on these claims because they have no redress from the alleged violations. And third, with the dismissal of the predicate violations, Plaintiffs' "unlawful" UCL claim fails as well.

### A.   Given Kars4Kids' Compliance with Statutorily-Mandated Disclosures of the Allegedly Omitted Information, Plaintiffs Cannot State an Actionable Claim Under the UCL or FAL.

Plaintiffs' Opposition contends that the only way to prevent the ad from being false would be to disclose all the allegedly omitted facts "in their ads." Opp. 28. But for defendants subject to robust statutory disclosure obligations, the California Supreme Court has rejected that argument. *See Capito v. San Jose Healthcare Sys., LP*, 17 Cal. 5th 273 (2024). Specifically, the plaintiff in *Capito* alleged that a hospital emergency room violated the UCL by failing to adequately disclose certain fees to patients. *Id.* at 277, 282. But various state and federal regulations required the hospital to publish the at-issue fees online. *Id.* at 277. The court concluded, as to the "unfair" prong of the UCL, that a defendant that complies with a comprehensive regulatory scheme mandating specific disclosures does not act "unfairly" by abiding by that scheme. *Id.* at 287. As applied here, a tax-exempt 501(c)(3) organization must file a Form 990 tax return that discloses essentially all the information that Plaintiffs

argue was omitted from the ad. *See* 26 U.S.C § 6033(b). These forms must be made available for public inspection (26 U.S.C. § 6104(b), (d)), which Kars4Kids has done by posting them on the Internet. RJN at 9. Thus, under *Capito*, Plaintiffs cannot allege an actionable claim under the "unfairness" prong of the UCL. *Capito*, 17 Cal. 5th at 288.

*Capito* compels the same result under the "fraudulent" prong of the UCL and the FAL. By complying with the regulatory scheme that required public disclosure, the hospital avoided a UCL "fraudulent" claim as a matter of law because, as the court explained, "[w]e see no basis to conclude that the public will likely be deceived by the form and extent of [the Hospital's] disclosures in accordance with relevant state and federal regulations." *Id.* at 292. That logic applies here too.

**B.    Plaintiffs Do Not Address Their Lack of Article III Standing to Bring UCL or FAL Claims.**

Kars4Kids' Opening Brief explained that Article III standing to pursue a UCL or FAL claim requires Plaintiffs to show they can obtain redress through the remedies afforded by those statutes— restitution and injunctive relief. Mot. 18–19; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Although Plaintiffs argue they have *statutory* standing under the *UCL and FAL* because they "lost money or property" (Opp. 29), they nowhere address the redressability requirement of Article III. Article III standing and UCL statutory standing are not the same thing. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009) (Article III standing is "stricter"). The closest Plaintiffs come to asserting their UCL claims are redressable is a citation to the *Puterbaugh* tentative where the court ordered Kars4Kids to pay Mr. Puterbaugh $250, which it took to be the value of his donated car. Opp. 29 (citing Ex. C at 7–8). But California law is clear that restitution under the UCL only covers the *actual* money or property that the defendant acquired as a result of the violation. *See Morris v. JPMorgan Chase Bank, N.A.*, 78 Cal. App. 5th 279, 315 (2022). Here, that property is Plaintiffs' donated cars, not their cash-equivalent value (which would be a windfall for Plaintiffs who chose not to sell or junk their cars and incur the associated transaction costs, but instead to donate them and receive free towing services to boot). *See id.* (in UCL case premised on wrongful foreclosure, "property" was plaintiffs' house). If that property cannot be returned—here, it cannot, and Plaintiffs don't even ask for its return—a demurrer to a UCL claim should be sustained. *Id.* (UCL claim properly

dismissed because plaintiff "is not seeking and cannot amend her complaint to seek recovery of her house"). Nor do Plaintiffs explain why they have Article III standing to obtain an injunction, which, as the motion explained, would require them to "make a reasonable showing that he will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).[9] They have not and cannot do so here.

### C. With the Dismissal of the RICO, FAL, and UCL Unfairness and Fraudulent Claims, Nothing Remains for Plaintiffs to Base an "Unlawful" Claim.

Finally, Plaintiffs' "unlawful" prong UCL claim must fail for a lack of a predicate violation. Other than the flawed claims addressed above, the only other violation Plaintiffs allege is California Government Code § 12599.6, which prohibits certain misrepresentations in connection with charitable solicitations. That statute is only enforceable by the attorney general. Cal. Gov. Code § 12591.1. And in any event, to the extent the statute prohibits misrepresentations, it rises or falls with Plaintiffs' fraudulent-prong UCL and FAL claims, for the same reasons.

### IV. PLAINTIFFS HAVE NOT IDENTIFIED ALLEGATIONS OF ANY ACTIONABLE CONDUCT BY OORAH.

While Plaintiffs' Opposition contends Oorah was "orchestrating, leading, and participating in this fraudulent scheme" (Opp. 30), the *facts* they point to in their Complaint to try to salvage their claims against Oorah—that it created Kars4Kids, created the ad, received funding from Kars4Kids, and offers faith-based and other programs—are not even arguably UCL, FAL or RICO violations. Indeed, these actions are not unlawful or improper at all. Nor do Plaintiffs cite a single authority suggesting there is anything illegal about creating a company, creating an ad, receiving grants from another nonprofit entity, or providing faith-based programs.[10] Plaintiffs' claims against Oorah fail.

\*   \*   \*

The motion to dismiss should be granted in full, and the complaint dismissed with prejudice.

---

[9] That the *Puterbaugh* tentative articulates an injunction is not persuasive here because a state court is not subject to the strictures of Article III. *Nike, Inc. v. Kasky*, 539 U.S. 654, 661, n.2 (2003).

[10] Plaintiffs do not respond to and therefore concede Defendants' argument that Plaintiffs did not allege facts supporting secondary liability under agency or respondeat superior theories. Mot. 20.

| DEFENDANTS' REPLY RE MOTION TO DISMISS COMPLAINT | 15 | CASE NO. 4:25-CV-09498-YGR |

DATED: May 5, 2026

KIRKLAND & ELLIS LLP

*/s/ Robyn E. Bladow*

Robyn E. Bladow (SBN 205189)
robyn.bladow@kirkland.com
KIRKLAND & ELLIS LLP
695 Town Center Drive
Costa Mesa, CA 92626
Telephone:     (213) 680-8400
Facsimile:     (714) 982-8844

David I. Horowitz (SBN 248414)
david.horowitz@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA  90067
Telephone:     (310) 552-4200
Facsimile:     (310) 552-5900

*Attorneys for Defendants*
*Kars4Kids Inc. and Oorah, Inc.*

DEFENDANTS' REPLY RE MOTION TO DISMISS COMPLAINT

16

CASE NO. 4:25-CV-09498-YGR