ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
SARAH R. HOLLOWAY (SBN 254134)
sholloway@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

*Attorneys for Plaintiffs*
Pavel Savva and Alexander Vickers

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| PAVEL SAVVA and ALEXANDER VICKERS, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>KARS4KIDS INC. and OORAH INC., inclusive,<br><br>Defendants. | Case No:  4:25-CV-09498-YGR<br><br>**STATEMENT OF RECENT DECISION**<br><br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Hearing Date:  June 2, 2026<br>Time:  2:00 pm<br>Courtroom:  Courtroom 1, 4th Floor<br><br>Complaint Filed: November 4, 2025 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

STATEMENT OF RECENT DECISION                                    CASE NO. 4:25-CV-09498-YGR

Plaintiffs Pavel Savva and Alexander Vickers ("Plaintiffs") respectfully submit this Statement of Recent Decision pursuant to Local Rule 7-3(d)(2) in support of their opposition to Defendants' motion to dismiss the complaint (ECF No. 26).  In their opposition, Plaintiffs cited a March 30, 2025 Minute Order tentative ruling and proposed statement of decision by Judge Gassia Apkarian, following a bench trial in *Puterbaugh v. Kars4Kids, LLC*, Case No. 30-2021-01216844-CU-BT-CJC (Orange County, Superior Court).  *See* ECF No. 28-1, Ex. C (Mar. 30, 2026 tentative Minute Order).

On May 8, 2026, Judge Apkarian issued a subsequent Minute Order ruling and final statement of decision.  A copy of Judge Apkarian's May 8, 2026 Minute Order is attached hereto as **Exhibit A**.

Respectfully submitted,

Dated: May 13, 2026

**KELLER GROVER LLP**

By:   /s/ *Eric A. Grover*

ERIC A. GROVER
*Counsel for Plaintiffs*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
Central Justice Center
700 W. Civic Center Drive
Santa Ana, CA 92702

**SHORT TITLE:** Puterbaugh vs. Oorah, Inc.

| **CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE** | CASE NUMBER:<br>**30-2021-01216844-CU-BT-CJC** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the above Minute Order dated 05/08/26 has been placed for collection and mailing so as to cause it to be mailed in a sealed envelope with postage fully prepaid pursuant to standard court practice and addressed as indicated below. This certification occurred at Santa Ana, California on 5/8/26. Following standard court practice the mailing will occur at Sacramento, California on 5/11/26.

PROTECTUS LAW
177 E COLORADO BOULEVARD 200
PASADENA, CA 91105

Clerk of the Court, by: _____, Deputy

I certify that I am not a party to this cause. I certify that that the following document(s), Minute Order dated 05/08/26, was transmitted electronically by an Orange County Superior Court email server on May 8, 2026, at 3:00:50 PM PDT. The business mailing address is Orange County Superior Court, 700 Civic Center Dr. W, Santa Ana, California 92701. Pursuant to Code of Civil Procedure section 1013b, I electronically served the document(s) on the persons identified at the email addresses listed below:

GRAHAM & ASSOCIATES LLP
ANTHONYGGRAHAM@MSN.COM

LEWITT, HACKMAN, SHAPIRO, MARSHALL &
HARLAN
JROSEN@LEWITTHACKMAN.COM

LEWITT, HACKMAN, SHAPIRO, MARSHALL &
HARLAN
DGURNICK@LEWITTHACKMAN.COM

ORRICK, HERRINGTON & SUTCLIFFE LLP
DDULGERIAN@ORRICK.COM

Clerk of the Court, by: _____, Deputy

**CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE**

V3 1013a (June 2004)                                          Code of Civ. Procedure , § CCP1013(a)

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 05/08/2026                TIME: 09:30:00 AM        DEPT:  C25

JUDICIAL OFFICER PRESIDING: Gassia Apkarian
CLERK: J. Roa
REPORTER/ERM: Alicia Renee Desmond CSR# 13037
BAILIFF/COURT ATTENDANT: D. Acosta

CASE NO: **30-2021-01216844-CU-BT-CJC**    CASE INIT.DATE: 08/19/2021
CASE TITLE: **Puterbaugh vs. Oorah, Inc.**
CASE CATEGORY: Civil - Unlimited      CASE TYPE: Business Tort

---

EVENT ID/DOCUMENT ID: 74833085
**EVENT TYPE:** Order to Show Cause re: Entry of Judgment

---

**APPEARANCES**
Anthony Graham, from Graham & Associates LLP, present for Plaintiff(s) remotely.
Marc Shapiro, Alec Orenstein, from Orrick, Herrington & Sutcliffe LLP, present for Defendant(s) remotely.

---

Hearing held, all participants appearing remotely.

Privately retained court reporter appearing remotely.

The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

**Bruce Puterbaugh, Plaintiff vs Kars4Kids, LLC, Defendants**

This serves as the court's ruling and final statement of decision. (CRC 3.1590(c)(1).) Parties objecting under California Rules of Court, rule 3.1590, subd. (g) should be familiar with the authorities that describe the limited purposes of objections. (Heaps v. Heaps (2004) 124 Cal.App.4th 286, 292 "The main purpose of an objection to a proposed statement of decision is not to reargue the merits, but to bring to the court's attention inconsistencies between the court's ruling and the document that is supposed to embody and explain that ruling". Both Defendant and Plaintiff have submitted objections to the proposed statement of decision and judgement. Plaintiff's objections have been addressed in the following ruling, however, Defendant's objections reargue the merits of the case, and therefore are not relevant.

**Introduction**

The Court conducted a bench trial to consider the Plaintiff's claims against Defendant Kars4Kids alleging violations of:

1. Business and Professions Code section 17500 (all further statutory references are to the Business and Professions Code unless otherwise indicated) (False Advertising Law, "FAL"), and

2. Section 17200 (Unfair Competition Law, "UCL").

---

DATE: 05/08/2026                       MINUTE ORDER                              Page 1
DEPT:  C25                                                                  Calendar No.

Following consideration of all testimony, evidence, and exhibits admitted at trial, the Court makes the following findings of fact, conclusions of law, and orders.

**Causes of Action**

Section 17500 prohibits any person, corporation, or employee thereof, with the intent to sell, lease, or provide services, from making or disseminating any statement that is untrue or misleading about such property or services. Liability arises if the statement is known, or should reasonably be known, to be untrue or misleading.

To establish a violation, the plaintiff must show:

1. The statements in the advertisement were untrue or misleading; and

2. The defendant knew, or should have known through reasonable care, that the statements were untrue or misleading.

Section 17200 defines unfair competition to include "any unlawful, unfair, or fraudulent business act or practice, and unfair, deceptive, untrue, or misleading advertising."

Unlawful acts are any practices forbidden by law, whether civil or criminal, statutory, regulatory, or court made.

Fraudulent acts are those that are likely to deceive the public, regardless of intent or adherence to common-law fraud principles.

Unfair practices are those whose harm to the public outweigh any utility.

Remedies for violations are set forth in section 17203, which authorizes injunctive relief or restitution of money or property obtained through unfair competition. Courts have consistently held that these remedies do not include compensatory damages.

**Findings of Fact**

Plaintiff's Testimony and Vehicle Donation

Plaintiff provided credible testimony regarding the circumstances of the donation. The subject vehicle, a 2001 Volvo XC, had been left at the Plaintiff's residence by a third party (a young woman) who had stayed with them. The vehicle was non-operational, and the Plaintiff did not possess legal title to it. Although the vehicle was not in his name (it had been left by a third party for months) and was non-operational, the Plaintiff exercised a possessory interest and control over the property. Although the Plaintiff originally intended to repair the vehicle, he never did so. Facing a pending social event at his home, the Plaintiff's wife requested that the vehicle be removed from the property.

The Plaintiff testified that he was subjected to the Kars4Kids radio "jingle" repeatedly ("over and over"). The jingle that was played in court several times was the TV version. It features several children aged 8-10 playing various musical instruments, with the jingle repeated at least 4 times. The short and repetitive ad has the following lyrics:

"1-877-Kars4Kids
K-A-R-S Kars for Kids
1-877-Kars4Kids
Donate your car today."

CASE TITLE: Puterbaugh vs. Oorah, Inc.                    CASE NO: **30-2021-01216844-CU-BT-CJC**

Case 4:25-cv-09498-YGR    Document 32    Filed 05/13/26    Page 7 of 12

Plaintiff testified that as a "charitable person," he relied on the advertisement's auditory message to conclude that the organization benefited "underprivileged kids from all over the U.S." and, specifically, kids in California, given that he was donating the vehicle in California.

The Plaintiff donated a 2001 Volvo XC, which is valued at $250. He testified that he felt "taken advantage of" upon discovering—only after the donation—that the funds did not stay in California but supported a specific religious mission in the Northeast.

The Court finds that Plaintiff credibly testified that the Plaintiff believed the charity benefited "underprivileged kids from all over the U.S." and expected that a donation made in California would benefit children in California; that the advertisement contained "nothing about specific religious affiliation" and gave no indication that the benefits would be limited by geography, religion, or ethnicity; that he followed the ad's directive to call the 877 phone number, that he never visited the organization's website, stating, "I'm not a computer person; and that only after the donation did the Plaintiff learn from a neighbor that the funds were directed to a Jewish organization in New York. The Plaintiff testified, "That's not what I wanted... I feel taken advantage of by the ad and information that was not there."

Defendant Testimony and Operations

The Defendant's case included the testimony of Kars4Kids' Chief Operating Officer (COO), Esti Landau's strikingly candid testimony. She admitted that the 30-second advertisement, which has been running for two decades, "does not say anything" about the charity's specific nature. She confirmed: that Kars4Kids is a Jewish organization, yet the word "Jewish" is absent from the ad.; that the primary function of Kars4Kids is to fund Oorah, an organization dedicated to Jewish heritage and summer camps in New York and New Jersey; that while 25% of revenue is derived from California, Kars4Kids has no functional programs in California beyond a "backpack giveaway" characterized as a branding exercise; over 60% of the funds of Kars4kids go to Oorah, approximately 30% is spent on further advertising, and another 6% on administrative expenses; that the website states, "Because kids are our future. Learn how you can make a difference in the life of a child" as a central element of the Kars4Kids advertising campaign, but it is not found in the 30-second jingle.

The witness, Esti Landau (COO, Kars4Kids) testified that she has been with the organization since 2005, is based in New Jersey, and has testified as a corporate representative in prior proceedings; that Kars4Kids is a National Jewish non-profit that serves as the primary funding vehicle for Oorah; and that approximately $45 million is sent annually to Oorah, representing over 60% of Kars4Kids' total funds, another 30% is spent on in-house advertising and 6% for administrative costs; and that of the 120,000 vehicles donated nationwide, approximately 30,000 (25%) originate from California.

Many exhibits were admitted, including IRS Form 990s from several years, to show where the funds go once, they are transferred to Oorah. Ms. Landau confirmed that in 2022, among other expenditures, Oorah allocated $437,000 to Middle East outreach, and Oorah transferred $16,500,000 to North Africa and the Middle East; that Oorah maintains $199 million in set-aside assets, with $34 million in remaining liquid assets; that $16.5 million was spent to purchase a building in Israel, stating the organization intended to "grow the Israel program."

Ms. Landau explicitly testified that the organization's primary purpose is not to help economically disadvantaged children. She testified that Oorah's programs include "matchmaking" for young adults and "gap year" trips to Israel for 17- and 18-year-olds (averaging 250 participants per year). She also admitted that Kars4Kids operates no functional programs in California. Their local activity is limited to "small grants" consisting of approximately 1,000 backpacks bearing the corporate logo, distributed to any child regardless of financial need. She also testified that Kars4Kids is not involved in how the money is spent once transferred; those decisions are left entirely to Oorah.

The witness admitted that the word "Jewish" does not appear anywhere in the advertisement. She

CASE TITLE: Puterbaugh vs. Oorah, Inc.                    CASE NO: **30-2021-01216844-CU-BT-CJC**

Case 4:25-cv-09498-YGR    Document 32    Filed 05/13/26    Page 8 of 12

confirmed the organization's purpose is to help "Jewish kids and families throughout their lives," yet this is never communicated to the public in the broadcast. Ms. Landau testified multiple times that the advertisement "does not mention anything" and contains "no details" about what Kars4Kids does. She stated that while the ad features children aged 8–10, she confirmed the funded programs often target young adults (17–18) and matchmaking as well as Jewish families. She stated that for any substantive information regarding the charity's mission, a donor would "have to go to the website."

Expert Testimony

Two expert witnesses testified. Dr. Motley testified in Plaintiff's case in chief, and Ms. Sarah Butler testified for the defense.

Dr. Motley opined that the defendant's advertisements were misleading due to deception by omission. Dr. Motley's thesis rested on the following points: 1) he asserted that if the funds generated by "Kars4Kids" are primarily directed toward a specific demographic—namely, Orthodox Jewish children in New York and New Jersey for summer camp attendance—the failure to disclose this creates a misleading narrative. He testified that the misleadingness in this context depends entirely upon a "false assumption" held by the recipient of the advertisement. Since the advertisement itself makes no specific claims beyond the request to "donate your car," any deception must occur through the donor's uncorrected internal assumptions.

To support his opinion, Dr. Motley conducted a survey to assess whether the plaintiffs' assumptions about the charity were reasonable. However, the Court identified a critical flaw in the execution of this research. The survey was administered exclusively to UC Davis students for extra credit. The Court finds that a pool of college students does not accurately represent the typical car-donating demographic. Because the survey failed to sample the relevant segment of the population, the data derived from it lack the necessary evidentiary foundation to support a broad finding of consumer deception.

The Court also considered the testimony of Ms. Sarah Butler, who was retained to conduct a peer review of Dr. Motley's report and methodology. Ms. Butler's critique was comprehensive, identifying several foundational failures in Dr. Motley's exercise that, in her opinion, deviated from established survey practices.

Ms. Butler identified the following significant methodological defects: 1) the exercise failed to utilize proper test and control groups, rendering the results scientifically unreliable, 2) Because the subjects (UC Davis students) were required to place their names on the surveys and submit them to a professor for extra credit, the results were likely tainted by a desire to provide "correct" or socially acceptable answers, 3) The questions were phrased exclusively in the negative and lacked an "I don't know" option, effectively forcing respondents toward a specific conclusion.

Ms. Butler conducted her own survey of 156 individuals in California to determine what message, if any, consumers took away from the advertisement. Her findings included:
- Only 7.1% (11/156) of respondents believed the ad was about helping "underprivileged" children.
- Only 2.5% (4/156) mentioned the word "Jewish."

Based on these results, Ms. Butler opined that the advertisement does not communicate anything substantive about the charity's specific mission. She concluded that most consumers do not take away a message that the funds are for "people in need," but rather that the ad is silent on its ultimate purpose.

However, Ms. Butler also stated that her survey was not meant to test the ad itself but to test why people make car donations. The court found that her survey was intended to answer a question separate and apart from the issue at hand in this trial. Her question was not relevant to the issues involved in this court

trial.

While both experts possess impressive CVs, the Court finds that their expert opinions carry little weight, even though they do not contradict each other.

Despite their differing approaches, both experts essentially arrived at the same factual observation. Both Dr. Motley's theory of "omission" and Ms. Butler's survey results support the finding that the advertisement says nothing about its specific purpose or the ultimate destination of the donated funds. Therefore, while the Court assigns minimal weight to their scientific conclusions, it finds their testimony consistent in establishing that the advertisement lacks descriptive content regarding the charity's actual operations and relies on assumptions consumers make when they hear the jingle, which does not match where the proceeds of their donations go.

Under Section 17200, unfair competition is defined as "any unlawful, unfair, or fraudulent business act or practice . . ." prohibiting any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court made.

"Unfair" simply means any practice whose harm to the victim outweighs its benefits.

"Fraudulent," as used in the statute, does not refer to the common law tort of fraud, but only requires a showing that members of the public are likely to be deceived.

**Findings on Controverted Issues**

1. The Court finds that the Plaintiff has standing and suffered an economic loss. While the Plaintiff did not hold legal title to the vehicle, he held a possessory interest in it. Surrendering that interest to a charity under false pretenses constitutes "lost property" under the UCL. Actual reliance was established by his testimony that the ad prompted his call to the 877 number.

2. The Court finds that the First Amendment does not shield the Defendant. While charities have free speech rights, the government may regulate misleading commercial speech. Fraudulent omissions in an inducement to donate property are not protected by "free expression."

3. The evidence confirms the "hidden" facts are true: the vast majority of funds, 60%, go to Oorah, which supports Orthodox Jewish programs in NY/NJ and in the Middle East, and there is no geographic nexus to California. The evidence also shows that children, especially needy or underprivileged children, are not the recipients of the proceeds of the donations.

4. A reasonable consumer is not required to be "computer savvy." When a broadcast advertisement, be it radio to television, provides a phone number as the primary call to action, consumers act reasonably by calling that number rather than cross-referencing a website.

5. The Court finds the message that the charity helps "needy" children is not "inherently vague." In the context of a charitable appeal, "needy" implies socio-economic disadvantage. Using funds for "gap year" trips to Israel for 17-18-year-olds or a $16.5 million real estate acquisition contradicts the "needy child" persona cultivated by the ad.

6. The name "Kars4Kids," the 8-10-year-old actors in the advertisement, and the repetitive jingle all serve to reinforce the belief that donations are used exclusively for the benefit of children.

7. Under cross-examination, the COO, Esti Landau, admitted that the organization's primary purpose is to help "Jewish kids and families throughout their lives."

8. Matchmaking and Adults: Evidence established that the organization funds "matchmaking" services

aimed at young adults and "gap year" programs for 17- and 18-year-olds.

9. The Court finds that the failure to disclose that funds benefit adults and families—and that this support is contingent upon a specific religious affiliation—is a material omission. A reasonable consumer donating to a "kids" charity would attach importance to the fact that their donation is actually supporting adult matchmaking and general family subsidies.

## Violation of BPC § 17500 (False Advertising)

The false advertising law "proscribes not only advertising, which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." (Hansen v. Newegg.com Americas, Inc. (2018) 25 Cal.App.5th 714, 722.) The statute can also be violated through negligence, as it applies to statements that "by the exercise of reasonable care should be known, to be untrue or misleading. "(Khan v. Medical Board (1993) 12 Cal. App.4th 1834, 1846.)

The Court finds that the Defendant disseminated public statements concerning the disposal of property—specifically vehicle donations—that were misleading by omission. Under the statutory "knew or should have known" standard, the Defendant is charged with the knowledge that California donors would reasonably assume their contributions benefit a general class of children, including those within their own state. The Court finds that the Defendant's stated intent to make the advertisement "memorable" through extreme repetition, while simultaneously stripping it of all substantive facts, constitutes an actionable strategy of deception.

## Violation of BPC § 17200 (Unfair Competition Law)

The Defendant's conduct violates the Unfair Competition Law (UCL) under the following three prongs:

- Because the Defendant's advertising practices violate the False Advertising Law (BPC § 17500), these acts serve as the necessary predicate for a finding of "unlawful" business practices under § 17200.

- A business practice is fraudulent under the UCL if it is "likely to deceive" a significant portion of the public. (Colgan v. Leatherman Tool Group, Inc. (2006) 135 Cal.App.4th 663, 680.) The Court finds the Kars4Kids "jingle" creates a false sense of a universal, secular, and local charity. The "Kars4Kids" name, when coupled with an advertisement that "does not mention anything" about its specific mission (as admitted by the COO), is likely to deceive the public. It improperly narrows the perceived beneficiary class to "kids" to elicit emotional and financial responses, while diverting funds to a much broader religious and familial social-service network.

- The Court finds the Defendant's practice is "unfair" because the harm of soliciting donations through intentional omissions outweighs any purported utility. The public is misled into believing donations aid underprivileged children in California, when in fact the funds primarily support a separate organization benefiting specific families in New York, New Jersey, and abroad based on religious affiliation.

The Court finds that the Defendant's failure to disclose that funds benefit adults and families—and that such support is contingent upon specific religious affiliation and geography—constitutes a material omission.

The evidence established that a reasonable consumer would attach significant importance to the following facts when making a donation decision:

- Whether the donation supports adult matchmaking and general family support rather than "kids."

- Whether a donation solicited in California benefits children within that state.

CASE TITLE: Puterbaugh vs. Oorah, Inc.                                              CASE NO: **30-2021-01216844-CU-BT-CJC**

Case 4:25-cv-09498-YGR      Document 32      Filed 05/13/26      Page 11 of 12

- Whether the funds are directed toward "needy" or underprivileged children, as generally understood by the public.
- Whether the donation supports those of a specific religious faith.

The evidence demonstrates that these omissions are inherently deceptive. The practice of broadcasting this jingle repeatedly over two decades is fraudulent because, by the Defendant's own admission, the advertisement "says nothing," thereby allowing the public to rely on false assumptions created by the Defendant's calculated silence. Consequently, the Defendant is in violation of the Unfair Competition Law and the False Advertising Law.

**Injunction and Restitution**

Under section 17203, "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction," and BPC § 17535 allows courts to order businesses to restore money or property acquired through false or misleading advertising. It is the key equitable remedy to reverse unfair, deceptive, or misleading acts alongside injunctive relief.

Monetary damages are insufficient to remedy the harm caused by the Defendant's advertising campaign for three reasons: 1) A charitable donation is an act of "quiet enjoyment" of one's altruism. When a donor is misled, the harm is the subversion of their intent. As the Plaintiff testified, "That's not what I wanted." Money cannot "un-donate" a car or restore the donor's belief that they were helping a local, needy child; 2) The COO testified that the ad has run for decades and was only updated once to change the actors. Without an injunction, the Defendant will continue to broadcast the same misleading "jingle" to 25% of its donors in California, creating a "multiplicity of judicial proceedings" because every new donor is equally deceived; 3) The "feeling of being taken advantage of" and the erosion of public trust in charitable solicitations are intangible injuries that a standard check for the value of a 2001 Volvo cannot repair.

The Court must weigh the harm to the Plaintiff and the California public against the burden on Kars4Kids to change its ads. If the ads continue, thousands of California donors will continue to surrender property under the false impression that they are supporting local, secular, or underprivileged "kids." This constitutes a massive, ongoing transfer of assets based on a fraudulent omission. The Defendant's burden is purely financial and administrative. The COO testified that they do their advertising in-house. They have the capacity to edit the ad immediately. Furthermore, with $199 million in set-aside assets, $34 million in liquid assets, and with 30% of their funds spent on advertising, the cost of producing a compliant 30-second ad is negligible.

The interest of the state in preventing consumer fraud far outweighs the Defendant's interest in maintaining a "memorable" but deceptive jingle.

The public interest is served by transparency in the "charity marketplace." When a charity generates millions annually through a "jingle" that conceals its primary religious and geographic focus, it creates an unfair playing field for local California charities that are honest about their missions. An injunction ensures that competition for charitable dollars is based on truth, not catchy, content-free, deceptive songs.

The Defendant is hereby PERMANENTLY ENJOINED from broadcasting the 'Kars4Kids' jingle or any variation thereof in the State of California unless said advertisement contains an express, audible disclosure of its religious affiliation and the geographic location of its primary beneficiaries and the age of the beneficiaries, specifying whether they aim for children or families, or both. Any future advertisement must clearly and conspicuously specify the actual age range of the primary beneficiaries. The Defendant may no longer use images of prepubescent children to solicit donations that support individuals who have reached the age of majority.

The Court rejects the Defendant's argument that a website disclosure is sufficient. A consumer who is induced to call a phone number by a broadcast ad has been 'deceived' the moment the call is placed.

The Court finds that the Plaintiff suffered a qualifying economic injury when he surrendered his possessory interest in the 2001 Volvo XC. While the Defendant argued that the lack of legal title precluded a claim, the Court holds that the physical possession and the intent to repair the vehicle constituted a tangible asset with measurable value.

The evidence presented at trial established that the 2001 Volvo XC, despite its non-working condition and the absence of a formal title in the Plaintiff's name, possessed a fair market value of $250.00.

The Plaintiff's decision to donate this asset was a direct result of the Defendant's misleading "jingle" and the fraudulent omission of the charity's actual geographic and religious limitations. Had the Defendant disclosed that the donation would benefit a religious organization in New York/New Jersey and Israel rather than needy children in California, the Plaintiff would not have surrendered the vehicle.

IT IS HEREBY ORDERED that Defendant Kars4Kids shall pay the Plaintiff the sum of $250.00 as restitution for the value of the property acquired through the Defendant's violations.

Defendant is ordered to pay Plaintiff $250.00 within 30 days.

Defendant has 30 days to cease all non-compliant broadcasting in California.

Costs are awarded to the Plaintiff as the prevailing party.

Also, as the prevailing party, Plaintiff has the right to file a motion for reasonable attorney's fees pursuant to California Code of Civil Procedure 1021.5

Pursuant to California Rules of Court, rule 3.1590(h), judgment in the form attached hereto as Exhibit A will be filed, unless any party, within 15 days, serves and files objections to the proposed judgment.

**IT IS SO ORDERED.**

**Ex. A**

**JUDGMENT**

Puterbaugh vs. Oorah, Inc. (case number 30-2021-01216844) came on regularly for trial on November 10, 2025, at 9:30 am in Department C25 before Judge Gassia Apkarian. The court considered the evidence. Appearances by Anthony G. Graham, Neal A. Roberts, Marc Robert Shapiro and Sheryl Koval Grako. A statement of decision was requested.

Judgment is for the Plaintiff. Defendant Kars4Kids shall pay the Plaintiff the sum of $250.00 as restitution for the value of the property acquired through the Defendant's violations of BPC § 17200 and § 17500 within 30 days of judgment.

Defendant has 30 days from the date of judgment to cease all non-compliant broadcasting in California.

Costs and attorney fees are awarded to the Plaintiff as the prevailing party.

**Date:**_____ **Judge of the Superior Court**_____